

# The Cincinnati Casualty Company
A Stock Insurance Company

**Headquarters**: 6200 S. Gilmore Road, Fairfield, OH 45014-5141
**Mailing address**: P.O. Box 145496, Cincinnati, OH 45250-5496
*www.cinfin.com* ■ 513-870-2000

# COMMON POLICY DECLARATIONS

Billing Method: **DIRECT BILL**

| POLICY NUMBER | **ENP 046 05 30 / EBA 046 05 30** |
|---|---|

**NAMED INSURED** LUCIDA CONSTRUCTION CO LLC AND LUCIDA RENTALS LLC
PO BOX 230607
MONTGOMERY, AL 36123-0607

**ADDRESS**
(Number & Street,
Town, County,
State & Zip Code)

This is a true and certified copy of the
General Liability portion of the policy:

*Jennifer Baker*
Jennifer Baker, Assistant Vice President

**Previous Policy Number:**
ENP0460530

**Policy Period:** At 12:01 A.M., STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

**All coverages except Automobile and / or Garage**
Policy number: **ENP 046 05 30**    FROM: **11-01-2019**   TO: **11-01-2020**

**Automobile and / or Garage**
Policy number: **EBA 046 05 30**    FROM: **11-01-2019**   TO: **11-01-2020**

Agency   **COBBS ALLEN 01-113**
City   **MOUNTAIN BROOK, AL**

**Legal Entity / Business Description**

**LIMITED LIABILITY COMPANY**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

FORMS APPLICABLE TO ALL COVERAGE PARTS:

| | | |
|---|---|---|
| IL0017 | 11/98 | COMMON POLICY CONDITIONS |
| IA102A | 09/08 | SUMMARY OF PREMIUMS CHARGED |
| IA904 | 04/04 | SCHEDULE OF LOCATIONS |
| IA4236 | 01/15 | POLICYHOLDER NOTICE TERRORISM INSURANCE COVERAGE |
| IP446 | 08/01 | NOTICE TO POLICYHOLDERS |
| IA4006 | 07/10 | SPECIAL PER OCCURRENCE DEDUCTIBLE ENDORSEMENT |
| IA4135 | 08/16 | POLICY DELIVERY |
| IA4219AL | 08/16 | ALABAMA CHANGES - CANCELLATION AND NONRENEWAL |
| IA4238 | 01/15 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| IA4338 | 05/11 | SIGNATURE ENDORSEMENT |
| IA4377AL | 09/07 | ALABAMA CHANGES - ACTUAL CASH VALUE |
| FMQ502 | 07/08 | COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS |
| GAQ532 | 07/08 | COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS |
| MAQ559 | 05/10 | CONTRACTORS' EQUIPMENT (AND TOOLS) COVERAGE PART DECLARATIONS |
| MAQ573 | 06/07 | ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE FORM DECLARATIONS |
| AAQ505 | 03/06 | BUSINESS AUTO COVERAGE PART DECLARATIONS |
| HC502 | 01/18 | CINCINNATI DATA DEFENDER™ COVERAGE PART DECLARATIONS |
| HC503 | 01/18 | CINCINNATI NETWORK DEFENDER™ COVERAGE PART DECLARATIONS |

Countersigned _____ By _____
                              (Date)                                    (Authorized Representative)

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination of Your Books and Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections and Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer of Your Rights and Duties Under this Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

# SUMMARY OF PREMIUMS CHARGED

Attached to and forming part of
POLICY NUMBER: **ENP 046 05 30 / EBA 046 05 30**          Effective Date: **11-01-2019**

Named Insured:  **LUCIDA CONSTRUCTION CO LLC AND LUCIDA RENTALS LLC**

## THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE
## PARTS FOR WHICH A PREMIUM CHARGE IS INDICATED

| | |
|---|---|
| Commercial Property Coverage Part | $          409 |
| Commercial General Liability Coverage Part | $        21,223 |
| Commercial Auto Coverage Part | $          200 |
| Commercial Umbrella / Excess Liability Coverage Part | $ |
| DATA DEFENDER COVERAGE PART | $          143 |
| NETWORK DEFENDER COVERAGE PART | $          187 |
| CONTRACTORS EQUIPMENT SCHEDULED | $        1,112 |
| CONTRACTORS EQUIPMENT SUPPLEMENTAL COVERAGES | $        2,813 |
| ELECTRONIC DATA PROCESSING EQUIPMENT | $          288 |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| Terrorism Coverage | $          198 |
| Installment Charge | $ |
| **ANNUAL TOTAL** | $        26,573 |

**PAYMENTS**

| | First<br>Installment | Remaining<br>Installment(s) |
|---|---|---|
| **MONTHLY** | * | * |

**\*SEE BILLING STATEMENT MAILED SEPARATELY**

Automobile Coverages, Employers Liability, Employment Practices Liability Coverage, Professional Liability Coverage, Terrorism Coverage and / or Wrongful Acts Coverage, if included in the policy, are subject to Annual Adjustment of rates and premium on each anniversary of the policy.

Commercial Umbrella and Excess Liability, if included in the policy, may be subject to Annual Adjustment of premium on each anniversary. Refer to the Commercial Umbrella or Excess Liability Coverage Part Declarations form to see if this is applicable.

## ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

IA 102 A 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SCHEDULE OF LOCATIONS

| LOC. | STREET ADDRESS | CITY | STATE | ZIP CODE |
|------|----------------|------|-------|----------|
| 1 | 4170 LOMAC ST | | | |
| | MONTGOMERY, AL 36106-3726 | | | |

**IA 904 04 04**

# POLICYHOLDER NOTICE
# TERRORISM INSURANCE COVERAGE

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

Your policy may contain coverage for certain losses caused by terrorism.

## Premium:

In accordance with the federal Terrorism Risk Insurance Act, we are required to notify you of the portion of the premium, if any, attributable to the coverage for terrorist acts certified under the Terrorism Risk Insurance Act.

• Refer to the SUMMARY OF PREMIUMS CHARGED or DECLARATIONS PAGE for the portion of your premium that is attributable to coverage for terrorist acts certified under the Act.

## Federal Participation:

The Act also requires us to provide disclosure of federal participation in payment of terrorism losses.

• Under your policy, any losses caused by certified acts of terrorism would be partially reimbursed by the United States Government, Department of Treasury, under a formula established by federal law. Under this formula, the federal share equals a percentage, as specified in the Schedule below, of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

• **Schedule:**

| Federal Share of Terrorism Losses | |
|---|---|
| Percentage | Calendar Year |
| 85% | 2015 |
| 84% | 2016 |
| 83% | 2017 |
| 82% | 2018 |
| 81% | 2019 |
| 80% | 2020 |

## Cap on Insurer Participation:

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**NOTE:** **IF YOUR POLICY IS A RENEWAL POLICY, THIS NOTICE IS PROVIDED TO SATISFY THE REQUIREMENTS UNDER THE TERRORISM RISK INSURANCE ACT FOR POLICYHOLDER DISCLOSURE: (1) AT THE TIME OF OUR OFFER TO RENEW THE POLICY AND (2) AT THE TIME THE RENEWAL IS COMPLETED.**

**IA 4236 01 15**

# THE CINCINNATI INSURANCE COMPANY
# THE CINCINNATI CASUALTY COMPANY
# THE CINCINNATI INDEMNITY COMPANY

## NOTICE TO POLICYHOLDERS

Please be advised that in your application for insurance you disclosed information to The Cincinnati Insurance Company, The Cincinnati Casualty Company and The Cincinnati Indemnity Company.  The information disclosed in the application and all information subsequently collected by any of these companies may be shared among all three.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SPECIAL PER OCCURRENCE DEDUCTIBLE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**
**COMMERCIAL INLAND MARINE COVERAGE PART**
**CRIME AND FIDELITY COVERAGE PART**

**A. Special Per Occurrence Deductible**

   **1.** If an "occurrence" happens to Covered Property under the Commercial Property Coverage Part and to Covered Property under at least one of the following:

   **a.** The Commercial Inland Marine Coverage Part, and

   **b.** The Crime and Fidelity Coverage Part;

   the most we will deduct from any loss or damage in any one "occurrence" is the deductible indicated on the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS.**

   **2.** This endorsement does not apply to any of the forms listed in Paragraphs **a.** and **b.**:

   **a.** \* **Electronic Data Processing Coverage Form, Section III, 2. Deductible, a.(2) Specified Losses Deductible**

   \* **Water Backup from Sewers, Drains, Septic Systems or Sump Pumps Endorsement**

   **Windstorm or Hail Percentage Deductible Form**

   **Earthquake and Volcanic Eruption Endorsement**

   **Earthquake and Volcanic Eruption Endorsement (Sub-Limit Form)**

   **Flood Coverage Endorsement**

   **Equipment Breakdown Coverage (Including Production Equipment)**

   **Equipment Breakdown Coverage (Excluding Production Equipment)**

   \* **Temperature Change Coverage Form**

   **Commercial Crime Coverage Form, A. Insuring Agreements, 1. Employee Theft, 2. Forgery or Alteration, 6. Computer Fraud and 7. Funds Transfer Fraud**

   **Crime Expanded Coverage (XC®) Coverage or Expanded Coverage Plus Forms, A. Insuring Agreements, 1. Employee Theft and 2. Forgery or Alteration**

   **Government Crime Coverage Form, A. Insuring Agreements, 1. Employee Theft - Per Loss Coverage, 2. Employee Theft - Per Employee Coverage, 3. Forgery or Alteration, 7. Computer Fraud and 8. Funds Transfer Fraud**

   \* Or such coverage as provided in the CinciPlus® Commercial Property or Commercial Property Power Expanded Coverage or Expanded Coverage Plus Forms

   **b.** ☒ **Other**    ELECTRONIC DATA PROCESSING
   CONTRACTORS EQUIPMENT - SCHEDULED EQUIPMENT
   CONTRACTORS EQUIPMENT - EQUIPMENT LEASED OR
   RENTED FROM OTHERS

B. **Definition**

For the purpose of this endorsement only, any definition of "occurrence" is deleted in its entirety and the following definition is added to:

1. **COMMERCIAL PROPERTY CONDITIONS,**
2. **COMMERCIAL INLAND MARINE CONDITIONS,**
3. **COMMERCIAL CRIME COVERAGE FORM,**
4. **CRIME EXPANDED COVERAGE (XC®) COVERAGE FORM, and**
5. **GOVERNMENT CRIME COVERAGE FORM:**

**"Occurrence"** means all loss, damage, or a sequence of loss or damage, casualties or disasters arising from a single happening or event.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY DELIVERY

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS PACKAGE POLICY
CINCINNATI CYBER DEFENSE™ COVERAGE PART
CINCINNATI DATA DEFENDER™ COVERAGE PART
CINCINNATI NETWORK DEFENDER™ COVERAGE PART
CLAIMS-MADE EXCESS LIABILITY COVERAGE PART
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL OUTPUT PROGRAM - PROPERTY COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
COMMERCIAL UMBRELLA LIABILITY COVERAGE PART
CONTRACTOR'S ERRORS AND OMISSIONS COVERAGE PART CLAIMS-MADE
CONTRACTOR'S LIMITED POLLUTION LIABILITY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
DENTIST'S PACKAGE POLICY
ELECTRONIC DATA LIABILITY COVERAGE PART
EMPLOYEE BENEFIT LIABILITY COVERAGE PART
EMPLOYMENT PRACTICES LIABILITY COVERAGE PART
EXCESS LIABILITY COVERAGE PART
EXCESS WORKERS COMPENSATION AND EMPLOYERS LIABILITY COVERAGE PART
FARM COVERAGE PART
GOLF COURSE CHEMICAL APPLICATION LIMITED LIABILITY COVERAGE PART
HOLE-IN-ONE COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MACHINERY AND EQUIPMENT COVERAGE PART
MANUFACTURER'S ERRORS AND OMISSIONS COVERAGE PART CLAIMS-MADE
MORTGAGEHOLDERS ERRORS AND OMISSIONS COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART
PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE
UNDERGROUND STORAGE TANK POLICY

**Common Policy Declarations** is amended to include the following:

The first Named Insured listed in the Declarations agrees to accept delivery of the policy on behalf of all Named Insureds. Delivery of this policy, any endorsements, or notices pertaining to this policy by us to the first Named Insured shall be deemed delivered to all Named Insureds and Additional Insureds.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ALABAMA CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance under the following:

**CHEMICAL DRIFT LIMITED LIABILITY COVERAGE FORM – CLAIMS-MADE**
**CINCINNATI CYBER DEFENSE™ COVERAGE PART**
**CINCINNATI DATA DEFENDER™ COVERAGE PART**
**CINCINNATI NETWORK DEFENDER™ COVERAGE PART**
**CLAIMS-MADE EXCESS LIABILITY COVERAGE PART**
**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**COMMERCIAL PROPERTY COVERAGE PART**
**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
**CONTRACTORS ERRORS AND OMISSIONS COVERAGE FORM CLAIMS-MADE**
**CONTRACTORS' LIMITED POLLUTION LIABILITY COVERAGE PART**
**CRIME AND FIDELITY COVERAGE PART**
**EMPLOYEE BENEFIT LIABILITY COVERAGE PART**
**EXCESS LIABILITY COVERAGE PART**
**EXCESS WORKERS COMPENSATION AND EMPLOYERS LIABILITY COVERAGE PART**
**FARM COVERAGE PART**
**HOLE-IN-ONE COVERAGE PART**
**LIQUOR LIABILITY COVERAGE PART**
**MACHINERY AND EQUIPMENT COVERAGE PART**
**OWNERS AND CONTRACTORS PROTECTIVE COVERAGE PART**
**POLLUTION LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**
**PROFESSIONAL LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**
**RAILROAD PROTECTIVE LIABILITY COVERAGE PART**
**SEPTIC SYSTEMS DESIGN AND INSPECTION ERRORS AND OMISSIONS COVERAGE PART**

**A.** Paragraph **5.** of the **CANCELLATION** Common Policy Condition is replaced by the following:

    **5.** If the policy is cancelled, we will send the first Named Insured any premium refund due. The refund will be pro rata. The cancellation will be effective even if we have not made or offered a refund.

**B.** The following condition is added:

**NONRENEWAL**

**1.** If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured at least 30 days prior to:

    **a.** The expiration date of this policy; or

    **b.** The anniversary date of this policy, if the policy is written for a term of more than one year.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

**All Commercial Lines Coverage Parts, Coverage Forms, Policies and Endorsements subject to the federal Terrorism Risk Insurance Act and any amendments and extensions thereto**

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B. Cap On Losses from Certified Acts of Terrorism**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**C. Application of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability, omission or absence of a terrorism exclusion, does not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part, Coverage Form, Policy or Endorsement such as losses excluded by:

1. Exclusions that address war, warlike action, insurrection, rebellion, revolution, military action, nuclear hazard, nuclear materials, nuclear reaction, radiation, or radioactive contamination;

2. Exclusions that address pollutants, contamination, deterioration, fungi or bacteria; or

3. Any other exclusion,

regardless if the "certified act of terrorism" contributes concurrently or in any sequence to the loss.

**D. Sunset Clause**

If the federal Terrorism Risk Insurance Act expires or is repealed, then this endorsement is null and void for any act of terrorism that takes place after the expiration or repeal of the Act.

**IA 4238 01 15**

Includes copyrighted material of ISO Properties, Inc. and American Association of Insurance Services, with their permission.
000012

# SIGNATURE ENDORSEMENT

IN WITNESS WHEREOF, this policy has been signed by our President and Secretary in the City of Fairfield, Ohio, but this policy shall not be binding upon us unless countersigned by an authorized representative of ours. The failure to countersign does not void coverage in Arizona, Virginia and Wisconsin.

Secretary                                    President

The signature on any form, endorsement, policy, declarations, jacket or application other than the signature of the President or Secretary named above is deleted and replaced by the above signatures.

**IA 4338 05 11**

000013

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ALABAMA CHANGES - ACTUAL CASH VALUE

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
FARM COVERAGE PART
NETWORK SYSTEM COVERAGE PART

The following is added to any provision which uses the term actual cash value:

Actual cash value is calculated as the amount it would cost to repair or replace Covered Property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. Actual cash value applies to valuation of Covered Property regardless of whether that property has sustained partial or total loss or damage.

The actual cash value of the lost or damaged property may be significantly less than its replacement cost.

© ISO Properties, Inc., 2006
000014

# THE CINCINNATI CASUALTY COMPANY

**A Stock Insurance Company**

# COMMERCIAL GENERAL LIABILITY COVERAGE
# PART DECLARATIONS

Attached to and forming part of POLICY NUMBER: ENP 046 05 30

Named Insured is the same as it appears in the Common Policy Declarations

## LIMITS OF INSURANCE

| | | |
|---|---|---|
| EACH OCCURRENCE LIMIT | $1,000,000 | |
| GENERAL AGGREGATE LIMIT | $2,000,000 | |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $2,000,000 | |
| PERSONAL & ADVERTISING INJURY LIMIT | $1,000,000 | ANY ONE PERSON OR ORGANIZATION |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | | ANY ONE |
| $100,000 limit unless otherwise indicated herein: | $ SEE GA233 | PREMISES |
| MEDICAL EXPENSE LIMIT | | |
| $5,000 limit unless otherwise indicated herein: | $ SEE GA233 | ANY ONE PERSON |

| CLASSIFICATION | CODE NO. | PREMIUM BASE | RATE | | ADVANCE PREMIUM | |
|---|---|---|---|---|---|---|
| | | A - Area<br>B - Payroll<br>C - Gross Sales<br>D - Units<br>E - Other | Products / Completed Operations | All Other | Products / Completed Operations | All Other |
| CONTRACTORS - EXECUTIVE SUPERVISOR (AL) INCL PROD AND/OR COMP OP | 91580 | B 375,000 | | 25.691 | | 9,634 |
| CONTRACTORS - SUBCONTRACTED WORK (AL) | 91585 | E 2,500,000 TOTAL COST | 1.713 | 2.253 | 4,283 | 5,633 |
| BI EXCEPTIONS TO POLLUTANT EXCLUSION | 20410 | | | 2% | | 305 |
| AUTOMATIC ADD. INSURED - CONTRACTORS OPERATIONS | 29923 | | | 3.5% | | 684 |
| CONTRACTORS BROADENED COVERAGE | 29975 | | | 3.5% | | 684 |

The General Liability Coverage Part is subject to an annual minimum premium.

TOTAL ANNUAL PREMIUM $ 21,223

## FORMS AND / OR ENDORSEMENTS APPLICABLE TO COMMERCIAL GENERAL LIABILITY COVERAGE PART:

| | | |
|---|---|---|
| GA101 | 12/04 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| CG0300 | 01/96 | DEDUCTIBLE LIABILITY INSURANCE |
| CG2279 | 04/13 | EXCLUSION - CONTRACTORS - PROFESSIONAL LIABILITY |
| GA233 | 09/17 | CONTRACTORS' COMMERCIAL GENERAL LIABILITY BROADENED ENDORSEMENT |
| GA3024 | 05/14 | EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION |
| GA369 | 09/17 | EXCLUSION - EXTERIOR INSULATION AND FINISH SYSTEMS ("EIFS") AND DIRECT-APPLIED EXTERIOR FINISH SYSTEMS ("DEFS") - BROAD FORM WITH SPECIFIED EXCEPTIONS |
| GA382 | 03/02 | FUNGI OR BACTERIA EXCLUSION |
| GA4250 | 11/05 | MOBILE EQUIPMENT SUBJECT TO MOTOR VEHICLE INSURANCE LAWS |

**FORMS AND / OR ENDORSEMENTS APPLICABLE TO COMMERCIAL GENERAL LIABILITY COVERAGE PART:**

| | | |
|---|---|---|
| GA472 | 09/18 | CONTRACTORS ADDITIONAL INSURED - AUTOMATIC STATUS WHEN REQUIRED IN WRITTEN CONTRACT, AGREEMENT, PERMIT OR AUTHORIZATION |
| GA478 | 12/04 | BODILY INJURY EXCEPTIONS TO POLLUTANT EXCLUSION |

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this Coverage Part restrict this insurance. Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this Coverage Part. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II - WHO IS AN INSURED**.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION V - DEFINITIONS**.

## SECTION I - COVERAGES

## COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE**; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY; SECTION I - COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY;** or medical expenses under **SECTION I - COVERAGES, COVERAGE C. MEDICAL PAYMENTS.**

   No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under **SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.**

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period; and

      (3) Prior to the "coverage term" in which "bodily injury" or "property damage" occurs, you did not know, per Paragraph **1.d.** below, that the "bodily injury" or "property damage" had occurred or had begun to occur, in whole or in part.

   c. "Bodily injury" or "property damage" which:

      (1) Occurs during the "coverage term"; and

      (2) Was not, prior to the "coverage term", known by you, per Paragraph **1.d.** below, to have occurred;

   includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the "coverage term" in which it first became known by you.

   d. You will be deemed to know that "bodily injury" or "property damage" has occurred at the earliest time when any "authorized representative":

      (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage";

      (3) First observes, or reasonably should have first observed, the "bodily injury" or "property damage";

      (4) Becomes aware, or reasonably should have become aware, by any means other than as described in **(3)** above, that "bodily injury" or "property damage" had occurred or had begun to occur; or

      (5) Becomes aware, or reasonably should have become aware, of a

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000017

condition from which "bodily injury" or "property damage" is substantially certain to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

This insurance does not apply to:

a. **Expected or Intended Injury**

"Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of the insured or which is in fact expected or intended by the insured, even if the injury or damage is of a different degree or type than actually expected or intended. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. When a claim for such "bodily injury" or "property damage" is made, we will defend that claim provided the insured has assumed the obligation to defend such claim in the "insured contract". Such defense payments will not reduce the limits of insurance.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation and Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured sustained in the "workplace";

(2) An "employee" of the insured arising out of the performance of duties related to the conduct of the insured's business; or

(3) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraphs (1) or (2) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

f. **Pollutant**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, Paragraph (a) does not apply to:

1) "Bodily injury" to any person injured while on any premises, site or location owned or occupied by, or rented or loaned to, you provided:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000018

**a)** The injury is caused by the inadequate ventilation of vapors;

**b)** The person injured is first exposed to such vapors during the policy period; and

**c)** Within 30 days of such first exposure, the person injured is clinically diagnosed or treated by a physician for the medical condition caused by the exposure to such vapors. However, Paragraph **c)** does not apply if the "bodily injury" is caused by vapors produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests.

This exception **1)** shall apply only to Named Insureds; we shall have no duty to defend or pay damages for any person or organization that is not a Named Insured. However, this paragraph does not apply if the "bodily injury" is caused by vapors produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests.

For the purpose of the exception granted in Paragraph **1)** only, vapors means any gaseous or airborne irritant or airborne contaminant, including smoke, fumes, vapor or soot, but excluding asbestos, which is discharged, dispersed, emitted, released or escapes from materials, machinery or equipment used in the service or maintenance of the premises. Vapors does not mean any gaseous or

airborne irritants or contaminants used in a manufacturing process or which is the product or by-product of any manufacturing process;

**2)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor, and the owner or lessee of such premises, site or location has been added to this Coverage Part as an additional insured with respect to your ongoing operations or "your work" performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**3)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**1)** Any insured; or

**2)** Any person or organization for whom you may be legally responsible;

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, Paragraph **(d)** does not apply to:

**1)** "Bodily injury" or "property damage" arising out of the discharge, dispersal, seepage, migration, release, es-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000019

cape or emission of fuels, lubricants or other operating fluids, or exhaust gases, which are needed to perform, or are the result of, the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids, or exhaust gases, escape, seep or migrate, or are discharged, dispersed, released or emitted from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids, or exhaust gases, escape, seep or migrate, or are discharged, dispersed, released or emitted with the intent to cause "bodily injury" or "property damage" or with the knowledge that "bodily injury" or "property damage" is substantially certain to occur, or if such fuels, lubricants or other operating fluids, or exhaust gases, are brought on or to the premises, site or location with such intent to escape, seep or migrate, or be discharged, dispersed, released or emitted as part of the operations being performed by such insured, contractor or subcontractor;

**2)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**3)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the op-

erations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, Paragraphs **(2)(a)** and **(b)** do not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 51 feet long; and

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000020

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by

governmental authority in hindering or defending against any of these.

**j. Damage to Property**

"Property damage" to:

**(1)** Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of an insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire or explosion) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days, for which the amount we will pay is limited to the Damage To Premises Rented To You Limit as described in **SECTION III - LIMITS OF INSURANCE**.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000021

l. **Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. **Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. **Recall of Products, Work or Impaired Property**

Any liability or damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o. **Personal and Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

p. **Asbestos**

"Bodily injury" or "property damage" arising out of, attributable to, or any way related to asbestos in any form or transmitted in any manner.

q. **Employment-Related Practices**

"Bodily injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Other employment-related practices, policies, acts or omissions including but not limited to coercion, criticism, demotion, evaluation, failure to promote, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

r. **Additional Insured Prior Knowledge**

An additional insured added by attachment of an endorsement to this Coverage Part that is seeking coverage for a claim or "suit", if that additional insured knew, per the following paragraph, that "bodily injury" or "property damage" had occurred or had begun to occur, in whole or in part, prior to the "coverage term" in which such "bodily injury" or "property damage" occurs or begins to occur.

An additional insured added by attachment of an endorsement to this Coverage Part will be deemed to have known that "bodily injury" or "property damage" has occurred or has begun to occur at the earliest time when that additional insured, or any one of its owners, members, partners, managers, executive officers, "employees" assigned to manage that additional insured's insurance program, or "employees" assigned to give or receive notice of an "occurrence", "personal and advertising injury" offense, claim or "suit":

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000022

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage";

**(3)** First observes, or reasonably should have first observed, the "bodily injury" or "property damage";

**(4)** Becomes aware, or reasonably should have become aware, by any means other than as described in **(3)** above, that "bodily injury" or "property damage" had occurred or had begun to occur; or

**(5)** Becomes aware, or reasonably should have become aware, of a condition from which "bodily injury" or "property damage" is substantially certain to occur.

**s.** **Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data".

**t.** **Distribution of Material in Violation of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **q.** do not apply to "property damage" by fire or explosion to premises while rented to you or temporarily occupied by you with permission of the owner, for which the amount we will pay is limited to the Damage to Premises Rented To You Limit as described in **SECTION III - LIMITS OF INSURANCE**.

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.** **Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE**; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY; SECTION I - COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY;** or medical expenses under **SECTION I - COVERAGES, COVERAGE C. MEDICAL PAYMENTS**.

No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under **SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**.

**b.** This insurance applies to "personal and advertising injury" only if:

**(1)** The "personal and advertising injury" is caused by an offense arising out of your business; and

**(2)** The "personal and advertising injury" offense was committed in the "coverage territory" during the policy period; and

**(3)** Prior to the "coverage term" in which the "personal and advertising injury" offense is committed, you did not know, per Paragraph **1.d.** below, that the offense had been committed or had begun to be committed, in whole or in part.

**c.** "Personal and advertising injury" caused by an offense which:

**(1)** Was committed during the "coverage term"; and

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000023

**(2)** Was not, prior to the "coverage term", known by you, per Paragraph **1.d.** below, to have been committed;

includes any continuation, change or resumption of that offense after the end of the "coverage term" in which it first became known by you.

**d.** You will be deemed to know that a "personal and advertising injury" offense has been committed at the earliest time when any "authorized representative":

**(1)** Reports all, or any part, of the "personal and advertising injury" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "personal and advertising injury";

**(3)** First observes, or reasonably should have first observed, the offense that caused the "personal and advertising injury";

**(4)** Becomes aware, or reasonably should have become aware, by any means, other than as described in **(3)** above, that the offense had been committed or had begun to be committed; or

**(5)** Becomes aware, or reasonably should have become aware, of a condition from which "personal and advertising injury" is substantially certain to occur.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation of Rights of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior to Coverage Term**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the later of the following:

**(1)** The inception of this Coverage Part; or

**(2)** The "coverage term" in which insurance coverage is sought.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "personal and advertising injury" is caused by or arises out of an offense committed subsequent to the execution of the contract or agreement. When a claim for such "personal and advertising injury" is made, we will defend that claim, provided the insured has assumed the obligation to defend such claim in the "insured contract". Such defense payments will not reduce the limits of insurance.

**f. Breach of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality or Performance of Goods - Failure to Conform to Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement of Copyright, Patent, Trademark or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, pat-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000024

ent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds in Media and Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web-sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **17. a., b.** and **c.** of "personal and advertising injury" under **SECTION V - DEFINITIONS**.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet is not, by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board any insured hosts, owns, or over which any insured exercises control.

**l. Unauthorized Use of Another's Name or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Employment Related Practices**

"Personal and advertising injury" to:

**(1)** A person arising out of any:

  **(a)** Refusal to employ that person;

  **(b)** Termination of that person's employment; or

  **(c)** Other employment-related practices, policies, acts or omissions including but not limited to coercion, criticism, demotion, evaluation, failure to promote, reassignment, discipline, defamation, harassment, humiliation

or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b)** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**n. Pollutant**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" at any time.

**o. Pollutant-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**p. Asbestos**

"Personal and advertising injury" arising out of, attributable to, or any way related to asbestos in any form or transmitted in any manner.

**q. Additional Insured Prior Knowledge**

An additional insured added by attachment of an endorsement to this Coverage Part that is seeking coverage for a claim or "suit", if that additional insured knew, per the following paragraph, that a "personal and advertising injury" offense had been committed or had begun to be committed, in whole or in part, prior to the "coverage term" in which such offense

was committed or began to be committed.

An additional insured added by attachment of an endorsement to this Coverage Part will be deemed to have known that a "personal and advertising injury" offense has been committed or has begun to be committed at the earliest time when that additional insured, or any one of its owners, members, partners, managers, executive officers, "employees" assigned to manage that additional insured's insurance program, or "employees" assigned to give or receive notice of an "occurrence", "personal and advertising injury" offense, claim or "suit":

(1) Reports all, or any part, of the "personal and advertising injury" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "personal and advertising injury";

(3) First observes, or reasonably should have first observed, the offense that caused the "personal and advertising injury";

(4) Becomes aware, or reasonably should have become aware, by any means other than as described in (3) above, that the "personal and advertising injury" offense had been committed or had begun to be committed; or

(5) Becomes aware, or reasonably should have become aware, of a condition from which "personal and advertising injury" is substantially certain to occur.

**r. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**s. Distribution of Material in Violation of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**COVERAGE C. MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within three years of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000026

a. **Any Insured**

To any insured, except "volunteer workers".

b. **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. **Injury on Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

d. **Workers' Compensation and Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. **Athletic Activities**

To any person injured while officiating, coaching, practicing for, instructing or participating in any physical exercises or games, sports, or athletic contests or exhibitions of an athletic or sports nature.

f. **Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

g. **Coverage A Exclusions**

Excluded under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**.

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

5. All costs taxed against the insured in the "suit".

6. Prejudgment interest awarded against the insured on that part of the judgment we become obligated to pay and which falls within the applicable limit of insurance. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

## SECTION II - WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000027

you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by; or

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by,

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Insurance under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III - LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** **a.** The General Aggregate Limit is the most we will pay for the sum of:

**(1)** Medical expenses under **COVERAGE C. MEDICAL PAYMENTS;**

**(2)** Damages under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**(3)** Damages under **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY.**

This General Aggregate Limit will not apply if either the Location General Aggre-

gate Limit of Insurance, Paragraph **2.b.**, or the Construction Project General Aggregate Limit of Insurance, Paragraph **2.c.** applies.

**b.** A separate Location General Aggregate Limit of Insurance, equal to the amount of the General Aggregate Limit shown in the Declarations, shall apply to each location owned by, or rented or leased to you and is the most we will pay for the sum of:

**(1)** Damages under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**(2)** Medical expenses under **COVERAGE C. MEDICAL PAYMENTS,**

which can be attributed to operations at only a single location owned by, or rented or leased to you.

**c.** A separate Construction Project General Aggregate Limit of Insurance, equal to the amount of the General Aggregate Limit shown in the Declarations, shall apply to each construction project and is the most we will pay for the sum of:

**(1)** Damages under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**(2)** Medical expenses under **COVERAGE C. MEDICAL PAYMENTS;**

which can be attributed only to ongoing operations and only at a single construction project.

**d.** Only for the purpose of determining which General Aggregate Limit of Insurance, **2.a., 2.b.,** or **2.c.**, applies:

**(1)** Location means premises involving the same or connecting lots, or premises, whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**(2)** Construction project means a location you do not own, rent or lease where ongoing improvements, alterations, installation, demolition or maintenance work is performed by you or on your behalf. All connected ongoing improvements, alterations, installation, demolition or maintenance work performed by you or on

your behalf at the same location for the same persons or organizations, no matter how often or under how many different contracts, will be deemed to be a single construction project.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to **2.a.** above, the Personal and Advertising Injury Limit is the most we will pay under **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to **2. or 3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**; and

**b.** Medical expenses under **COVERAGE C. MEDICAL PAYMENTS;**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to **5.** above, the Damage to Premises Rented to You Limit is the most we will pay under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire or explosion, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to **5.** above, the Medical Expense Limit is the most we will pay under **COVERAGE C. MEDICAL PAYMENTS** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each "coverage term".

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties in the Event of Occurrence, Offense, Claim or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or

a "personal and advertising injury" offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable

under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Liberalization**

If, within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part as of the latter of:

**a.** The date we implemented the change in your state; or

**b.** The date this Coverage Part became effective; and

will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

**5. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** or **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar insurance for "your work";

**(b)** That is Fire or Explosion insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to

premises rented to you or temporarily occupied by you with permission of the owner; or

**(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, g. Aircraft, Auto or Watercraft**.

**(2)** Any other primary insurance available to the insured covering liability for damages arising out of the premises or operations, or the products and completed operations, for which the insured has been added as an additional insured by attachment of an endorsement.

**(3)** Any other insurance:

**(a)** Whether primary, excess, contingent or on any other basis, except when such insurance is written specifically to be excess over this insurance; and

**(b)** That is a consolidated (wrap-up) insurance program which has been provided by the prime contractor/project manager or owner of the consolidated project in which you are involved.

When this insurance is excess, we will have no duty under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** or **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c.** **Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**6.** **Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If:

**(1)** The earned premium is less than the deposit premium, we will return the excess to the first Named Insured; or

**(2)** The earned premium is greater than the deposit premium, the difference will be due and payable to us by the first Named Insured upon notice from us.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**7.** **Representations**

By accepting this Coverage Part, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this Coverage Part in reliance upon your representations.

**8.** **Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000031

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**9. Transfer of Rights of Recovery Against Others to Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**10. Two or More Coverage Forms or Policies Issued by Us**

If this Coverage Part and any other Coverage Form, Coverage Part or policy issued to you by us or any company affiliated with us apply to the same "occurrence" or "personal and advertising injury" offense, the aggregate maximum limit of insurance under all the Coverage Forms, Coverage Parts or policies shall not exceed the highest applicable limit of insurance under any one Coverage Form, Coverage Part or policy. This condition does not apply to any Coverage Form, Coverage Part or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Part.

**11. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - DEFINITIONS**

1. "Advertisement" means a notice that is broadcast, telecast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. "Advertisement" includes a publicity article. For purposes of this definition:

   **a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   **b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an "advertisement".

2. "Authorized representative" means:

   **a.** If you are designated in the Declarations as:

   **(1)** An individual, you and your spouse are "authorized representatives".

   **(2)** A partnership or joint venture, your members, your partners, and their spouses are "authorized representatives".

   **(3)** A limited liability company, your members and your managers are "authorized representatives".

   **(4)** An organization other than a partnership, joint venture or limited liability company, your "executive officers" and directors are "authorized representatives". Provided you are not a publicly traded organization, your stockholders are also "authorized representatives".

   **(5)** A trust, your trustees are "authorized representatives".

   **b.** Your "employees":

   **(1)** Assigned to manage your insurance program; or

   **(2)** Responsible for giving or receiving notice of an "occurrence", "personal and advertising injury" offense, claim or "suit";

   are also "authorized representatives".

3. "Auto" means:

   **a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

   **b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

   However, "auto" does not include "mobile equipment".

4. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

5. "Coverage term" means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

   **a.** The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year policy period, each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000032

12:00 AM standard time at your mailing address shown in the Declarations on the earlier of:

**(1)** The day the policy period shown in the Declarations ends; or

**(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

**b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

**6.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in **a.** above;

**(2)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication,

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement to which we agree.

**7.** "Electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**8.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**9.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**10.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**11.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

**b.** Your fulfilling the terms of the contract or agreement.

**12.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for "property damage" by fire or explosion to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury", "property damage" or "personal and advertising injury" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury", "property damage" or "personal and advertising injury" arising out of construction or demolition operations, within 50 feet of any rail-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000033

road property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(2)** above and supervisory, inspection, architectural or engineering activities;

**(4)** That indemnifies an advertising, public relations or media consulting firm for "personal and advertising injury" arising out of the planning, execution or failure to execute marketing communications programs. Marketing communications programs include but are not limited to comprehensive marketing campaigns; consumer, trade and corporate advertising for all media; media planning, buying, monitoring and analysis; direct mail; promotion; sales materials; design; presentations; point-of-sale materials; market research; public relations and new product development;

**(5)** Under which the insured, if an advertising, public relations or media consulting firm, assumes liability for "personal and advertising injury" arising out of the insured's rendering or failure to render professional services, including those services listed in Paragraph **(4)**, above;

**(6)** That indemnifies a web-site designer or content provider, or Internet search, access, content or service provider for injury or damage arising out of the planning, execution or failure to execute Internet services. Internet services include but are not limited to design, production, distribution, maintenance and administration of web-sites and web-banners; hosting web-sites; registering domain names; registering with search engines; marketing analysis; and providing access to the Internet or other similar networks; or

**(7)** Under which the insured, if a website designer or content provider, or Internet search, access, content or service provider, assumes liability for injury or damage arising out of the insured's rendering or failure to render Internet services, including those listed in Paragraph **(6)**, above.

**13.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" includes supervisors furnished to you by the labor leasing firm. "Leased worker" does not include a "temporary worker".

**14.** "Loading or unloading" means the handling of property:

    **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    **b.** While it is in or on an aircraft, watercraft or "auto"; or

    **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**15.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    **b.** Vehicles maintained for use solely on or next to premises you own or rent;

    **c.** Vehicles that travel on crawler treads;

    **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        **(1)** Power cranes, shovels, loaders, diggers or drills; or

        **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

    **e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to

permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**16.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**17.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**18.** "Pollutant" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum, petroleum products and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property or the environment regardless of whether the injury or damage is caused directly or indirectly by the "pollutants" and whether:

**a.** The insured is regularly or otherwise engaged in activities which taint or degrade the environment; or

**b.** The insured uses, generates or produces the "pollutant".

**19.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed; or

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000035

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a schedule, states that products-completed operations are included.

**20.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, "electronic data" is not tangible property.

**21.** "Suit" means a civil proceeding in which money damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent;

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent; or

**c.** An appeal of a civil proceeding.

**22.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**23.** "Volunteer worker" means a person who is not your "employee", and who donates his or

her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**24.** "Workplace" means that place and during such hours to which the "employee" sustaining "bodily injury" was assigned by you, or any other person or entity acting on your behalf, to work on the date of "occurrence".

**25.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**26.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000036

# NUCLEAR ENERGY LIABILITY EXCLUSION
## (Broad Form)

**1.** The insurance does not apply:

    **A.** Under any Liability Coverage, to "bodily injury" or "property damage":

        **(1)** With respect to which an insured under this Coverage Part is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the insured is, or had this Coverage Part not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    **B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

    **C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:

        **(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an insured, or **(b)** has been discharged or dispersed therefrom;

        **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an insured; or

        **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this exclusion:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

    **A.** Any "nuclear reactor";

    **B.** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

    **C.** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000037

**D.** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000038

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**

### SCHEDULE

| COVERAGE | Amount and Basis of Deductible PER CLAIM or PER OCCURRENCE | |
|---|---|---|
| Bodily Injury Liability | $ SEE BELOW | $ |
| OR | | |
| Property Damage Liability | $ | $ |
| OR | | |
| Bodily Injury Liability and/or Property Damage Liability Combined | $ | $ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement.  If no limitation is entered, the deductibles apply to damages for all "bodily injury" and "property damage", however caused.)

```
$5,000 PD DEDUCTIBLE PER OCCURRENCE FOR PREMISES/OPERATIONS FOR CLASS 91580
$5,000 PD DEDUCTIBLE PER OCCURRENCE FOR PRODUCTS/COMP. OPS FOR CLASS 91580
$5,000 PD DEDUCTIBLE PER OCCURRENCE FOR PREMISES/OPERATIONS FOR CLASS 91585
$5,000 PD DEDUCTIBLE PER OCCURRENCE FOR PRODUCTS/COMP. OPS FOR CLASS 91585
```

**A.** Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

**B.** You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

**1.** **PER CLAIM BASIS.** If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

    **a.** Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

    **b.** Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

    **c.** Under Bodily Injury Liability and/or Property Damage Liability Coverage

Combined, to all damages sustained by any one person because of:

    **(1)** "Bodily injury";

    **(2)** "Property damage"; or

    **(3)** "Bodily injury" and "property damage" combined

as the result of any one "occurrence".

If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

With respect to "property damage", person includes an organization.

**2.** **PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

    **a.** Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

    **b.** Under Property Damage Liability Coverage, to all damages because of "property damage"; or

    **c.** Under Bodily Injury Liability and/or Property Damage Liability Coverage

Copyright, Insurance Services Office, Inc., 1994
000039

Combined, to all damages because of:

**(1)** "Bodily injury";

**(2)** "Property damage"; or

**(3)** "Bodily injury" and "property damage" combined

as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

**C.** The terms of this insurance, including those with respect to:

**1.** Our right and duty to defend the insured against any "suits" seeking those damages; and

**2.** Your duties in the event of an "occurrence", claim, or "suit"

apply irrespective of the application of the deductible amount.

**D.** We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

 Copyright, Insurance Services Office, Inc., 1994

000040

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - CONTRACTORS - PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

1. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

   **a.** Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

   **b.** Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

   This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional services by you or on your behalf with respect to the operations described above.

2. Subject to Paragraph **3.** below, professional services include:

   **a.** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

   **b.** Supervisory or inspection activities performed as part of any related architectural or engineering activities.

3. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

© Insurance Services Office, Inc., 2012
000041

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONTRACTORS' COMMERCIAL GENERAL LIABILITY BROADENED ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A. Endorsement - Table of Contents:**

| Coverage: | Begins on Page: |
|---|---|
| 1. Employee Benefit Liability Coverage | 3 |
| 2. Unintentional Failure To Disclose Hazards | 9 |
| 3. Damage To Premises Rented To You | 9 |
| 4. Supplementary Payments | 10 |
| 5. Medical Payments | 10 |
| 6. 180 Day Coverage For Newly Formed Or Acquired Organizations | 10 |
| 7. Waiver Of Subrogation | 11 |
| 8. Automatic Additional Insured - Specified Relationships: | 11 |

- Managers Or Lessors Of Premises;
- Lessor Of Leased Equipment;
- Vendors;
- State Or Governmental Agency Or Subdivision Or Political Subdivision - Permits Or Authorizations Relating To Premises; and
- Mortgagee, Assignee Or Receiver

| | |
|---|---|
| 9. Property Damage To Borrowed Equipment | 14 |
| 10. Employees As Insureds - Specified Health Care Services And Good Samaritan Services | 15 |
| 11. Broadened Notice Of Occurrence | 15 |
| 12. Nonowned Aircraft | 15 |
| 13. Bodily Injury Redefined | 15 |
| 14. Expected Or Intended Injury Redefined | 15 |
| 15. Former Employees As Insureds | 15 |
| 16. Voluntary Property Damage Coverage And Care, Custody Or Control Liability Coverage | 16 |
| 17. Broadened Contractual Liability - Work Within 50' Of Railroad Property | 17 |
| 18. Alienated Premises | 17 |

**B. Limits Of Insurance:**

The Commercial General Liability Limits of Insurance apply to the insurance provided by this endorsement, except as provided below:

**1. Employee Benefit Liability Coverage**

Each Employee Limit: $1,000,000
Aggregate Limit: $3,000,000
Deductible Amount: $ 1,000

**3. Damage To Premises Rented To You**

The lesser of:

**a.** The Each Occurrence Limit shown in the Declarations; or

**b.** $500,000 unless otherwise stated $ _____

**4. Supplementary Payments**

**a.** Bail Bonds: $2,500

    **b.** Loss Of Earnings: $ 500

**5.** **Medical Payments**

    Medical Expense Limit: $ 10,000

**9.** **Property Damage To Borrowed Equipment**

    Each Occurrence Limit:  $10,000
    Deductible Amount:      $   250

**16.** **Voluntary Property Damage Coverage** (Coverage **a.**) **And Care**, **Custody Or Control Liability Coverage** (Coverage **b.**)

    **Limits Of Insurance**
    Coverage **a.**
    $1,000 Each Occurrence
    $5,000 Aggregate
    Coverage **b.** $5,000 Each Occurrence unless otherwise stated $ _____

    **Deductible Amount** (Each Occurrence)
    Coverage **a.** $250
    Coverage **b.** $250 unless otherwise stated $ _____

| COVERAGE | PREMIUM BASIS<br>**(a)** Area<br>**(b)** Payroll<br>**(c)** Gross Sales<br>**(d)** Units<br>**(e)** Other | RATE<br>(For Limits in Excess of $5,000) | ADVANCE PREMIUM<br>(For Limits in Excess of $5,000) |
|---|---|---|---|
| **b.** Care, Custody Or Control | | | $ |
| **TOTAL ANNUAL PREMIUM** | | | $ |

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.
000043

## C. Coverages

### 1. Employee Benefit Liability Coverage

**a.** The following is added to **Section I - Coverages:**

**Employee Benefit Liability Coverage**

**(1) Insuring Agreement**

**(a)** We will pay those sums that the insured becomes legally obligated to pay as damages caused by any act, error or omission of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any claim or "suit" that may result. But:

**1)** The amount we will pay for damages is limited as described in **Section III - Limits Of Insurance**; and

**2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **Supplementary Payments**.

**(b)** This insurance applies to damages only if the act, error or omission, is negligently committed in the "administration" of your "employee benefit program"; and

**1)** Occurs during the policy period; or

**2)** Occurred prior to the "first effective date" of this endorsement provided:

**a)** You did not have knowledge of a claim or "suit" on or before the "first effective date" of this endorsement.

You will be deemed to have knowledge of a claim or "suit" when any "authorized representative";

**i)** Reports all, or any part, of the act, error or omission to us or any other insurer;

**ii)** Receives a written or verbal demand or claim for damages because of the act, error or omission; and

**b)** There is no other applicable insurance.

**(2) Exclusions**

This insurance does not apply to:

**(a) Bodily Injury, Property Damage Or Personal And Advertising Injury**

"Bodily injury", "property damage" or "personal and advertising injury".

**(b) Dishonest, Fraudulent, Criminal Or Malicious Act**

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

**(c) Failure To Perform A Contract**

Damages arising out of failure of performance of contract by any insurer.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000044

**(d) Insufficiency Of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

**(e) Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any claim based upon:

**1)** Failure of any investment to perform;

**2)** Errors in providing information on past performance of investment vehicles; or

**3)** Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

**(f) Workers' Compensation And Similar Laws**

Any claim arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

**(g) ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

**(h) Available Benefits**

Any claim for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

**(i) Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

**(j) Employment-Related Practices**

Any liability arising out of any:

**(1)** Refusal to employ;

**(2)** Termination of employment;

**(3)** Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment - related practices, acts or omissions; or

**(4)** Consequential liability as a result of **(1)**, **(2)** or **(3)** above.

This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

**(3) Supplementary Payments**

**Section I - Coverages, Supplementary Payments - Coverages A And B** also apply to this Coverage.

**b. Who Is An Insured**

As respects **Employee Benefit Liability Coverage, Section II - Who Is An Insured** is replaced by the following:

**(1)** If you are designated in the Declarations as:

**(a)** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**(b)** A partnership or joint venture, you are an insured. Your members, your part-

ners, and their spouses are also insureds but only with respect to the conduct of your business.

**(c)** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**(d)** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**(e)** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**(2)** Each of the following is also an insured:

**(a)** Each of your "employees" who is or was authorized to administer your "employee benefit program";

**(b)** Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed; or

**(c)** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**(3)** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organi-

zation. However, coverage under this provision:

**(a)** Is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier; and

**(b)** Does not apply to any act, error or omission that was committed before you acquired or formed the organization.

**c. Limits Of Insurance**

As respects **Employee Benefit Liability Coverage**, **Section III - Limits Of Insurance** is replaced by the following:

**(1)** The Limits of Insurance shown in Section **B. Limits Of Insurance**, **1. Employee Benefit Liability Coverage** and the rules below fix the most we will pay regardless of the number of:

**(a)** Insureds;

**(b)** Claims made or "suits" brought;

**(c)** Persons or organizations making claims or bringing "suits";

**(d)** Acts, errors or omissions; or

**(e)** Benefits included in your "employee benefit program".

**(2)** The Aggregate Limit shown in Section **B. Limits Of Insurance**, **1. Employee Benefit Liability Coverage** of this endorsement is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

**(3)** Subject to the limit described in **(2)** above, the Each Employee Limit shown in Section **B. Limits Of Insurance**, **1. Employee Benefit Liability Coverage** of this endorsement is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

**(a)** An act, error or omission; or

**(b)** A series of related acts, errors or omissions, regardless of the amount of time that lapses between such acts, errors or omissions;

negligently committed in the "administration" of your "employee benefit program".

However, the amount paid under this endorsement shall not exceed, and will be subject to the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program."

**(4) Deductible Amount**

**(a)** Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the Deductible Amount stated in the Declarations as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this deductible.

**(b)** The Deductible Amount stated in the Declarations applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

**(c)** The terms of this insurance, including those with respect to:

**1)** Our right and duty to defend the insured against any "suits" seeking those damages; and

**2)** Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or claim;

apply irrespective of the application of the Deductible Amount.

**(d)** We may pay any part or all of the Deductible Amount to effect settlement of any claim or "suit" and, upon no-

tification of the action taken, you shall promptly reimburse us for such part of the Deductible Amount as we have paid.

**d. Additional Conditions**

As respects **Employee Benefit Liability Coverage, Section IV - Commercial General Liability Conditions** is amended as follows:

**(1)** Item **2. Duties In The Event Of Occurrence, Offense, Claim Or Suit** is replaced by the following:

**2. Duties In The Event Of An Act, Error Or Omission, Or Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a claim. To the extent possible, notice should include:

**(1)** What the act, error or omission was and when it occurred; and

**(2)** The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers re-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000047

ceived in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

**(2)** Item **5. Other Insurance** is replaced by the following:

**5. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **c.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **b.** below.

**b. Method Of Sharing**

If all of the other insurance permits contribu-

tion by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**c. No Coverage**

This insurance shall not cover any loss for which the insured is entitled to recovery under any other insurance in force previous to the effective date of this Coverage Part.

**e. Additional Definitions**

As respects **Employee Benefit Liability Coverage, Section V - Definitions** is amended as follows:

**(1)** The following definitions are added:

**1.** "Administration" means:

**a.** Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

**b.** Interpreting the "employee benefit programs";

**c.** Handling records in connection with the "employee benefit programs"; or

**d.** Effecting, continuing or terminating any "employee's" participation in

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000048

any benefit included in the "employee benefit program".

However, "administration" does not include:

**a.** Handling payroll deductions; or

**b.** The failure to effect or maintain any insurance or adequate limits of coverage of insurance, including but not limited to unemployment insurance, social security benefits, workers' compensation and disability benefits.

**2.** "Cafeteria plans" means plans authorized by applicable law to allow "employees" to elect to pay for certain benefits with pre-tax dollars.

**3.** "Employee benefit programs" means a program providing some of all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

**a.** Group life insurance; group accident or health insurance; dental, vision and hearing plans; and flexible spending accounts; provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

**b.** Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

**c.** Unemployment insurance, social security benefits, workers' compensation and disability benefits; and

**d.** Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies.

**4.** "First effective date" means the date upon which coverage was first effected in a series of uninterrupted renewals of insurance coverage.

**(2)** The following definitions are deleted in their entirety and replaced by the following:

**8.** "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**21.** "Suit" means a civil proceeding in which money damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent;

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent; or

**c.** An appeal of a civil proceeding.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000049

2. **Unintentional Failure To Disclose Hazards**

   **Section IV - Commercial General Liability Conditions, 7. Representations** is amended by the addition of the following:

   Based on our dependence upon your representations as to existing hazards, if unintentionally you should fail to disclose all such hazards at the inception date of your policy, we will not reject coverage under this Coverage Part based solely on such failure.

3. **Damage To Premises Rented To You**

   a. The last Paragraph of **2. Exclusions** under **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

   Exclusions **c.** through **q.** do not apply to "property damage" by fire, explosion, lightning, smoke or soot to premises while rented to you or temporarily occupied by you with permission of the owner, for which the amount we will pay is limited to the **Damage To Premises Rented To You** Limit as described in **Section III - Limits Of Insurance.**

   b. The insurance provided under **Section I - Coverage A - Bodily Injury And Property Damage Liability** applies to "property damage" arising out of water damage to premises that are both rented to and occupied by you.

   (1) As respects Water Damage Legal Liability, as provided in Paragraph **3.b.** above:

   The exclusions under **Section I - Coverage A - Bodily Injury And Property Damage Liability, 2. Exclusions,** other than **i. War** and the **Nuclear Energy Liability Exclusion (Broad Form),** are deleted and the following are added:

   This insurance does not apply to:

   (a) "Property damage":

   (i) Assumed in any contract or agreement; or

   (ii) Caused by or resulting from any of the following:

   1) Wear and tear;

   2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

   3) Smog;

   4) Mechanical breakdown, including rupture or bursting caused by centrifugal force;

   5) Settling, cracking, shrinking or expansion;

   6) Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals; or

   7) Presence, growth, proliferation, spread or any activity of fungus, including mold or mildew, and any mycotoxins, spores, scents or byproducts produced or released by fungi.

   (b) "Property damage" caused directly or indirectly by any of the following:

   (i) Earthquake, volcanic eruption, landslide or any other earth movement;

   (ii) Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

   (iii) Water under the ground surface pressing on, or flowing or seeping through:

   1) Foundations, walls, floors or paved surfaces;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000050

**2)** Basements, whether paved or not; or

**3)** Doors, windows or other openings.

**(c)** "Property damage" caused by or resulting from water that leaks or flows from plumbing, heating, air conditioning, fire protection systems, or other equipment, caused by or resulting from freezing, unless:

**(i)** You did your best to maintain heat in the building or structure; or

**(ii)** You drained the equipment and shut off the water supply if the heat was not maintained.

**(d)** "Property damage" to:

**(i)** Plumbing, heating, air conditioning, fire protection systems, or other equipment or appliances; or

**(ii)** The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet or ice, whether driven by wind or not.

**c. Limit Of Insurance**

With respect to the insurance afforded in Paragraphs **3.a.** and **3.b.** above, the **Damage To Premises Rented To You** Limit as shown in the Declarations is amended as follows:

**(1)** Paragraph **6.** of **Section III - Limits Of Insurance** is replaced by the following:

**6.** Subject to Paragraph **5.** above, the **Damage To Premises Rented To You** Limit is the most we will pay under **Coverage A - Bodily Injury And Property Damage Liability** for damages because of "property damage" to any one premises:

**a.** While rented to you, or temporarily occupied by

you with permission of the owner;

**b.** In the case of damage by fire, explosion, lightning, smoke or soot, while rented to you; or

**c.** In the case of damage by water, while rented to and occupied by you.

**(2)** The most we will pay is limited as described in Section **B. Limits Of Insurance, 3. Damage To Premises Rented To You** of this endorsement.

**4. Supplementary Payments**

Under **Section I - Supplementary Payments - Coverages A And B:**

**a.** Paragraph **2.** is replaced by the following:

Up to the limit shown in Section **B. Limits Of Insurance, 4.a.** Bail Bonds of this endorsement for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**b.** Paragraph **4.** is replaced by the following:

All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to the limit shown in Section **B. Limits Of Insurance, 4.b.** Loss Of Earnings of this endorsement per day because of time off from work.

**5. Medical Payments**

The Medical Expense Limit of Any One Person as stated in the Declarations is amended to the limit shown in Section **B. Limits Of Insurance, 5. Medical Payments** of this endorsement.

**6. 180 Day Coverage For Newly Formed Or Acquired Organizations**

**Section II - Who Is An Insured** is amended as follows:

Subparagraph **a.** of Paragraph **3.** is replaced by the following:

**a.** Insurance under this provision is afforded only until the 180th day after

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000051

you acquire or form the organization or the end of the policy period, whichever is earlier;

7. **Waiver Of Subrogation**

**Section IV - Commercial General Liability Conditions, 9. Transfer Of Rights Of Recovery Against Others To Us** is amended by the addition of the following:

We waive any right of recovery we may have against any person or organization against whom you have agreed to waive such right of recovery in a written contract or agreement because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a written contract or agreement with that person or organization and included in the "products-completed operations hazard". However, our rights may only be waived prior to the "occurrence" giving rise to the injury or damage for which we make payment under this Coverage Part. The insured must do nothing after a loss to impair our rights. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce those rights.

8. **Automatic Additional Insured - Specified Relationships**

a. The following is added to **Section II - Who Is An Insured**:

(1) Any person(s) or organization(s) described in Paragraph **8.a.(2)** of this endorsement (hereinafter referred to as additional insured) whom you are required to add as an additional insured under this Coverage Part by reason of a written contract, written agreement, written permit or written authorization.

(2) Only the following persons or organizations are additional insureds under this endorsement, and insurance coverage provided to such additional insureds is limited as provided herein:

(a) **Managers Or Lessors Of Premises**

The manager or lessor of a premises leased to you with whom you have agreed per Paragraph **8.a.(1)** of this endorsement to provide insurance, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you, subject to the following additional exclusions:

This insurance does not apply to:

(i) Any "occurrence" which takes place after you cease to be a tenant in that premises;

(ii) Structural alterations, new construction or demolition operations performed by or on behalf of such additional insured.

(b) **Lessor Of Leased Equipment**

Any person or organization from whom you lease equipment when you and such person(s) or organization(s) have agreed per Paragraph **8.a.(1)** of this endorsement to provide insurance. Such person(s) or organization(s) are insureds only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person(s) or organization(s). A person's or organization's status as an additional insured under this endorsement ends when their contract or agreement with you for such leased equipment ends. However, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

(c) **Vendors**

Any person or organization (referred to below as vendor) with whom you have agreed per Paragraph **8.a.(1)** of this endorsement to provide insurance, but only with respect to "bodily injury" or "property damage" arising out of "your products" which are distributed or sold in the regular course of the

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000052

vendor's business, subject to the following additional exclusions:

**(i)** The insurance afforded the vendor does not apply to:

**1)** "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

**2)** Any express warranty unauthorized by you;

**3)** Any physical or chemical change in the product made intentionally by the vendor;

**4)** Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

**5)** Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

**6)** Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

**7)** Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

**8)** "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

**a)** The exceptions contained in Paragraphs **(c) (i) 4)** or **6)** of this endorsement; or

**b)** Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

**(ii)** This insurance does not apply to any insured person or organization:

**1)** From whom you have acquired such products, or any ingredient, part

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000053

or container, entering into, accompanying or containing such products; or

2) When liability included within the "products-completed operations hazard" has been excluded under this Coverage Part with respect to such products.

**(d) State Or Governmental Agency Or Subdivision Or Political Subdivision - Permits Or Authorizations Relating To Premises**

Any state or governmental agency or subdivision or political subdivision with which you have agreed per Paragraph **8.a.(1)** of this endorsement to provide insurance, subject to the following additional provision:

This insurance applies only with respect to the following hazards for which the state or governmental agency or subdivision or political subdivision has issued a permit or authorization in connection with premises you own, rent or control and to which this insurance applies:

**(i)** The existence, maintenance, repair, construction, erection or removal of advertising signs, awnings, canopies, cellar entrances, coal holes, driveways, manholes, marquees, hoist away openings, sidewalk vaults, street banners or decorations and similar exposures; or

**(ii)** The construction, erection or removal of elevators; or

**(iii)** The ownership, maintenance or use of any elevators covered by this insurance.

**(e) Mortgagee, Assignee Or Receiver**

Any person or organization with whom you have agreed per Paragraph **8.a.(1)** of this endorsement to provide insurance, but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you. However, this insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**(3)** The insurance afforded to additional insureds described in Paragraph **8.a.(1)** of this endorsement:

**(a)** Only applies to the extent permitted by law; and

**(b)** Will not be broader than that which you are required by the written contract, written agreement, written permit or written authorization to provide for such additional insured; and

**(c)** Does not apply to any person, organization, vendor, state, governmental agency or subdivision or political subdivision, specifically named as an additional insured under any other provision of, or endorsement added to, this Coverage Part, provided such other provision or endorsement covers the injury or damage for which this insurance applies.

**b.** With respect to the insurance afforded to the additional insureds described in Paragraph **8.a.(1)** of this endorsement, the following is added to **Section III - Limits Of Insurance**:

The most we will pay on behalf of the additional insured is the amount of insurance:

**(1)** Required by the written contract, written agreement, written permit or written authorization described

in Paragraph **8.a.(1)** of this endorsement; or

**(2)** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

**c.** **Section IV - Commercial General Liability Conditions** is amended to include the following:

**Automatic Additional Insured Provision**

This insurance applies only if the "bodily injury" or "property damage" occurs, or the "personal and advertising injury" offense is committed:

**(1)** During the policy period; and

**(2)** Subsequent to your execution of the written contract or written agreement, or the issuance of a written permit or written authorization, described in Paragraph **8.a.(1)**.

**d.** **Section IV - Commercial General Liability Conditions** is amended as follows:

Condition **5. Other Insurance** is amended to include:

**Primary And Noncontributory Insurance**

This insurance is primary to and will not seek contribution from any other insurance available to an additional insured per Paragraph **8.a.(1)** of this endorsement provided that:

**(1)** The additional insured is a Named Insured under such other insurance; and

**(2)** You have agreed in writing in a contract, agreement, permit or authorization described in **8.a.(2)** of this endorsement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

**9.** **Property Damage To Borrowed Equipment**

**a.** The following is added to **Exclusion 2.j. Damage To Property** under Sec-

tion **I - Coverage A - Bodily Injury And Property Damage Liability:**

Paragraphs **(3)** and **(4)** of this exclusion do not apply to tools or equipment loaned to you, provided they are not being used to perform operations at the time of loss.

**b.** With respect to the insurance provided by this section of the endorsement, the following additional provisions apply:

**(1)** The Limits of Insurance shown in the Declarations are replaced by the limits designated in Section **B. Limits Of Insurance, 9. Property Damage To Borrowed Equipment** of this endorsement with respect to coverage provided by this endorsement. These limits are inclusive of and not in addition to the limits being replaced. The Limits of Insurance shown in Section **B. Limits Of Insurance, 9. Property Damage To Borrowed Equipment** of this endorsement fix the most we will pay in any one "occurrence" regardless of the number of:

**(a)** Insureds;

**(b)** Claims made or "suits" brought; or

**(c)** Persons or organizations making claims or bringing "suits".

**(2)** Deductible Clause

**(a)** Our obligation to pay damages on your behalf applies only to the amount of damages for each "occurrence" which are in excess of the Deductible Amount stated in Section **B. Limits Of Insurance, 9. Property Damage To Borrowed Equipment** of this endorsement. The limits of insurance will not be reduced by the application of such deductible amount.

**(b)** **Section IV - Commercial General Liability Conditions, 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit,** applies to each claim or "suit" irrespective of the amount.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000055

**(c)** We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

## 10. Employees As Insureds - Specified Health Care Services And Good Samaritan Services

Paragraph **2.a.(1)(d)** under **Section II - Who Is An Insured** does not apply to:

**a.** Your "employees" who provide professional health care services on your behalf as a duly licensed nurse, emergency medical technician or paramedic in the jurisdiction where an "occurrence" or offense to which this insurance applies takes place; or

**b.** Your "employees" or "volunteer workers", other than an employed or volunteer doctor, providing first aid or good samaritan services during their work hours for you will be deemed to be acting within the scope of their employment by you or performing duties related to the conduct of your business.

## 11. Broadened Notice Of Occurrence

Paragraph **a.** of Condition **2. Duties In The Event Of Occurrence, Offense, Claim Or Suit** under **Section IV - Commercial General Liability Conditions** is replaced by the following:

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

This requirement applies only when the "occurrence" or offense is known to an "authorized representative".

## 12. Nonowned Aircraft

The following is added to **Exclusion 2.g. Aircraft, Auto Or Watercraft** under **Section I - Coverage A - Bodily Injury And Property Damage Liability**:

This exclusion does not apply to an aircraft you do not own, provided that:

**a.** The pilot in command holds a current effective certificate, issued by a duly constituted authority of the United States of America or Canada, designating that person as a commercial or airline transport pilot;

**b.** The aircraft is rented with a trained, paid crew; and

**c.** The aircraft does not transport persons or cargo for a charge.

## 13. Bodily Injury Redefined

**Section V - Definitions, 4.** "Bodily injury" is replaced by the following:

**4.** "Bodily injury" means bodily harm or injury, sickness, disease, disability, humiliation, shock, fright, mental anguish or mental injury, including care, loss of services or death resulting from any of these at any time.

## 14. Expected Or Intended Injury Redefined

The last sentence of **Exclusion 2.a. Expected Or Intended Injury** under **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

## 15. Former Employees As Insureds

The following is added to Paragraph **2.** under **Section II - Who Is An Insured:**

**2.** Each of the following is also an insured:

Any of your former "employees", directors, managers, members, partners or "executive officers", including but not limited to retired, disabled or those on leave of absence, but only for acts within the scope of their employment by you or for duties related to the conduct of your business.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000056

## 16. Voluntary Property Damage Coverage

### a. Coverage D - Voluntary Property Damage Coverage

**Section I - Coverages** is amended to include the following:

#### (1) Insuring Agreement

**(a)** We will pay the cost to repair or replace "property damage" to property of others arising out of operations incidental to your business when:

1) Damage is caused by you; or

2) Damage occurs while in your possession.

At your written request, we will make this payment regardless of whether you are at fault for the "property damage".

If you, at our request, replace, or make any repairs to, damaged property of others, the amount we will pay under **Voluntary Property Damage Coverage** will be determined by your actual cost to replace or repair the damaged property, excluding any profit or overhead.

Any payment we make under **Voluntary Property Damage Coverage** shall not be interpreted as an admission of liability by you or by us.

It shall be your duty, not our duty, to defend any claim or "suit" to which this insurance applies.

No other obligation or liability to pay sums or perform acts or services is covered.

**(b)** This insurance applies to "property damage" only if:

1) The "property damage" takes place in the "coverage territory"; and

2) The "property damage" occurs during the policy period.

#### (2) Exclusions

This insurance does not apply to "property damage" that would be excluded by **Coverage A - Bodily Injury And Property Damage Liability, 2. Exclusions**, except for **j. Damage To Property**, paragraphs **(3), (4), (5)** and **(6), k. Damage To Your Product**, and **l. Damage To Your Work**.

#### (3) Definitions

For purposes of **Voluntary Property Damage Coverage** only, the following definitions under **Section V - Definitions** are replaced by the following:

**16.** "Occurrence" means an incident, including continuous or repeated exposure to substantially the same general harmful conditions that result in "property damage".

**20.** "Property damage" means physical injury to tangible property. "Electronic data" is not tangible property, and "property damage" does not include disappearance, abstraction or theft.

### b. Care, Custody Or Control Liability Coverage

For purposes of the coverage provided by **Care, Custody Or Control Liability Coverage** in this endorsement only:

**(1)** **Section I - Coverage A - Bodily Injury And Property Damage Liability, 2. Exclusions, j. Damage To Property**, Subparagraphs **(3), (4)** and **(5)** do not apply to "property damage" to the property of others described therein.

**(2)** It shall be your duty, not our duty, to defend any claim or "suit" to which this insurance applies.

No other obligation or liability to pay sums or perform acts or services is covered.

This Paragraph **(2)** supersedes any provision in the Coverage Part to the contrary.

**(3)** "Property damage" for which **Care, Custody Or Control Liability Coverage** provides cover-

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.
000057

age shall be deemed to be caused by an "occurrence" but shall not serve to limit or restrict the applicability of any exclusion for "property damage" under this Coverage Part.

c. **Limits Of Insurance And Deductibles**

For purposes of the coverage provided by **Voluntary Property Damage Coverage** and **Care, Custody Or Control Liability Coverage, Section III - Limits Of Insurance** is amended to include the following:

(1) The Limits of Insurance shown in the Declarations are replaced by the limits designated in Section **B. Limits Of Insurance, 16. Voluntary Property Damage Coverage And Care, Custody Or Control Liability Coverage,** in this endorsement. These limits are inclusive of, and not in addition to, the limits being replaced. The Limits of Insurance shown in the Schedule fix the most we will pay regardless of the number of:

    (a) Insureds;

    (b) Claims made or "suits" brought; or

    (c) Persons or organizations making claims or bringing "suits".

(2) (a) Subject to **(3)** below, the **Voluntary Property Damage Coverage,** Each Occurrence Limit Of Insurance is the most we will pay for the sum of damages under **Voluntary Property Damage Coverage**;

    (b) The **Care, Custody Or Control Liability Coverage,** Each Occurrence Limit Of Insurance is the most we will pay for the sum of damages under **Care, Custody Or Control Liability Coverage**;

because of all "property damage" arising out of any one "occurrence".

(3) The **Voluntary Property Damage Coverage,** Aggregate Limit Of Insurance is the most we will pay for the sum of all damages under **Voluntary Property Damage Coverage.** This limit applies separately to each "coverage term".

(4) **Deductible Clause**

    (a) Our obligation to pay damages on your behalf applies only to the amount of damages for each "occurrence" which are in excess of the Deductible Amount stated for the applicable coverage in the Schedule. The limits of insurance will not be reduced by the application of such Deductible Amount.

    (b) **Section IV - Commercial General Liability Conditions, 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit,** applies to each claim or "suit" irrespective of the amount.

    (c) We may pay any part or all of the Deductible Amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the Deductible Amount as has been paid by us.

17. **Broadened Contractual Liability - Work Within 50' Of Railroad Property**

Section V - Definitions, 12. "Insured contract" is amended as follows:

a. Paragraph **c.** is replaced by the following:

    c. Any easement or license agreement;

b. Paragraph **f.(1)** is deleted in its entirety.

18. **Alienated Premises**

Exclusion **2.j. Damage to Property,** Paragraph **(2)** under **Section I - Coverage A - Bodily Injury And Property Damage Liability** does not apply if the premises are "your work".

GA 233 09 17      Includes copyrighted material of Insurance Services Office, Inc., with its permission.      Page 17 of 17

000058

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A.** Exclusion **2.s.** of **Section I - Coverage A - Bodily Injury and Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**s. Access or Disclosure of Confidential or Personal Information and Data-Related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

**B.** The following is added to Paragraph **2. Exclusions** of **Section I - Coverage B - Personal and Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access or Disclosure of Confidential or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000059

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - EXTERIOR INSULATION AND FINISH SYSTEMS ("EIFS") AND DIRECT-APPLIED EXTERIOR FINISH SYSTEMS ("DEFS") - BROAD FORM WITH SPECIFIED EXCEPTIONS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability**:

1. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" that arises out of, is caused by, or is attributable to, whether in whole or in part, an "EIFS/DEFS incident":

2. Exclusion **1.** above also applies to any "bodily injury", "property damage" or "personal and advertising injury":

   **a.** For which an additional insured added by attachment of an endorsement to this Coverage Part is legally obligated to pay damages;

   **b.** For which any insured assumes liability in any part of any contract or agreement, regardless of whether such contract or agreement is an "insured contract";

   **c.** Arising out of, caused by, or attributable to, whether in whole or in part, warranties or representations made at any time with respect to the fitness, quality, durability or performance of a "wall finish system"; and

   **d.** Arising out of, caused by, or attributable to, whether in whole or in part, the providing of or failure to provide any warnings or instructions with regard to a "wall finish system".

3. Exclusions **1.** and **2.** above apply only if the injury or damage is caused, directly or indirectly, in whole or in part, by water-related or moisture-related entry into, or dry rot of, a structure to which a "wall finish system" has been installed and only if that water-related or moisture-related entry, or dry rot, is caused, directly or indi-

rectly, in whole or in part, by the "wall finish system."

4. Regardless of the applicability of Paragraph **3.** above, exclusions **1.** and **2.** above do not apply to an "EIFS/DEFS incident" if all three of the following conditions are met:

   **a.** The "wall finish system" is a "drainable or water managed system"; and

   **b.** The substrate that forms a part of the "wall finish system", or to which the "wall finish system" is attached, is noncombustible, such as gypsum sheathing, or is one of the following types of construction:

      **(1)** Noncombustible construction meaning structures where the exterior walls and the floors are constructed of, and supported by, metal, gypsum or other noncombustible materials; or

      **(2)** Masonry noncombustible construction meaning structures where the exterior walls are constructed of masonry materials such as adobe, brick, concrete, gypsum block, hollow concrete block, stone, tile or similar materials, with the floors and roof being metal or other noncombustible materials; or

      **(3)** Modified fire resistive or fire resistive construction meaning structures where the exterior walls and the floors and roof are constructed of masonry or fire resistive materials having a fire resistance rating of one hour or more; and

   **c.** The structure on which the "wall finish system" is installed is not intended for "residential" occupancy.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000060

**B.** For purposes of this endorsement, the following is added to **Section III-Limits Of Insurance**:

    **1. Deductible Amount**

        **a.** Our obligation to pay damages under this insurance applies only to the amount of damages for each "EIFS/DEFS incident" which are in excess of a deductible amount of $5,000. The limits of insurance will not be reduced by the application of such deductible amount.

        **b.** We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

    **2. Limit Reduction**

        Paragraph **2.**, the General Aggregate Limit, Paragraph **3.**, the Products-Completed Operations Aggregate Limit, Paragraph **5.**, the Each Occurrence Limit, Paragraph **6.**, the Damage To Premises Rented To You Limit, and Paragraph **7.**, the Medical Expense Limit, of **Section III - Limits Of Insurance**, if applicable, will be reduced by the amount of damages we pay for all "bodily injury" and "property damage" arising out of an "EIFS/DEFS incident."

**C.** For purposes of this endorsement only, **Section IV – Commercial General Liability Conditions, 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit** is replaced by the following:

    **2. Duties In The Event Of Incident, Claim Or Suit**

        **a.** You must see to it that we are notified as soon as practicable of an "EIFS/DEFS incident" that may result in a claim, irrespective of the amount. To the extent possible, notice should include:

            **(1)** What the incident was and when it occurred; and

            **(2)** The names and addresses of anyone who may suffer damages as a result of the incident.

        **b.** If a claim is made or "suit" is brought against any insured, you must:

            **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

            **(2)** Notify us as soon as practicable.

            You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

        **c.** You and any other involved insured must:

            **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

            **(2)** Authorize us to obtain records and other information;

            **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

            **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an incident to which this insurance may also apply.

        **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

**D.** For the purpose of this endorsement only, **Section V - Definitions** is amended to include the following:

    **1.** The following definitions are added:

        **a.** "Direct-applied exterior finish system" (commonly referred to as DEFS) means an exterior cladding or finish system and all component parts therein, used on any part of any structure, and consisting of:

            **(1)** A rigid or semi-rigid substrate;

            **(2)** The adhesive and/or mechanical fasteners used to attach the substrate to the structure including any water-durable exterior wall substrate;

            **(3)** A reinforced or unreinforced base coat or mesh;

            **(4)** A finish coat providing surface texture to which color may be added; and

            **(5)** Any conditioners, primers, accessories, flashing, coatings, caulking or sealants used with the system for any purpose;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000061

that interact to form an energy efficient wall.

**b.** "Drainable or water managed system" means a "wall finish system":

**(1)** With a secondary weather-resistant barrier that protects the substrate; and

**(2)** That includes a drainage feature that is specifically designed to channel water to the outside of the "wall finish system".

**c.** "Exterior insulation and finish system" (commonly referred to as synthetic stucco or EIFS) means an exterior cladding or finish system and all component parts therein, used on any part of any structure, and consisting of:

**(1)** A rigid or semi-rigid insulation board made of expanded polystyrene or other materials;

**(2)** The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

**(3)** A reinforced or unreinforced base coat or mesh;

**(4)** A finish coat providing surface texture to which color may be added; and

**(5)** Any conditioners, primers, accessories, flashing, coatings, caulking or sealants used with the system for any purpose;

that interact to form an energy efficient wall.

**d.** "EIFS/DEFS incident" means an incident that would not have occurred, in whole or in part, but for:

**(1)** The design, manufacture, sale, service, handling, construction, fabrication, preparation, installation, application, maintenance, disposal or repair, including remodeling, service, correction, or replacement, of a "wall finish system", or any part thereof, including any method or procedure used to correct problems with installed or partially installed "wall finish systems"; or

**(2)** Any work or operations conducted by or on behalf of any insured on or to a "wall finish system", or any component thereof, or any component of a building or structure to which a "wall finish system" attaches, that results, directly or indirectly, in the intrusion of water or moisture, including any resulting development or presence of "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**e.** "Fungi" means any type or form of fungus, and includes, but is not limited to, any form or type of mold, mushroom or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

**f.** "Residential" means:

**(1)** A structure used, or intended, in whole or in part, for the purpose of human habitation, and includes, but is not limited to, single-family housing, multi-family housing, tract homes, condominiums, cooperatives, townhomes, townhouses, planned-unit developments and timeshares;

**(2)** A structure converted, or being converted, in whole or in part, into condominiums or cooperatives; and

**(3)** Common areas and grounds, appurtenant structures and facilities, of the structures described in **D.1.f.(1)** and **(2)** above, except a public street, public road, public right of way, or public utility easement located on or near such common areas and grounds.

"Residential" does not include:

**(1)** Hospitals, jails or prisons; and

**(2)** Provided there is no individual ownership of units and that such was not, in whole or in part, at any time, marketed, sold, occupied or used as single-family housing, multi-family housing, or as a condominium, cooperative, townhouse, townhome or timeshare:

**(a)** Government housing on military bases;

**(b)** College/university dormitories;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000062

(c) Apartments;

(d) Long-term care facilities;

(e) Assisted living facilities;

(f) Nursing homes; and

(g) Hotels or motels.

g. "Wall finish system" means:

(1) An "exterior insulation and finish system";

(2) A "direct-applied exterior finish system"; or

(3) Any energy efficient exterior cladding or finish system substantially similar to Paragraph **D.1.g.(1)** or **(2)** above.

2. Definition **21.** "Suit" is replaced by the following:

21. "Suit" means a civil proceeding in which damages because of an "EIFS/DEFS incident" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent;

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent; or

c. An appeal of a civil proceeding.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000063

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A.** The following exclusion is added to Paragraph **2.** Exclusions of **SECTION I - COVERAGES. COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

**2. Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

**a.** "Bodily injury" or "property damage" caused directly or indirectly, in whole or in part, by any actual, alleged or threatened:

(1) Inhalation of;

(2) Ingestion of;

(3) Contact with;

(4) Absorption of;

(5) Exposure to;

(6) Existence of; or

(7) Presence of,

any "fungi" or bacteria on or within a building or structure, including its contents, whether occurring suddenly or gradually;

**b.** Any loss, cost or expense associated in any way with, or arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, mitigating or disposing of, or in any way responding to, investigating, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity;

**c.** Any liability, with respect to "fungi" or bacteria, arising out of, resulting from, caused by, contributed to, or in any way related to any supervision, instruction, recommendation, warning or advice given or which should have been given in connection with:

(1) The existence of "fungi" or bacteria;

(2) The prevention of "fungi" or bacteria;

(3) The remediation of "fungi" or bacteria;

(4) Any operation described in Paragraph **A. 2. b.** above;

(5) "Your product"; or

(6) "Your work"; or

**d.** Any obligation to share damages with or repay any person, organization or entity, related in any way to the liability excluded in Paragraphs **A. 2. a., b.** or **c.** above;

regardless of any other cause, event, material, product and / or building component that contributed concurrently or in any sequence to the injury or damage.

However this exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for human ingestion.

**B.** The following exclusion is added to Paragraph **2.** Exclusions of **SECTION I - COVERAGES. COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**:

**2. Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

**a.** "Personal and advertising injury" caused directly or indirectly, in whole or in part, by any actual, alleged or threatened:

(1) Inhalation of;

(2) Ingestion of;

(3) Contact with;

(4) Absorption of;

(5) Exposure to;

(6) Existence of; or

(7) Presence of,

Includes copyrighted material of ISO Properties, Inc., with its permission.
000064

any "fungi" or bacteria on or within a building or structure, including its contents, whether occurring suddenly or gradually;

**b.** Any loss, cost or expense associated in any way with, or arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, mitigating or disposing of, or in any way responding to, investigating, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity;

**c.** Any liability, with respect to "fungi" or bacteria, arising out of, resulting from, caused by, contributed to, or in any way related to any supervision, instruction, recommendation, warning or advice given or which should have been given in connection with:

    **(1)** The existence of "fungi" or bacteria;

    **(2)** The prevention of "fungi" or bacteria;

    **(3)** The remediation of "fungi" or bacteria;

    **(4)** Any operation described in Paragraph **B. 2. b.** above;

    **(5)** "Your product"; or

    **(6)** "Your work"; or

**d.** Any obligation to share damages with or repay any person, organization or entity, related in any way to the liability excluded in Paragraphs **B. 2. a.**, **b.** or **c.** above;

regardless of any other cause, event, material, product and / or building component that contributed concurrently or in any sequence to the injury or damage.

However this exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for human ingestion.

**C.** For the purposes of this endorsement, **SECTION V - DEFINITIONS** is amended to include the following:

"Fungi" means any type or form of fungus, and includes, but is not limited to, any form or type of mold, mushroom or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

Includes copyrighted material of ISO Properties, Inc., with its permission.
000065

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MOBILE EQUIPMENT SUBJECT TO MOTOR VEHICLE INSURANCE LAWS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A.** **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, g.** Aircraft, Auto or Watercraft is replaced by the following:

This insurance does not apply to:

**g.** **Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises that you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 51 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph **f.**

**(2)** or **f. (3)** of the definition of "mobile equipment".

**B.** **SECTION II - WHO IS AN INSURED** is amended to include:

**4.** With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

**a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

**b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

**C.** **SECTION V - DEFINITIONS, 3.** "Auto" and **15.** "Mobile equipment" are replaced by the following:

**3.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

**15.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

Includes copyrighted material of ISO Properties, Inc., with its permission
000066

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted;

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**D.** This endorsement does not apply to any liability arising from an "occurrence" caused by or arising from any land vehicle if:

**1.** You have an Auto Coverage Form in force at the time of the "occurrence"; and

**2.** The land vehicle meets the definition of auto in your Auto Coverage Form or policy, regardless of whether or not such land vehicle is:

**a.** A covered auto under such Auto Coverage Form or policy; or

**b.** Specifically described on a schedule of covered autos on your Auto Coverage Form or policy.

Includes copyrighted material of ISO Properties, Inc., with its permission
000067

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONTRACTORS ADDITIONAL INSURED - AUTOMATIC STATUS AND AUTOMATIC WAIVER OF SUBROGATION WHEN REQUIRED IN WRITTEN CONTRACT, AGREEMENT, PERMIT OR AUTHORIZATION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A. Additional Insured - Owners, Lessees Or Contractors - Automatic Status For Other Parties When Required In Written Contract Or Agreement With You**

1. **Section II - Who Is An Insured** is amended to include as an additional insured any person or organization you have agreed in writing in a contract or agreement to add as an additional insured on this Coverage Part. Such person(s) or organization(s) is an additional insured only with respect to liability for:

   a. "Bodily injury", "property damage" or "personal and advertising injury" *caused, in whole or in part, by* the performance of your ongoing operations by you or on your behalf, under that written contract or written agreement. Ongoing operations does not apply to "bodily injury" or "property damage" occurring after:

      (1) All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

      (2) That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project; and

   b. "Bodily injury" or "property damage" *caused, in whole or in part, by* "your work" performed under that written contract or written agreement and in

cluded in the "products-completed operations hazard", but only if:

   (1) The Coverage Part to which this endorsement is attached provides coverage for "bodily injury" or "property damage" included within the "products-completed operations hazard"; and

   (2) The written contract or written agreement requires you to provide additional insured coverage included within the "products-completed operations hazard" for that person or organization.

If the written contract or written agreement requires you to provide additional insured coverage included within the "products-completed operations hazard" for a specified length of time for that person or organization, the "bodily injury" or "property damage" must occur prior to the expiration of that period of time in order for this insurance to apply.

If the written contract or written agreement requires you to provide additional insured coverage for a person or organization per only ISO additional insured endorsement form number **CG 20 10**, without specifying an edition date, and without specifically requiring additional insured coverage included within the "products-completed operations hazard", this Paragraph **b.** does not apply to that person or organization.

2. If the written contract or written agreement described in Paragraph **1.** above specifically requires you to provide additional insured coverage to that person or organization:

   a. *Arising out of* your ongoing operations or *arising out of* "your work"; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000068

**b.** By way of an edition of an ISO additional insured endorsement that includes *arising out of* your ongoing operations or *arising out of* "your work";

then the phrase *caused, in whole or in part, by* in Paragraph **A.1.a.** and/or Paragraph **A.1.b.** above, whichever applies, is replaced by the phrase *arising out of.*

**3.** With respect to the insurance afforded to the additional insureds described in Paragraph **A.1.**, the following additional exclusion applies:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

**a.** The preparing, approving or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**b.** Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of, or the failure to render, any professional architectural, engineering or surveying services.

**4.** This Paragraph **A.** does not apply to additional insureds described in Paragraph **B.**

**B. Additional Insured - State Or Governmental Agency Or Subdivision Or Political Subdivision - Automatic Status When Required In Written Permits Or Authorizations**

**1. Section II - Who Is An Insured** is amended to include as an additional insured any state or governmental agency or subdivision or political subdivision you have agreed in writing in a contract, agreement, permit or authorization to add as an additional insured on this Coverage Part. Such state or governmental agency or subdivision or political subdivision is an additional insured only with respect to operations performed by you or on your behalf for which the state or governmental agency or subdivision or political subdivision issued, in writing, a contract, agreement, permit or authorization.

**2.** With respect to the insurance afforded to the additional insureds described in Paragraph **B.1.**, the following additional exclusions apply:

This insurance does not apply to:

**a.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for the federal government, state or municipality; or

**b.** "Bodily injury" or "property damage" included within the "products-completed operations hazard."

**C.** The insurance afforded to additional insureds described in Paragraphs **A.** and **B.**:

**1.** Only applies to the extent permitted by law; and

**2.** Will not be broader than that which you are required by the written contract, written agreement, written permit or written authorization to provide for such additional insured; and

**3.** Does not apply to any person, organization, state, governmental agency or subdivision or political subdivision specifically named as an additional insured for the same project in the schedule of an endorsement added to this Coverage Part.

**D.** With respect to the insurance afforded to the additional insureds described in Paragraphs **A.** and **B.**, the following is added to **Section III - Limits Of Insurance**:

The most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the written contract, written agreement, written permit or written authorization described in Paragraphs **A.** and **B.**; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

**E. Section IV - Commercial General Liability Conditions** is amended to add the following:

**Automatic Additional Insured Provision**

This insurance applies only if the "bodily injury" or "property damage" occurs, or the "personal and advertising injury" offense is committed:

**1.** During the policy period; and

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000069

**2.** Subsequent to your execution of the written contract or written agreement, or the issuance of a written permit or written authorization, described in Paragraphs **A.** and **B.**

**F.** Except when **G.** below applies, the following is added to **Section IV - Commercial General Liability Conditions, 5. Other Insurance,** and supersedes any provision to the contrary:

**When Other Additional Insured Coverage Applies On An Excess Basis**

This insurance is primary to other insurance available to the additional insured described in Paragraphs **A.** and **B.** except:

**1.** As otherwise provided in **Section IV - Commercial General Liability Conditions, 5. Other Insurance, b. Excess Insurance**; or

**2.** For any other valid and collectible insurance available to the additional insured as an additional insured by attachment of an endorsement to another insurance policy that is written on an excess basis. In such case, this insurance is also excess.

**G.** The following is added to **Section IV - Commercial General Liability Conditions, 5. Other Insurance,** and supersedes any provision to the contrary:

**Primary Insurance When Required By Written Contract, Agreement, Permit Or Authorization**

Except when wrap-up insurance applies to the claim or "suit" on behalf of the additional insured, this insurance is primary to any other insurance available to the additional insured described in Paragraphs **A.** and **B.** provided that:

**1.** The additional insured is a Named Insured under such other insurance; and

**2.** You have agreed in writing in a contract, agreement, permit or authorization described in Paragraph **A.** or **B.** that this insurance would be primary to any other insurance available to the additional insured.

As used in this endorsement, wrap-up insurance means any insurance provided by a consolidated (wrap-up) insurance program.

**Primary And Noncontributory Insurance When Required By Written Contract, Agreement, Permit Or Authorization**

Except when wrap-up insurance applies to the claim or "suit" on behalf of the additional insured, this insurance is primary to and will not seek contribution from any other insurance available to the additional insured described in Paragraphs **A.** and **B.** provided that:

**1.** The additional insured is a Named Insured under such other insurance; and

**2.** You have agreed in writing in a contract, agreement, permit or authorization described in Paragraph **A.** or **B.** that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

As used in this endorsement, wrap-up insurance means any insurance provided by a consolidated (wrap-up) insurance program.

**H.** **Section IV - Commercial General Liability Conditions, 9. Transfer Of Rights Of Recovery Against Others To Us** is amended by the addition of the following:

We waive any right of recovery we may have against any additional insured under this endorsement against whom you have agreed to waive such right of recovery in a written contract, written agreement, written permit or written authorization because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a written contract, written agreement, written permit or written authorization. However, our rights may only be waived prior to the "occurrence" giving rise to the injury or damage for which we make payment under this Coverage Part. The insured must do nothing after a loss to impair our rights. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce those rights.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000070

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

# BODILY INJURY EXCEPTIONS TO POLLUTANT EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

For purposes of insurance provided by this endorsement:

1.  **Sudden and Accidental Exception**

    Exclusion **f. Pollutant, (1)(a)** and **(1)(d)** of **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** do not apply to "bodily injury" provided:

    a.  The "release" of "pollutants" from which the "bodily injury" arises is "sudden" and "accidental"; and

    b.  The injured person's first exposure to such "pollutants" occurred during the policy period; and

    c.  The injured person is clinically diagnosed or treated by a physician for the "bodily injury" caused by exposure to such "pollutants" within one year of such first exposure.

2.  **Amendment to On Premises Exception**

    The on premises exception to the Pollutant Exclusion, **f.(1)(a)1) c)** of **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, is deleted in its entirety and replaced by the following:

    c)  Within one year of such first exposure, the person injured is clinically diagnosed or treated by a physician for the medical condition caused by the exposure to such vapors. However, Paragraph **c)** does not apply if the "bodily injury" is caused by vapors produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests.

3.  **Off Premises Exception**

    Exclusion **f. Pollutant (1)(d)** of **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** does not apply to "bodily injury" that is caused by "gaseous or airborne pollutants" provided:

    a.  The injured person's first exposure to "gaseous or airborne pollutants" occurred during the policy period; and

    b.  The injured person is clinically diagnosed or treated by a physician for the "bodily injury" caused by the exposure to "gaseous or airborne pollutants" within one year of such first exposure.

4.  **Amended Who Is An Insured**

    As respects the insurance provided by Paragraphs **1.** and **3.** of this endorsement, the **Sudden and Accidental Exception** and the **Off Premises Exception, SECTION II - WHO IS AN INSURED** is deleted in its entirety and replaced by the following:

    The coverage afforded shall apply only to Named Insureds. We shall have no duty to defend or pay damages for any person or organization that is not a Named Insured.

5.  **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS 5. Other Insurance b. Excess Insurance** is amended to include the following:

    The insurance provided by Paragraphs **1. Sudden and Accidental Exception** and **3. Off Premises Exception**, of this endorsement is excess over any other valid and collectible insurance, whether primary, excess, contingent or on any other basis, except insurance written specifically to cover as excess over the limits of insurance that apply in this endorsement.

6.  As respects the insurance provided by Paragraphs **1.** and **3.** of this endorsement, **SECTION V - DEFINITIONS** is amended to add the following:

    1.  "Accidental" means unintended and unexpected.

    2.  "Gaseous or airborne pollutants" means "pollutants" which:

        (a)  Are a gas, smoke, fume, vapor or other similar airborne substance; and

        (b)  Are the result of the "release" of such "pollutants" from materials, machinery or equipment brought on or to the "work site" by any Named Insured or any "employees", contractors or subcontractors working di-

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.
000071

rectly or indirectly on any Named Insured's behalf.

"Gaseous or airborne pollutants" does not include asbestos or lead.

3. "Release" means actual discharge, dispersal, seepage, migration, release, escape or emission.

4. "Sudden" means abrupt, immediate and brief as well as unexpected and without prior notice. "Sudden" has a temporal element which requires that the "release" of "pollutants" begins and ends within a brief period of time. A "release" of a "pollutant" which results from a series of ongoing events which constitute a course of conduct or course of business is not "sudden".

5. "Work site" means any premises, site or location while a Named Insured or a Named Insured's "employees", contractors or subcontractors are performing operations directly or indirectly on the Named Insured's behalf, provided the premises, site or location is not owned or occupied by or rented or loaned to a Named Insured.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000072

# THE CINCINNATI CASUALTY COMPANY
### A Stock Insurance Company

# CINCINNATI DATA DEFENDER™ COVERAGE PART
# DECLARATIONS

**THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF INSURANCE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE DEDUCTIBLE. IN NO EVENT WILL WE BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE LIMIT OF INSURANCE. READ THE ENTIRE POLICY CAREFULLY.**

Attached to and forming part of POLICY NUMBER: ENP 046 05 30     Effective Date 11-01-2019

Named Insured is the same as it appears in the Common Policy Declarations unless another entry is made here.

**Retroactive Date:** 10-17-2018

## Limits of Insurance and Deductible

| | Insuring Agreement | Annual Aggregate | Sublimit | | Deductible |
|---|---|---|---|---|---|
| A | Response Expenses | $50,000 | | | $1,000 |
| | | | Forensic IT Review | $25,000 | |
| | | | Legal Review | $25,000 | |
| | | | PR Services | $25,000 | |
| B | Defense and Liability | $50,000 | | | $1,000 |
| | | | Regulatory Fines and Penalties | $25,000 | |
| | | | PCI Fines and Penalties | $25,000 | |
| C | Identity Recovery | $25,000 | | | $250 |
| | | | Lost Wages and Child and Elder Care | $5,000 | |
| | | | Mental Health Counseling | $1,000 | |
| | | | Miscellaneous Unnamed Costs | $1,000 | |

| TOTAL ANNUAL PREMIUM | $143 |
|---|---|

| Optional Supplemental Extended Reporting Period - Term: | Optional Supplemental Extended Reporting Period - Premium: |
|---|---|
| 1 YEAR | 28 |
| 2 YEAR | 56 |
| 3 YEAR | 74 |
| 4 YEAR | 93 |
| 5 YEAR | 102 |
| 6 YEAR | 111 |

FORMS AND/OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:

| | | |
|---|---|---|
| HC102 | 01/18 | CINCINNATI DATA DEFENDER™ COVERAGE FORM |
| HC477AL | 08/16 | ALABAMA CHANGES - LEGAL ACTION AGAINST US |

# CINCINNATI DATA DEFENDER™ COVERAGE FORM

## TABLE OF CONTENTS

**Coverage Part Provision:**                                                                                    **Begins on Page:**

Preamble ........................................................................................................................3

**SECTION I - COVERAGES** ...........................................................................................3

A.  **Insuring Agreements** ...........................................................................................3

    1.  **Insuring Agreement A - Response Expenses** ...............................................3
    2.  **Insuring Agreement B - Defense and Liability** ...............................................5
    3.  **Insuring Agreement C - Identity Recovery** ...................................................5

B.  **Exclusions** .............................................................................................................5

    1.  Applicable to Insuring Agreements **A** and **B** ...................................................5

        a.  **Contractual Liability** ...............................................................................5
        b.  **Criminal Investigations or Proceedings** .................................................5
        c.  **Deficiency Correction** ............................................................................5
        d.  **Extortion** ...............................................................................................6
        e.  **Fraudulent, Dishonest or Criminal Acts** .................................................6
        f.  **Non-monetary Relief** ..............................................................................6
        g.  **Previously Reported Data Compromises** ................................................6
        h.  **Prior Data Compromises** .......................................................................6
        i.  **Prior or Pending Litigation** ....................................................................6
        j.  **Reckless Disregard** ...............................................................................6
        k.  **Uninsurable** ..........................................................................................6
        l.  **Willful Complicity** ...................................................................................6

    2.  Applicable to Insuring Agreement **C** ................................................................6

        a.  **Fraudulent, Dishonest or Criminal Acts** .................................................6
        b.  **Professional or Business Identity** ..........................................................6
        c.  **Unreported Identity Theft** ......................................................................6

    3.  Applicable to Insuring Agreements **A, B** and **C** ............................................6

        a.  **Nuclear** .................................................................................................6
        b.  **War** ........................................................................................................6

**SECTION II - LIMITS OF INSURANCE AND DEDUCTIBLE** ........................................7

**SECTION III - DEFENSE AND SETTLEMENT** ............................................................8

**SECTION IV - CONDITIONS** .......................................................................................8

    1.  **Bankruptcy** ..................................................................................................8
    2.  **Due Diligence** .............................................................................................8
    3.  **Duties in the Event of a Claim, Regulatory Proceeding or Loss** ...................9
    4.  **Help Line** ....................................................................................................10
    5.  **Legal Action Against Us** ............................................................................10
    6.  **Legal Advice** ..............................................................................................10
    7.  **Liberalization** .............................................................................................10
    8.  **Office of Foreign Assets Control (OFAC) Compliance** ................................11
    9.  **Other Insurance** .........................................................................................11
    10. **Pre-Notification Consultation** ....................................................................11
    11. **Representations** ..........................................................................................11
    12. **Separation of Insureds** ..............................................................................11
    13. **Service Providers** ......................................................................................11
    14. **Services** .....................................................................................................11
    15. **Subrogation** ...............................................................................................12
    16. **Valuation - Settlement** ...............................................................................12
    17. **When We Do Not Renew** ...........................................................................12

HC 102 01 18                    Includes copyrighted material of Insurance                    **Page 1 of 17**
                                 Services Office, Inc. with its permission.
                                                   000075

**TABLE OF CONTENTS (CONT'D)**

| Coverage Part Provision: | Begins on Page: |
|---|---|
| **SECTION V - EXTENDED REPORTING PERIODS** | 12 |
| **SECTION VI - DEFINITIONS** | 13 |
| 1. "Affected individual" | 13 |
| 2. "Authorized representative" | 13 |
| 3. "Claim" | 13 |
| 4. "Coverage term" | 13 |
| 5. "Coverage territory" | 14 |
| 6. "Data compromise liability" | 14 |
| 7. "Defense costs" | 14 |
| 8. "Employee" | 14 |
| 9. "Executive" | 15 |
| 10. "Identity recovery case manager" | 15 |
| 11. "Identity recovery expenses" | 15 |
| 12. "Identity recovery insured" | 16 |
| 13. "Identity theft" | 16 |
| 14. "Insured" | 16 |
| 15. "Loss" | 16 |
| 16. "Named insured" | 16 |
| 17. "Personal data compromise" | 16 |
| 18. "Personally identifying information" | 17 |
| 19. "Personally sensitive information" | 17 |
| 20. "Policy period" | 17 |
| 21. "Regulatory proceeding" | 17 |

# CINCINNATI DATA DEFENDER™ COVERAGE FORM

**THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF INSURANCE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE DEDUCTIBLE. IN NO EVENT WILL WE BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE LIMIT OF INSURANCE. READ THE ENTIRE POLICY CAREFULLY.**

Various provisions in this Coverage Part restrict coverage. Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the "named insured" shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **VI** - **Definitions**.

## SECTION I - COVERAGES

### A. Insuring Agreements

Coverage is provided under the following Insuring Agreements for which an Aggregate Limit of Insurance is shown in the Declarations:

1. **Insuring Agreement A - Response Expenses**

    a. Coverage under Insuring Agreement **A** - Response Expenses applies only if all of the following conditions are met:

       (1) There has been a "personal data compromise"; and

       (2) Such "personal data compromise" is first discovered by you during the "coverage term"; and

       (3) Such "personal data compromise" took place in the "coverage territory"; and

       (4) Such "personal data compromise" is reported to us within 60 days after the date it is first discovered by you.

    b. If the conditions listed in **a.** above have been met, then we will provide coverage for the following expenses when they arise directly from the "personal data compromise" described in **a.** above and are necessary and reasonable. Coverages **(4)** and **(5)** apply only if there has been a notification of the "personal data

compromise" to "affected individuals" as covered under coverage **(3)**.

(1) **Forensic IT Review**

Professional information technologies review if needed to determine, within the constraints of what is possible and reasonable, the nature and extent of the "personal data compromise" and the number and identities of the "affected individuals".

This does not include costs to analyze, research or determine any of the following:

   (a) Vulnerabilities in systems, procedures or physical security;

   (b) Compliance with PCI or other industry security standards; or

   (c) The nature or extent of loss or damage to data that is not "personally identifying information" or "personally sensitive information".

If there is reasonable cause to suspect that a covered "personal data compromise" may have occurred, we will pay for costs covered under Forensic IT Review, even if it is eventually determined that there was no covered "personal data compromise". However, once it is determined that there was no covered "personal data compromise", we will not pay for any further costs.

(2) **Legal Review**

Professional legal counsel review of the "personal data compromise" and how you should best respond to it. If there is reasonable cause to suspect that a covered "personal data compromise" may have occurred, we will pay for costs covered under

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000077

Legal Review, even if it is eventually determined that there was no covered "personal data compromise". However, once it is determined that there was no covered "personal data compromise", we will not pay for any further costs.

**(3) Notification to Affected Individuals**

We will pay your necessary and reasonable costs to provide notification of the "personal data compromise" to "affected individuals".

**(4) Services to Affected Individuals**

We will pay your necessary and reasonable costs to provide the following services to "affected individuals":

**(a)** The following services apply to any "personal data compromise".

    **1)** Informational Materials

        A packet of loss prevention and customer support information.

    **2)** Help Line

        A toll-free telephone line for "affected individuals" with questions about the "personal data compromise". Where applicable, the line can also be used to request additional services as listed in **(b)1)** and **2)** below.

        Note, calls by "affected individuals" or their representatives to the Help Line do not constitute the making of a "claim" under Insuring Agreement **B** - Defense and Liability.

**(b)** The following additional services apply to "personal data compromise" events involving "personally identifying information".

    **1)** Credit Report and Monitoring

A credit report and an electronic service automatically monitoring for activities affecting an individual's credit records. This service is subject to the "affected individual" enrolling for this service with the designated service provider.

    **2)** Identity Restoration Case Management

As respects any "affected individual" who is or appears to be a victim of "identity theft" that may reasonably have arisen from the "personal data compromise", the services of an identity restoration professional who will assist that "affected individual" through the process of correcting credit and other records and, within the constraints of what is possible and reasonable, restoring control over his or her personal identity.

**(5) PR Services**

We will pay the necessary and reasonable fees and expenses you incur, with our prior written consent, for a professional public relations firm review of and response to the potential impact of the "personal data compromise" on your business relationships. We will only pay for such fees and expenses when such a public relations firm review and response is reasonably necessary to avert or mitigate material damage to your business relationships from the "personal data compromise".

Such fees and expenses include costs to implement public relations recommendations of such public relations firm. However, when such recommendations include advertising and special promotions designed to retain your relationship with "affected individuals", we will not pay for promotions:

**(a)** Provided to any of your "executives" or "employees"; or

**(b)** Costing more than $25 per "affected individual".

**2. Insuring Agreement B - Defense and Liability**

**a.** Coverage under Insuring Agreement **B** - Defense and Liability applies only if all of the following conditions are met:

**(1)** During the "coverage term" or any applicable Extended Reporting Period, you first receive notice of a "claim" or "regulatory proceeding" which arises from a "personal data compromise" that:

**(a)** Took place on or after the Retroactive Date shown in the Declarations and before the end of the "policy period";

**(b)** Took place in the "coverage territory"; and

**(c)** Was submitted to us and covered under Insuring Agreement **A** - Response Expenses; and

**(2)** Such "claim" or "regulatory proceeding" is reported to us as soon as practicable, but in no event more than 60 days after the date it is first received by you.

**b.** If the conditions listed in **a.** above have been met, then we will pay on behalf of the "insured" "defense costs" and "data compromise liability" directly arising from the "claim" or "regulatory proceeding".

**c.** All "claims" or "regulatory proceedings" caused by a single "personal data compromise" will be deemed to have been made at the time that notice of the first of those "claims" or "regulatory proceedings" is received by you.

**3. Insuring Agreement C - Identity Recovery**

**a.** Coverage under Insuring Agreement **C** - Identity Recovery applies only if all of the following conditions are met:

**(1)** There has been an "identity theft" involving the personal identity of an "identity recovery insured" under this Coverage Part; and

**(2)** Such "identity theft" is first discovered by the "identity recovery insured" during the "coverage term"; and

**(3)** Such "identity theft" took place in the "coverage territory"; and

**(4)** Such "identity theft" is reported to us within 60 days after it is first discovered by the "identity recovery insured".

**b.** If the conditions listed in **a.** above have been met, then we will provide the following to the "identity recovery insured":

**(1)** Services of an "identity recovery case manager" as needed to respond to the "identity theft"; and

**(2)** Reimbursement of necessary and reasonable "identity recovery expenses" incurred as a direct result of the "identity theft".

**B. Exclusions**

**1.** Applicable to Insuring Agreements **A** and **B** only:

This insurance does not apply to "loss" or "claims" based upon, attributable to or arising out of:

**a. Contractual Liability**

An "insured's" assumption of liability by contract or agreement, whether oral or written. However, this exclusion shall not apply to:

**(1)** Any liability that an "insured" would have incurred in the absence of such contract or agreement; or

**(2)** Any PCI fines or penalties explicitly covered under Insuring Agreement **B** – Defense and Liability.

**b. Criminal Investigations or Proceedings**

Any criminal investigations or proceedings.

**c. Deficiency Correction**

Costs to research or correct any deficiency. This includes, but is not limited to, any deficiency in your sys-

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000079

tems, procedures or physical security that may have contributed to a "personal data compromise".

**d.  Extortion**

Any extortion or blackmail. This includes, but is not limited to, ransom payments and private security assistance.

**e.  Fraudulent, Dishonest or Criminal Acts**

Any criminal, fraudulent or dishonest act, error or omission, or any intentional or knowing violation of the law by the "insured".

**f.  Non-monetary Relief**

That part of any "claim" seeking any non-monetary relief.

**g.  Previously Reported Data Compromises**

The same facts alleged or contained in any "claim" which has been reported, or in any circumstances of which notice has been given, under any insurance policy of which this Coverage Part is a renewal or replacement.

**h.  Prior Data Compromises**

Any "personal data compromise" first occurring before the Retroactive Date shown in the Declarations, or any "claim" arising from a "personal data compromise" that first occurred prior to the Retroactive Date shown in the Declarations.

**i.  Prior or Pending Litigation**

Any "claim" or other proceeding against an "insured" which was pending or existed prior to the "coverage term", or arising out of the same or substantially the same facts, circumstances or allegations which are the subject of, or the basis for, such "claim" or other proceeding.

**j.  Reckless Disregard**

Your reckless disregard for the security of "personally identifying information" or "personally sensitive information" in your care, custody or control.

**k.  Uninsurable**

Any amount not insurable under applicable law.

**l.  Willful Complicity**

The "insured's" intentional or willful complicity in a "personal data compromise".

**2.**  Applicable to Insuring Agreement **C** only:

This insurance does not apply to:

**a.  Fraudulent, Dishonest or Criminal Acts**

Any fraudulent, dishonest or criminal act by an "identity recovery insured" or any person aiding or abetting an "identity recovery insured", or by any "authorized representative" of an "identity recovery insured", whether acting alone or in collusion with others. However, this exclusion shall not apply to the interests of an "identity recovery insured" who has no knowledge of or involvement in such fraud, dishonesty or criminal act.

**b.  Professional or Business Identity**

The theft of a professional or business identity.

**c.  Unreported Identity Theft**

An "identity theft" that is not reported in writing to the police.

**3.**  Applicable to Insuring Agreements **A, B** and **C**:

This insurance does not apply to "loss" or "claims" based upon, attributable to or arising out of:

**a.  Nuclear**

Nuclear reaction or radiation or radioactive contamination, however caused.

**b.  War**

**(1)**  War, including undeclared or civil war or civil unrest;

**(2)**  Warlike action by military force, including action hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)**  Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

## SECTION II - LIMITS OF INSURANCE AND DEDUCTIBLE

**A.** Insuring Agreement **A** - Response Expenses:

**1.** The most we will pay under Insuring Agreement **A** - Response Expenses is the Response Expenses Limit of Insurance stated in the Declarations.

**2.** The Response Expenses Limit of Insurance is an annual aggregate limit. This amount is the most we will pay for the total of all "loss" covered under Insuring Agreement **A** - Response Expenses arising out of all "personal data compromise" events which are first discovered by you during the "coverage term". This limit applies regardless of the number of "personal data compromise" events discovered by you during that period.

**3.** A "personal data compromise" may be first discovered by you in one "coverage term" but cause covered "loss" in one or more subsequent "coverage terms". If so, all covered "loss" arising from such "personal data compromise" will be subject to the Response Expenses Limit of Insurance applicable to the "coverage term" when the "personal data compromise" was first discovered by you.

**4.** The most we will pay under Insuring Agreement **A** - Response Expenses for Forensic IT Review, Legal Review and PR Services coverages for "loss" arising from any one "personal data compromise" is the applicable sublimit for each of those coverages stated in the Declarations. These sublimits are part of, and not in addition to, the Aggregate Limit of Insurance referenced in Paragraph **2.** PR Services coverage is also subject to a limit per "affected individual" as described in Section **I., A.1.b.(5)** PR Services.

**5.** Coverage for Services to "affected individuals" is limited to costs to provide such services for a period of up to one year from the date of the notification to the "affected individuals" or the period required by law, whichever is longer. Notwithstanding the foregoing, coverage for Identity Restoration Case Management services initiated within such period may continue for a period of up to one year from the date such Identity Restoration Case Management services are initiated.

**6.** Response Expenses coverage is subject to the Response Expenses Deductible stated in the Declarations. You shall be responsible for such deductible amount as respects each "personal data compromise" covered under this Coverage Part. We may, at our option, pay any part or all of the deductible amount in order to respond effectively to a "personal data compromise" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

**B.** Insuring Agreement **B** - Defense and Liability:

**1.** The most we will pay under Insuring Agreement **B** - Defense and Liability (other than post-judgment interest) is the Limit of Insurance stated in the Declarations.

**2.** The Insuring Agreement **B** - Defense and Liability Limit of Insurance is an annual aggregate limit. This amount is the most we will pay for all "loss" covered under Insuring Agreement **B** - Defense and Liability (other than post-judgment interest) arising out of all "claims".

**3.** The most we will pay under Insuring Agreement **B** – Defense and Liability for "data compromise liability" and "defense costs" related to Regulatory Fines and Penalties and PCI Fines and Penalties coverages arising from any one "claim" or "regulatory proceeding" is the applicable sublimit for each of those coverages stated in the Declarations. These sublimits are part of, and not in addition to, the Aggregate Limit of Insurance referenced in Paragraph **2.**

**4.** The Defense and Liability Limit of Insurance for the Extended Reporting Periods (if applicable) shall be part of, and not in addition to, the Defense and Liability Limit for the immediately preceding "coverage term".

**5.** The Insuring Agreement **B** - Defense and Liability coverage is subject to the Deductible stated in the Declarations. You shall be responsible for such deductible amount as respects each "claim" or "regulatory proceeding" covered under this Coverage Part. We may, at our option, pay any part or all of the deductible amount to defend or effect settlement of any "claim", "loss" or "regulatory proceeding" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

**C.** Insuring Agreement **C** - Identity Recovery:

**1.** Case Management Service is available as needed for any one "identity theft" for up to 12 consecutive months from the inception of the service. Expenses we incur to provide Case Management Service do not reduce the Limit of Insurance available for "identity recovery expenses".

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000081

2. Coverage under Insuring Agreement **C** - Identity Recovery is subject to the Annual Aggregate Limit of Insurance stated in the Declarations per "identity recovery insured". Regardless of the number of "identity theft" incidents, this limit is the most we will pay for the total of all "loss" arising out of all "identity thefts" suffered by one "identity recovery insured" which are first discovered by the "identity recovery insured" during the "coverage term". If an "identity theft" is first discovered in one "coverage term" and continues into other "coverage terms", all "loss" arising from such "identity theft" will be subject to the aggregate Limit of Insurance applicable to the "coverage term" when the "identity theft" was first discovered.

3. Legal costs as provided under Item **d.** of the definition of "identity recovery expenses" are part of, and not in addition to, the aggregate limit described in Paragraph **2.**

4. Item **e.** (Lost Wages) and Item **f.** (Child and Elder Care Expenses) of the definition of "identity recovery expenses" are jointly subject to the sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the aggregate Limit of Insurance described in Paragraph **2.** Coverage is limited to wages lost and expenses incurred within 12 months after the first discovery of the "identity theft" by the "identity recovery insured".

5. Item **g.** (Mental Health Counseling) of the definition of "identity recovery expenses" is subject to the sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the aggregate limit described in Paragraph **2.** Coverage is limited to counseling that takes place within 12 months after the first discovery of the "identity theft" by the "identity recovery insured".

6. Item **h.** (Miscellaneous Unnamed Costs) of the definition of "identity recovery expenses" is subject to the sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the aggregate Limit of Insurance described in Paragraph **2.** Coverage is limited to costs incurred within 12 months after the first discovery of the "identity theft" by the "identity recovery insured".

7. Coverage under Insuring Agreement **C** - Identity Recovery is subject to the Identity Recovery Deductible stated in the Declarations. Each "identity recovery insured" shall be responsible for such deductible amount only once during each "coverage term". This deductible applies only to "identity recovery expenses".

The Limits of Insurance apply separately to each "coverage term".

## SECTION III - DEFENSE AND SETTLEMENT

The provisions contained within this Section apply only to Insuring Agreement **B** - Defense and Liability.

1. We will have the right and duty to select counsel and defend the "insured" against any "claim" or "regulatory proceeding" covered by Insuring Agreement **B** - Defense and Liability, regardless of whether the allegations of such "claim" or "regulatory proceeding" are groundless, false or fraudulent. However, we shall have no duty to defend the "insured" against any "claim" or "regulatory proceeding" seeking damages or other relief not insured by Insuring Agreement **B** - Defense and Liability.

2. We may, with your written consent, make any settlement of a "claim" or "regulatory proceeding" which we deem reasonable. If you withhold consent to such settlement, our liability for all "loss" resulting from such "claim" will not exceed the amount for which we could have settled such "claim" or "regulatory proceeding" plus "defense costs" incurred as of the date we proposed such settlement in writing to you.

3. We shall not be obligated to pay any "loss", or to defend or continue to defend any "claim" or "regulatory proceeding", after the Insuring Agreement **B** - Defense and Liability Limit of Insurance has been exhausted.

4. We shall pay all interest on that amount of any judgment within the Insuring Agreement **B** - Defense and Liability Limit of Insurance which accrues:

   **a.** After entry of judgment; and

   **b.** Before we pay, offer to pay or deposit in court that part of the judgment within the Insuring Agreement **B** - Defense and Liability Limit of Insurance or, in any case, before we pay or offer to pay the entire Insuring Agreement **B** - Defense and Liability Limit of Insurance.

   These interest payments shall be in addition to and not part of the Defense and Liability Limit.

## SECTION IV – CONDITIONS

1. **Bankruptcy**

   Your bankruptcy, or the bankruptcy of your estate if you are a sole proprietor, will not relieve us of our obligations under this Coverage Part.

2. **Due Diligence**

   You agree to use due diligence to prevent and mitigate "loss" covered under this Coverage Part. This includes, but is not limited to, complying with, and requiring your vendors to

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000082

comply with, reasonable and industry-accepted protocols for:

**a.** Providing and maintaining appropriate physical security for your premises, computer systems and hard copy files;

**b.** Providing and maintaining appropriate computer and Internet security;

**c.** Maintaining and updating at appropriate intervals backups of computer data;

**d.** Protecting transactions, such as processing credit card, debit card and check payments; and

**e.** Appropriate disposal of files containing "personally identifying information" or "personally sensitive information", including shredding hard copy files and destroying physical media used to store electronic data.

**3. Duties in the Event of a Claim, Regulatory Proceeding or Loss**

**a.** If, during the "coverage term", the "insured" first becomes aware of any circumstance that could reasonably be expected to give rise to a "claim" or "regulatory proceeding", the "insured" may give written notice to us. The notice must be made as soon as practicable, but in no event more than 60 days after the date the circumstance is first discovered by the "insured", must be made during the "coverage term" and must include:

   **(1)** The specific details, including the date, of the circumstance;

   **(2)** The alleged injuries or damage sustained or which may be sustained;

   **(3)** The names of potential claimants; and

   **(4)** The manner in which the "insured" first became aware of the circumstance.

   Any subsequent "claim" or "regulatory proceeding" arising out of any circumstance which is the subject of such a written notice will be deemed to have been made at the time written notice in compliance with these requirements was first received by us.

**b.** If a "claim" or "regulatory proceeding" is brought against any "insured", you must:

   **(1)** Immediately record the specifics of the "claim" or "regulatory proceeding" and the date received; and

   **(2)** Provide us with written notice, as soon as practicable, but in no event

more than 60 days after the date the "claim" or "regulatory proceeding" is first received by you.

   **(3)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "regulatory proceeding";

   **(4)** Authorize us to obtain records and other information;

   **(5)** Cooperate with us in the investigation, settlement or defense of the "claim" or "regulatory proceeding";

   **(6)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to you because of "loss" or "defense costs" to which this insurance may also apply; and

   **(7)** Not take any action, or fail to take any required action, that prejudices your rights or our rights with respect to such "claim" or "regulatory proceeding".

**c.** In the event of a "personal data compromise" covered under Insuring Agreement **A** - Response Expenses, you must see that the following are done:

   **(1)** Notify the police if a law may have been broken.

   **(2)** Notify us as soon as practicable, but in no event more than 60 days after the "personal data compromise". Include a description of any property involved.

   **(3)** As soon as possible, give us a description of how, when and where the "personal data compromise" occurred.

   **(4)** As often as may be reasonably required, permit us to:

   **(a)** Inspect the property proving the "personal data compromise";

   **(b)** Examine your books, records, electronic media and records and hardware;

   **(c)** Take samples of damaged and undamaged property for inspection, testing and analysis; and

   **(d)** Make copies from your books, records, electronic media and records and hardware.

   **(5)** Send us signed, sworn proof of loss containing the information we request

to investigate the "personal data compromise". You must do this within 60 days after our request. We will supply you with the necessary forms.

**(6)** Cooperate with us in the investigation of the "personal data compromise" or settlement of the "loss".

**(7)** If you intend to continue your business, you must resume all or part of your operations as quickly as possible.

**(8)** Make no statement that will assume any obligation or admit any liability, for any loss for which we may be liable, without our prior written consent.

**(9)** Promptly send us any legal papers or notices received concerning the "personal data compromise" or "loss".

**d.** We may examine any "insured" under oath, while not in the presence of any other "insured" and at such times as may be reasonably required, about any matter relating to this insurance or the "claim" or "loss", including an "insured's" books and records. In the event of an examination, an "insured's" answers must be signed.

**e.** No "insured" may, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our prior written consent.

**4. Help Line**

For assistance, the "identity recovery insured" should call the **Identity Recovery Help Line** at **1-866-219-9831**. The **Identity Recovery Help Line** can provide the "identity recovery insured" with:

**a.** Information and advice for how to respond to a possible "identity theft"; and

**b.** Instructions for how to submit a service request for Case Management Service and/or a claim form for Expense Reimbursement Coverage.

In some cases, we may provide Case Management services at our expense to an "identity recovery insured" prior to a determination that a covered "identity theft" has occurred. Our provision of such services is not an admission of liability under the policy. We reserve the right to deny further coverage or service if, after investigation, we determine that a covered "identity theft" has not occurred.

As respects Expense Reimbursement Coverage, the "identity recovery insured" must send to us, within 60 days after our request, receipts, bills or other records

that support his or her claim for "identity recovery expenses".

**5. Legal Action Against Us**

**a.** No person or organization has a right:

**(1)** To join us as a party or otherwise bring us into a suit asking for damages from an "insured"; or

**(2)** To sue us under this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an "insured"; but we will not be liable for damages that are not payable under this Coverage Part, or that are in excess of the applicable Aggregate Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the first "named insured" and the claimant or the claimant's legal representative.

**b.** You may not bring any legal action against us involving "loss":

**(1)** Unless you have complied with all the terms of this insurance;

**(2)** Until 90 days after you have filed proof of "loss" with us; and

**(3)** Unless brought within 2 years from the date you reported the "claim" or "loss" to us.

If any limitation in this condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

**6. Legal Advice**

We are not your legal advisor. Our determination of what is or is not covered under this Coverage Part does not represent advice or counsel from us about what you should or should not do.

**7. Liberalization**

If, within 60 days prior to the beginning of this Coverage Part or during the "policy period", we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part at the latter of:

**a.** The date we implemented the change in your state; or

**b.** The date this Coverage Part became effective; and

Includes copyrighted material of Insurance Services Office, Inc. with its permission. 000084

will be considered as included until the end of the current "policy period". We will make no additional premium charge for this additional coverage during the interim.

## 8. Office of Foreign Assets Control (OFAC) Compliance

Whenever insurance coverage provided by this policy would be in violation of any United States economic or trade sanctions, such insurance coverage shall be null and void.

## 9. Other Insurance

**a.** If any covered "loss" is covered by any other valid policy, then this Coverage Part shall apply only in excess of the amount of any deductible, retention and limit of insurance under such other policy whether such other policy is stated to be primary, contributory, excess, contingent or otherwise, unless such other policy is written specifically excess of this Coverage Part by reference in such other policy to this policy's policy number.

**b.** When this insurance is excess, we will have no duty to defend the "insured" against any "claim" if any other insurer has a duty to defend the "insured" against that "claim". But we will have the right to associate in the defense and control of any "claim" that we reasonably believe is likely to involve the insurance provided under this Coverage Part. If no other insurer defends, we will undertake to do so, but we will be entitled to the "insured's" rights against all those other insurers.

## 10. Pre-Notification Consultation

You agree to consult with us prior to the issuance of notification to "affected individuals". We assume no responsibility under this Coverage Part for any services promised to "affected individuals" without our prior agreement. If possible, this pre-notification consultation will also include the designated service provider(s) as agreed to under Condition **12.** Service Providers. You must provide the following at our pre-notification consultation with you:

**a.** The exact list of "affected individuals" to be notified, including contact information.

**b.** Information about the "personal data compromise" that may appropriately be communicated with "affected individuals".

**c.** The scope of services that you desire for the "affected individuals". For example, coverage may be structured to provide fewer services in order to make those services available to more "affected individuals" without exceeding the available Response Expenses Limit.

## 11. Representations

You represent that all information and statements contained in any application or questionnaire submitted in connection with this Coverage Part are true, accurate and complete. All such information and statements are the basis for our issuing this Coverage Part and shall be considered as incorporated into and shall constitute a part of this Coverage Part. Misrepresentation or omission of any material fact may be grounds for the rescission of this Coverage Part.

## 12. Separation of Insureds

Except with respect to the applicable Limit of Insurance, and any rights or duties specifically assigned in this Coverage Part or the policy to which it is attached, to the first "named insured", this insurance applies separately to each "insured" against whom a "claim" is made.

## 13. Service Providers

**a.** We will only pay under this Coverage Part for services that are provided by service providers approved by us. You must obtain our prior approval for any service provider whose expenses you want covered under this Coverage Part. We will not unreasonably withhold such approval.

**b.** Prior to the Pre-Notification Consultation described in the Pre-Notification Consultation Condition above, you must come to agreement with us regarding the service provider(s) to be used for the Notification to Affected Individuals and Services to Affected Individuals. We will suggest a service provider. If you prefer to use an alternate service provider, our coverage is subject to the following limitations:

**(1)** Such alternate service provider must be approved by us;

**(2)** Such alternate service provider must provide services that are reasonably equivalent or superior in both kind and quality to the services that would have been provided by the service provider we had suggested; and

**(3)** Our payment for services provided by any alternate service provider will not exceed the amount that we would have paid using the service provider we had suggested.

## 14. Services

The following conditions apply as respects any services provided to you or any "affected indi-

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000085

vidual" or "identity recovery insured" by us, our designees or any service firm paid for in whole or in part under this Coverage Part:

**a.** The effectiveness of such services depends on the cooperation and assistance of you, "affected individuals" and "identity recovery insureds".

**b.** All services may not be available or applicable to all individuals. For example, "affected individuals" and "identity recovery insureds" who are minors or foreign nationals may not have credit records that can be provided or monitored. Service in Canada will be different from service in the United States and Puerto Rico in accordance with local conditions.

**c.** We do not warrant or guarantee that the services will end or eliminate all problems associated with the covered events.

**d.** Except for the services of an "identity recovery case manager" under Insuring Agreement **C** - Identity Recovery, which we will provide directly, you will have a direct relationship with the professional service firms paid for in whole or in part under this Coverage Part. Those firms work for you.

## 15. Subrogation

With respect to any payment under this Coverage Part on behalf of any "insured", we shall be subrogated to the "insured's" rights of recovery to the extent of such payment. The "insured" shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable us to bring suit in the "insured's" name. Any recoveries, less the cost of obtaining them, shall be distributed as follows:

**a.** To you, until you are reimbursed for any "loss" you sustain that exceeds the sum of the applicable Aggregate Limit of Insurance and the Deductible Amount, if any;

**b.** Then to us, until we are reimbursed for the payment under this Coverage Part;

**c.** Then to you, until you are reimbursed for that part of the payment equal to the Deductible Amount, if any.

## 16. Valuation - Settlement

All premiums, Limits of Insurance, Deductible Amounts, "loss" and any other monetary amounts under this Coverage Part are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is agreed to or another component of "loss" under this Coverage Part is expressed in any currency other than United States of America dollars, payment under this Coverage Part shall be made in United States dollars at the rate of exchange published in *The Wall Street Journal* on the date the final judgment is entered, settlement amount is agreed upon, or the other component of "loss" is due, respectively.

## 17. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first "named insured" shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V - EXTENDED REPORTING PERIODS

The provisions contained within this Section apply only to Insuring Agreement **B** - Defense and Liability.

**1.** You shall have the right to the Extended Reporting Periods described in this section, in the event that:

**a.** You or we cancel this Coverage Part;

**b.** You or we refuse to renew this Coverage Part; or

**c.** We renew this Coverage Part on other than a claims-made basis or with a retroactive date later than the Retroactive Date shown in the Declarations.

**2.** If an event as specified in Paragraph **1.** has occurred, you shall have the right to the following:

**a.** An Automatic Extended Reporting Period of 90 days after the effective date of cancellation or nonrenewal at no additional premium in which to give to us written notice of a "claim" or "regulatory proceeding" of which you first receive notice during said Automatic Extended Reporting Period for any "personal data compromise" occurring on or after the Retroactive Date shown on the Declarations and before the end of the "policy period" and which is otherwise covered by this Coverage Part; and

**b.** Upon payment of the additional premium stated in the Declarations, a Supplemental Extended Reporting Period for the term stated in the Supplemental Extended Reporting Period Endorsement will be provided immediately following the effective date of cancellation or nonrenewal in which to give to us written notice of a "claim" or "regulatory proceeding" of which you first receive notice during said Supplemental Extended Reporting Period

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000086

for any "personal data compromise" occurring on or after the Retroactive Date shown in the Declarations and before the end of the "policy period" and which is otherwise covered by this Coverage Part.

To obtain the Supplemental Extended Reporting Period, you must request it in writing and pay the additional premium due, within 60 days of the effective date of cancellation or nonrenewal. The additional premium for the Supplemental Extended Reporting Period shall be fully earned at the inception of the Supplemental Extended Reporting Period. If we do not receive the written request as required, you may not exercise this right at a later date.

**c.** The Defense and Liability Limit of Insurance for the Extended Reporting Periods shall be part of, and not in addition to, the Defense and Liability Limit of Insurance for the immediately preceding "coverage term".

## SECTION VI - DEFINITIONS

**1.** "Affected individual" means any person whose "personally identifying information" or "personally sensitive information" is lost, stolen, accidentally released or accidentally published by a "personal data compromise" covered under this Coverage Part. This definition is subject to the following provisions:

**a.** "Affected individual" does not include any business or organization. Only an individual person may be an "affected individual".

**b.** An "affected individual" may reside anywhere in the world.

**2.** "Authorized representative" means a person or entity authorized by law or contract to act on behalf of an "identity recovery insured".

**3.** "Claim":

**a.** Means:

**(1)** A civil proceeding in which it is alleged that the claimant suffered damages arising from:

**(a)** A "personal data compromise" that was covered under Insuring Agreement **A** - Response Expenses section of this Coverage Part and in connection with which you submitted a claim to us and provided notifications and services to "affected individuals" in consultation with us pursuant to Insuring Agreement **A** - Response Expenses; or

**(b)** The violation of a governmental statute or regulation arising from a "personal data compromise" that was covered under Insuring Agreement **A** - Response Expenses and in connection with which you submitted a claim to us and provided notifications and services to "affected individuals" in consultation with us pursuant to Insuring Agreement **A** - Response Expenses.

**(2)** "Claim" includes:

**(a)** An arbitration proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent;

**(b)** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent; or

**(c)** A written demand for money, when such demand could reasonably result in a civil proceeding as described in this definition.

**b.** Does not include any demand or action brought by or on behalf of someone who is:

**(1)** Your "executive";

**(2)** Your owner or part-owner; or

**(3)** A holder of your securities;

in their capacity as such, whether directly, derivatively, or by class action. "Claim" will include proceedings brought by such individuals in their capacity as "affected individuals", but only to the extent that the damages claimed are the same as would apply to any other "affected individual".

**4.** "Coverage term" means the following individual increment, or if a multi-year "policy period", increments, of time, which comprise the "policy period" of this Coverage Part:

**a.** The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year "policy period", each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 AM standard time at your mailing

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000087

address shown in the Declarations on the earlier of:

**(1)** The day the "policy period" shown in the Declarations ends; or

**(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

**b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

**5.** "Coverage territory" means:

**a.** With respect to Insuring Agreement **A** - Response Expenses, anywhere in the world.

**b.** With respect to Insuring Agreement **B** - Defense and Liability, anywhere in the world, however, "claims" must be brought in the United States (including its territories and possessions), Puerto Rico or Canada.

**c.** With respect to Insuring Agreement **C** - Identity Recovery, anywhere in the world

**6.** "Data compromise liability":

**a.** Means the following, when they arise from a "claim" or "regulatory proceeding":

**(1)** Damages (including punitive and exemplary damages and the multiple portion of any multiplied damage award), judgments or settlements;

**(2)** Attorney's fees and other litigation costs added to that part of any judgment paid by us, when such fees and costs are awarded by law or court order; and

**(3)** Pre-judgment interest on that part of any judgment paid by us.

**b.** Also includes any Payment Card Industry (PCI) fine or penalty imposed under a contract to which you are a party when such fine or penalty arises from a "claim". PCI Fines and Penalties do not include any increased transaction costs.

**c.** Also includes any fine or penalty imposed by law, to the extent such fine or penalty is legally insurable under the law of the applicable jurisdiction when such fine or penalty arises from a "regulatory proceeding".

**d.** Does not include:

**(1)** Civil or criminal fines or penalties imposed by law, except for civil fines and penalties expressly covered under paragraphs **b.** and **c.** above;

**(2)** Taxes; or

**(3)** Matters which may be deemed uninsurable under the applicable law.

**e.** With respect to fines and penalties and punitive, exemplary and multiplied damages, the law of the jurisdiction most favorable to the insurability of those fines, penalties or damages shall control for the purpose of resolving any dispute between us and any "insured" regarding whether the fines, penalties or damages specified in this definition above are insurable under this Coverage Part, provided that such jurisdiction:

**(1)** Is where those fines, penalties or damages were awarded or imposed;

**(2)** Is where any "personal data compromise" took place for which such fines, penalties or damages were awarded or imposed;

**(3)** Is where you are incorporated or you have your principal place of business; or

**(4)** Is where we are incorporated or have our principal place of business.

**7.** "Defense costs":

**a.** Means reasonable and necessary expenses resulting solely from the investigation, defense and appeal of any "claim" or "regulatory proceeding" against an "insured". Such expenses may be incurred by us. Such expenses may include premiums for any appeal bond, attachment bond or similar bond. However, we have no obligation to apply for or furnish such bond.

**b.** Does not include the salaries or wages of your "employees" or "executives", or your loss of earnings.

**8.** "Employee" means any natural person, other than an "executive", who was, now is or will be:

**a.** Employed on a full- or part-time basis by you;

**b.** Furnished temporarily to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions;

**c.** Leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties relat-

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000088

ed to the conduct of your business, but does not mean a temporary employee as defined in Paragraph **8.b.**; or

**d.** Your volunteer worker, which includes unpaid interns.

**9.** "Executive" means any natural person who was, now is or will be:

**a.** The owner of a sole proprietorship that is a "named insured"; or

**b.** A duly elected or appointed:

**(1)** Director;

**(2)** Officer;

**(3)** Managing Partner;

**(4)** General Partner;

**(5)** Member (if a limited liability company);

**(6)** Manager (if a limited liability company); or

**(7)** Trustee,

of a "named insured".

**10.** "Identity recovery case manager" means one or more individuals assigned by us to assist an "identity recovery insured" with communications we deem necessary for re-establishing the integrity of the personal identity of the "identity recovery insured". This includes, with the permission and cooperation of the "identity recovery insured", written and telephone communications with law enforcement authorities, governmental agencies, credit agencies and individual creditors and businesses.

**11.** "Identity recovery expenses" means the following when they are reasonable and necessary expenses that are incurred as a direct result of an "identity theft" suffered by an "identity recovery insured":

**a.** Costs for re-filing applications for loans, grants or other credit instruments that are rejected solely as a result of an "identity theft".

**b.** Costs for notarizing affidavits or other similar documents, long distance telephone calls and postage solely as a result of your efforts to report an "identity theft" or amend or rectify records as to your true name or identity as a result of an "identity theft".

**c.** Costs for credit reports from established credit bureaus.

**d.** Fees and expenses for an attorney approved by us for the following:

**(1)** The defense of any civil suit brought against an "identity recovery insured".

**(2)** The removal of any civil judgment wrongfully entered against an "identity recovery insured".

**(3)** Legal assistance for an "identity recovery insured" at an audit or hearing by a governmental agency.

**(4)** Legal assistance in challenging the accuracy of the "identity recovery insured's" consumer credit report.

**(5)** The defense of any criminal charges brought against an "identity recovery insured" arising from the actions of a third party using the personal identity of the "identity recovery insured".

**e.** Actual lost wages of the "identity recovery insured" for time reasonably and necessarily taken away from work and away from the work premises. Time away from work includes partial or whole work days. Actual lost wages may include payment for vacation days, discretionary days, floating holidays and paid personal days. Actual lost wages does not include sick days or any loss arising from time taken away from self-employment. Necessary time off does not include time off to do tasks that could reasonably have been done during non-working hours.

**f.** Actual costs for supervision of children or elderly or infirm relatives or dependents of the "identity recovery insured" during time reasonably and necessarily taken away from such supervision. Such care must be provided by a professional care provider who is not a relative of the "identity recovery insured".

**g.** Actual costs for counseling from a licensed mental health professional. Such care must be provided by a professional care provider who is not a relative of the "identity recovery insured".

**h.** Any other reasonable costs necessarily incurred by an "identity recovery insured" as a direct result of the "identity theft".

**(1)** Such costs include:

**(a)** Costs by the "identity recovery insured" to recover control over his or her personal identity.

**(b)** Deductibles or service fees from financial institutions.

**(2)** Such costs do not include:

**(a)** Costs to avoid, prevent or detect "identity theft" or other loss.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000089

**(b)** Money lost or stolen.

**(c)** Costs that are restricted or excluded elsewhere in this Coverage Part or policy.

**12.** "Identity recovery insured" means the following:

**a.** When the entity insured under this Coverage Part is a sole proprietorship, the "identity recovery insured" is the individual person who is the sole proprietor of the "named insured".

**b.** When the "named insured" under this Coverage Part is a partnership, the "identity recovery insureds" are the current partners.

**c.** When the "named insured" under this Coverage Part is a corporation or other form of organization, other than those described in **a.** or **b.** above, the "identity recovery insureds" are all individuals having an ownership position of 20% or more of the insured entity. However, if and only if there is no one who has such an ownership position, then the "identity recovery insured" shall be:

   **(1)** The chief executive of the insured entity; or

   **(2)** As respects a religious institution, the senior ministerial employee.

**d.** The legally recognized spouse of any individual described in **a.**, **b.** or **c.** above.

An "identity recovery insured" must always be an individual person. The "named insured" under this Coverage Part is not an "identity recovery insured".

**13.** "Identity theft" means the fraudulent use of "personally identifying information". This includes fraudulently using such information to establish credit accounts, secure loans, enter into contracts or commit crimes.

"Identity theft" does not include the fraudulent use of a business name, d/b/a or any other method of identifying a business activity.

**14.** "Insured" means:

**a.** With respect to Insuring Agreement **A** - Response Expenses any "named insured".

**b.** With respect to Insuring Agreement **B** - Defense and Liability:

   **(1)** Any "named insured"; and

   **(2)** Any "employee" or "executive" of a "named insured", but:

**(a)** Only for the conduct of the "named insured's" business within the scope of his or her employment or duties as an "executive"; and

**(b)** Such "employee" or "executive" shall not be an "insured" to the extent his or her actions or omissions are criminal, fraudulent, dishonest or constitute an intentional or knowing violation of the law.

**c.** With respect to Insuring Agreement **C** - Identity Recovery any "named insured".

**15.** "Loss" means:

**a.** With respect to Insuring Agreement **A** - Response Expenses:

   Those expenses enumerated in Section **I**, **A.**, Paragraph **1.b.**

**b.** With respect to Insuring Agreement **B** - Defense and Liability:

   **(1)** "Defense costs"; and

   **(2)** "Data compromise liability".

**c.** With respect to Insuring Agreement **C** - Identity Recovery, "identity recovery expenses".

**16.** "Named insured" means the entity or entities shown in the Declarations as a Named Insured.

**17.** "Personal data compromise" means the loss, theft, accidental release or accidental publication of "personally identifying information" or "personally sensitive information" as respects one or more "affected individuals". If the loss, theft, accidental release or accidental publication involves "personally identifying information", such loss, theft, accidental release or accidental publication must result in or have the reasonable possibility of resulting in the fraudulent use of such information. This definition is subject to the following provisions:

**a.** At the time of the loss, theft, accidental release or accidental publication, the "personally identifying information" or "personally sensitive information" need not be at the insured premises but must be in the direct care, custody or control of:

   **(1)** You; or

   **(2)** A professional entity with which you have a direct relationship and to which you (or an "affected individual" at your direction) have turned over (directly or via a professional transmission or transportation provider) such information for storage, pro-

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
000090

cessing, transmission or transportation of such information.

**b.** "Personal data compromise" includes disposal or abandonment of "personally identifying information" or "personally sensitive information" without appropriate safeguards such as shredding or destruction, subject to the following provisions:

**(1)** The failure to use appropriate safeguards must be accidental and not reckless or deliberate; and

**(2)** Such disposal or abandonment must take place during the time period for which this Coverage Part is effective.

**c.** "Personal data compromise" includes situations where there is a reasonable cause to suspect that such "personally identifying information" or "personally sensitive information" has been lost, stolen, accidentally released or accidentally published, even if there is no firm proof.

**d.** All incidents of "personal data compromise" that are discovered at the same time or arise from the same cause will be considered one "personal data compromise".

**18.** "Personally identifying information" means information, including health information, that could be used to commit fraud or other illegal activity involving the credit, access to health care or identity of an "affected individual" or "identity recovery insured". This includes, but is not limited to, Social Security numbers or account numbers.

"Personally identifying information" does not mean or include information that is otherwise available to the public, such as names and addresses.

**19.** "Personally sensitive information" means private information specific to an individual the release of which requires notification of "affected individuals" under any applicable law.

"Personally sensitive information" does not mean or include "personally identifying information".

**20.** "Policy period" means the cumulative total of each individual "coverage term" comprising the period of time from the inception date of this Coverage Part shown in the Declarations to the expiration date shown in the Declarations, or its earlier cancellation or termination date.

**21.** "Regulatory proceeding" means an investigation, demand or proceeding alleging a violation of law or regulation brought by, or on behalf of, the Federal Trade Commission, Federal Communications Commission or other administrative or regulatory agency, or any federal, state, local or foreign governmental entity in such entity's regulatory or official capacity.

HC 102 01 18     Includes copyrighted material of Insurance Services Office, Inc. with its permission.     Page 17 of 17

000091

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ALABAMA CHANGES - LEGAL
# ACTION AGAINST US

This endorsement modifies insurance provided under the following:

    **CINCINNATI CYBER DEFENSE™ COVERAGE PART**
    **CINCINNATI DATA DEFENDER™ COVERAGE PART**
    **CINCINNATI NETWORK DEFENDER™ COVERAGE PART**

Paragraph **b.** of the Legal Action Against Us Condition is deleted in its entirety and replaced by the following:

**b.**    You may not bring any legal action against us involving "loss":

    **(1)**    Unless you have complied with all the terms of this insurance; and

    **(2)**    Unless the action is brought within the time limitations prescribed by Alabama law.

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.
000092

# THE CINCINNATI CASUALTY COMPANY
### A Stock Insurance Company

# CINCINNATI NETWORK DEFENDER™ COVERAGE PART
# DECLARATIONS

**THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF INSURANCE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE DEDUCTIBLE. IN NO EVENT WILL WE BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE LIMIT OF INSURANCE. READ THE ENTIRE POLICY CAREFULLY.**

Attached to and forming part of POLICY NUMBER: `ENP 046 05 30`    Effective Date `11-01-2019`

Named Insured is the same as it appears in the Common Policy Declarations unless another entry is made here.

**Retroactive Date:** `11-01-2019`

## Limits of Insurance and Deductible

| | Insuring Agreement | Annual Aggregate | Sublimit | | Deductible | |
|---|---|---|---|---|---|---|
| A | Computer Attack | $50,000 | | | $1,000 | [1] |
| | | | Cyber Extortion | $10,000 | $1,000 | [2] |
| | | | Loss of Business | $25,000 | | |
| | | | Public Relations | $25,000 | | |
| B | Network Security and Electronic Media Liability | $50,000 | | | $1,000 | |

| **TOTAL ANNUAL PREMIUM** | $187 |
|---|---|

| Optional Supplemental Extended Reporting Period - Term: | Optional Supplemental Extended Reporting Period - Premium: |
|---|---|
| 1 YEAR | 60 |
| 2 YEAR | 120 |
| 3 YEAR | 160 |
| 4 YEAR | 200 |
| 5 YEAR | 220 |
| 6 YEAR | 240 |

FORMS AND/OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:

| HC103 | 01/18 | CINCINNATI NETWORK DEFENDER™ COVERAGE FORM |
|---|---|---|
| HC477AL | 08/16 | ALABAMA CHANGES - LEGAL ACTION AGAINST US |

[1] Computer Attack Deductible other than Cyber Extortion
[2] Cyber Extortion Deductible

# CINCINNATI NETWORK DEFENDER™ COVERAGE FORM

### TABLE OF CONTENTS

Coverage Part Provision:                                                                                 Begins on Page:

Preamble.................................................................................................................................3

SECTION I - COVERAGES.............................................................................................................3

A.  Insuring Agreements..............................................................................................................3

    1.  Insuring Agreement A - Computer Attack...................................................................3
    2.  Insuring Agreement B - Network Security and Electronic Media Liability ...................3

B.  Exclusions..............................................................................................................................4

    1.  Contractual Liability...................................................................................................4
    2.  Criminal Investigations or Proceedings ....................................................................4
    3.  Deficiency Correction................................................................................................4
    4.  Extortion ....................................................................................................................4
    5.  Fines or Penalties .....................................................................................................4
    6.  Fraudulent, Dishonest or Criminal Acts ....................................................................4
    7.  Information Technology Products ..............................................................................4
    8.  Infrastructure Failure.................................................................................................4
    9.  Knowledge of Falsity.................................................................................................4
    10. Non-monetary Relief.................................................................................................4
    11. Nuclear......................................................................................................................4
    12. Patent or Trade Secret Infringement ........................................................................4
    13. Previously Reported Claims ......................................................................................4
    14. Prior Wrongful Acts...................................................................................................5
    15. Prior or Pending Litigation ........................................................................................5
    16. Property Damage or Bodily Injury .............................................................................5
    17. War ............................................................................................................................5
    18. Willful Complicity.......................................................................................................5

SECTION II - LIMITS OF INSURANCE AND DEDUCTIBLE .............................................................5

SECTION III - DEFENSE AND SETTLEMENT .................................................................................6

SECTION IV - CONDITIONS ............................................................................................................6

    1.  Bankruptcy.................................................................................................................6
    2.  Due Diligence.............................................................................................................6
    3.  Duties in the Event of a Claim or Loss ......................................................................6
    4.  Legal Action Against Us.............................................................................................7
    5.  Liberalization..............................................................................................................8
    6.  Office of Foreign Assets Control (OFAC) Compliance................................................8
    7.  Other Insurance.........................................................................................................8
    8.  Representations.........................................................................................................8
    9.  Separation of Insureds ..............................................................................................8
    10. Services.....................................................................................................................8
    11. Subrogation...............................................................................................................8
    12. Valuation - Settlement ..............................................................................................9
    13. When We Do Not Renew ...........................................................................................9

SECTION V - EXTENDED REPORTING PERIODS ..........................................................................9

SECTION VI - DEFINITIONS ...........................................................................................................9

    1.  "Actual cash value" ...................................................................................................9
    2.  "Bodily injury"............................................................................................................9
    3.  "Business income loss"..............................................................................................9
    4.  "Claim".......................................................................................................................10
    5.  "Computer attack".....................................................................................................10
    6.  "Computer system"....................................................................................................10
    7.  "Coverage term".......................................................................................................10

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.
000094

**Coverage Part Provision:**                                                                 **Begins on Page:**

**SECTION VI – DEFINITIONS (Cont'd)**...........................................................................**10**

    **8.** "Coverage territory"....................................................................................**10**
    **9.** "Cyber extortion expenses"........................................................................**10**
    **10.** "Cyber extortion threat"............................................................................**11**
    **11.** "Data re-creation costs"............................................................................**11**
    **12.** "Data restoration costs"............................................................................**11**
    **13.** "Defense costs".........................................................................................**11**
    **14.** "Denial of service attack"..........................................................................**11**
    **15.** "Electronic media incident".......................................................................**11**
    **16.** "Employee".................................................................................................**12**
    **17.** "Executive".................................................................................................**12**
    **18.** "Extra expense".........................................................................................**12**
    **19.** "Insured".....................................................................................................**12**
    **20.** "Interrelated".............................................................................................**12**
    **21.** "Loss"..........................................................................................................**12**
    **22.** "Malware attack"........................................................................................**12**
    **23.** "Named insured".........................................................................................**12**
    **24.** "Network security incident".......................................................................**12**
    **25.** "Period of restoration"................................................................................**13**
    **26.** "Personally identifying information"...........................................................**13**
    **27.** "Personally sensitive information".............................................................**13**
    **28.** "Policy period"............................................................................................**13**
    **29.** "Property damage".....................................................................................**13**
    **30.** "Ransomware"............................................................................................**13**
    **31.** "Settlement costs".....................................................................................**13**
    **32.** "System restoration costs".......................................................................**13**
    **33.** "Third party corporate data"......................................................................**14**
    **34.** "Unauthorized access incident"................................................................**14**
    **35.** "Wrongful act"............................................................................................**14**

**HC 103 01 18**       Includes copyrighted material of Insurance       **Page 2 of 14**
Services Office, Inc., with its permission.
000095

# CINCINNATI NETWORK DEFENDER™ COVERAGE FORM

**THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF INSURANCE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE DEDUCTIBLE. IN NO EVENT WILL WE BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE LIMIT OF INSURANCE. READ THE ENTIRE POLICY CAREFULLY.**

Various provisions in this Coverage Part restrict coverage. Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the "named insured" shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **VI** - **Definitions**.

## SECTION I - COVERAGES

### A. Insuring Agreements

Coverage is provided under the following Insuring Agreements for which an Aggregate Limit of Insurance is shown in the Declarations:

**1. Insuring Agreement A - Computer Attack**

**a.** Coverage under Insuring Agreement **A** - Computer Attack applies only if all of the following conditions are met:

**(1)** There has been a "computer attack"; and

**(2)** Such "computer attack" is first discovered by you during the "policy period"; and

**(3)** Such "computer attack" occurred in the "coverage territory"; and

**(4)** Such "computer attack" is reported to us as soon as practicable, but in no event more than 60 days after the date it is first discovered by you.

**b.** If all of the conditions in **a.** above have been met, then we will provide you the following coverages for "loss" directly arising from such "computer attack".

**(1) Cyber Extortion**

We will pay your necessary and reasonable "cyber extortion expenses".

**(2) Data Restoration**

We will pay your necessary and reasonable "data restoration costs".

**(3) Data Re-creation**

We will pay your necessary and reasonable "data re-creation costs".

**(4) System Restoration**

We will pay your necessary and reasonable "system restoration costs".

**(5) Loss of Business**

We will pay your actual "business income loss" and your necessary and reasonable "extra expenses".

**(6) Public Relations**

If you suffer covered "business income loss", we will pay the necessary and reasonable fees and expenses you incur, with our prior written consent, for a professional public relations firm review of and response to the potential impact of the "computer attack" on your business relationships. We will only pay for such fees and expenses when such a public relations firm review and response is reasonably necessary to avert or mitigate material damage to your business relationships from the "computer attack".

**2. Insuring Agreement B - Network Security and Electronic Media Liability**

**a.** Coverage under Insuring Agreement **B** - Network Security and Electronic Media Liability applies only if all of the following conditions are met:

**(1)** During the "coverage term" or any applicable Extended Reporting Period, you first receive no-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000096

tice of a "claim" which arises from a "wrongful act" that:

    **(a)** Took place on or after the Retroactive Date shown in the Declarations and before the end of the "policy period"; and

    **(b)** Took place in the "coverage territory"; and

  **(2)** Such "claim" is reported to us as soon as practicable, but in no event more than 60 days after the date it is first received by you.

  **b.** If the conditions listed in **a.** above have been met, then we will pay on behalf of the "insured" the "insured's" necessary and reasonable "defense costs" and "settlement costs" directly arising from the "claim".

  **c.** All "claims" caused by a single "wrongful act" or series of "interrelated" "wrongful acts" will be deemed to have been made at the time that notice of the first of those "claims" is received by you.

**B. Exclusions**

This insurance does not apply to "loss" or "claims" based upon, attributable to or arising out of:

  **1. Contractual Liability**

    An "insured's" assumption of liability by contract or agreement, whether oral or written. However, this exclusion shall not apply to any liability that an "insured" would have incurred in the absence of such contract or agreement.

  **2. Criminal Investigations or Proceedings**

    Any criminal investigations or proceedings.

  **3. Deficiency Correction**

    Costs to research or correct any deficiency.

  **4. Extortion**

    Any threat, extortion or blackmail. This includes, but is not limited to, ransom payments and private security assistance.

    This exclusion does not apply to the extent that insurance coverage is provided under **SECTION I - COVERAGES**, Paragraph **A.1.b.(1) Cyber Extortion**.

  **5. Fines or Penalties**

    Any fines or penalties.

  **6. Fraudulent, Dishonest or Criminal Acts**

    Any criminal, fraudulent or dishonest act, error or omission, or any intentional or knowing violation of the law by the "insured".

  **7. Information Technology Products**

    The propagation or forwarding of malware, including viruses, worms, Trojans, spyware and keyloggers in connection with hardware or software created, produced or modified by you for sale, lease or license to third parties.

  **8. Infrastructure Failure**

    Failure or interruption of or damage to any electrical power supply network or telecommunication network not owned and operated by the "insured" including, but not limited to, the internet, internet service providers, DNS service providers, cable and wireless providers, internet exchange providers, search engine providers, tier 1 internet protocol networks and other providers of telecommunications or internet infrastructure.

  **9. Knowledge of Falsity**

    Any oral or written publication of material, if done by the "insured" or at the "insured's" direction with knowledge of its falsity.

  **10. Non-monetary Relief**

    That part of any "claim" seeking any non-monetary relief.

  **11. Nuclear**

    Nuclear reaction or radiation or radioactive contamination, however caused.

  **12. Patent or Trade Secret Infringement**

    Any actual or alleged patent or trade secret violation including any actual or alleged violation of the Patent Act, the Economic Espionage Act of 1996, or the Uniform Trade Secrets Act and their amendments.

  **13. Previously Reported Claims**

    The same facts alleged or contained in any "claim" which has been reported, or in any circumstances of which notice has been given, under any insurance policy of which this Coverage Part is a renewal or replacement.

**HC 103 01 18**     Includes copyrighted material of Insurance Services Office, Inc., with its permission.     **Page 4 of 14**

000097

### 14. Prior Wrongful Acts

Any "wrongful act" first occurring before the Retroactive Date shown in the Declarations or any "claim" arising from a "wrongful act" that first occurred prior to the Retroactive Date shown in the Declarations.

### 15. Prior or Pending Litigation

Any "claim" or other proceeding against an "insured" which was pending or existed prior to the "coverage term", or arising out of the same or substantially the same facts, circumstances or allegations which are the subject of, or the basis for, such "claim" or other proceeding.

### 16. Property Damage or Bodily Injury

"Property damage" or "bodily injury" other than "bodily injury" arising from an "electronic media incident".

### 17. War

**a.** War, including undeclared or civil war or civil unrest;

**b.** Warlike action by military force, including action hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

### 18. Willful Complicity

The "insured's" intentional or willful complicity in a covered "loss" event or your reckless disregard for the security of your "computer system" or data.

## SECTION II - LIMITS OF INSURANCE AND DEDUCTIBLE

### A. Insuring Agreement A - Computer Attack

**1.** The most we will pay under Insuring Agreement **A** - Computer Attack for Cyber Extortion coverage for "loss" arising from any one "computer attack" is the Cyber Extortion Sublimit stated in the Declarations. This Limit of Insurance is part of, and not in addition to, the Computer Attack Aggregate Limit of Insurance stated in Paragraph **4.** below.

**2.** The most we will pay under Insuring Agreement **A** - Computer Attack for Loss of Business coverage for "loss" arising from any one "computer attack" is the Loss of Business Sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the Computer Attack Aggregate Limit of Insurance stated in Paragraph **4.** below.

**3.** The most we will pay under Insuring Agreement **A** - Computer Attack for Public Relations coverage for "loss" arising from any one "computer attack" is the Public Relations Sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the Computer Attack Aggregate Limit of Insurance stated in Paragraph **4.** below.

**4.** The Computer Attack Aggregate Limit of Insurance is an annual aggregate limit. This amount is the most we will pay for the total of all "loss" covered under Insuring Agreement **A** - Computer Attack arising out of all "computer attack" events which are first discovered by you during the "coverage term". This limit applies regardless of the number of "computer attack" events first discovered during the "coverage term".

**5.** A "computer attack" may be first discovered by you in one "coverage term" but it may cause covered "loss" in one or more subsequent "coverage terms". If so, all covered "loss" arising from such "computer attack" will be subject to the Computer Attack Aggregate Limit of Insurance applicable to the "coverage term" when the "computer attack" was first discovered by you.

**6.** The Computer Attack coverage is subject to the:

**a.** Computer Attack other than Cyber Extortion; and

**b.** Cyber Extortion;

deductibles stated in the Declarations. In the event that elements of "loss" from the same "computer attack" include "cyber extortion expenses" as well as other insured expenses or costs, then only the single highest deductible will apply. You shall be responsible for the applicable deductible amount as respects "loss" arising from each "computer attack" covered under this Coverage Part.

### B. Insuring Agreement B - Network Security and Electronic Media Liability

**1.** Except for post-judgment interest, the most we will pay under Insuring Agreement **B** - Network Security and Electronic Media Liability is the Network Security and Electronic Media Liability Aggregate Limit of Insurance stated in the Declarations.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000098

**2.** The Network Security and Electronic Media Liability Aggregate Limit of Insurance is an annual aggregate limit. This amount is the most we will pay for the total of all "loss" covered under Insuring Agreement **B** - Network Security and Electronic Media Liability (other than post-judgment interest) arising out of all "claims".

**3.** The Network Security and Electronic Media Liability Aggregate Limit of Insurance for the Extended Reporting Periods (if applicable) shall be part of, and not in addition to, the Network Security and Electronic Media Liability Aggregate Limit of Insurance for the immediately preceding "coverage term".

**4.** The Insuring Agreement **B** - Network Security and Electronic Media Liability coverage is subject to the Network Security and Electronic Media Liability Deductible stated in the Declarations. You shall be responsible for the applicable deductible amount as respects "loss" arising from each "claim" covered under this Coverage Part. We may, at our option, pay any part or all of the deductible amount to defend or effect settlement of any "claim" or "loss" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

The Limits of Insurance apply separately to each "coverage term".

## SECTION III - DEFENSE AND SETTLEMENT

The provisions contained within this Section apply only to Insuring Agreement **B** - Network Security and Electronic Media Liability.

**1.** We will have the right and duty to select counsel and defend the "insured" against any "claim" covered by Insuring Agreement **B** - Network Security and Electronic Media Liability, regardless of whether the allegations of such "claim" are groundless, false or fraudulent. However, we shall have no duty to defend the "insured" against any "claim" seeking damages or other relief not insured by Insuring Agreement **B** - Network Security and Electronic Media Liability.

**2.** We may, with your written consent, make any settlement of a "claim" which we deem reasonable. If you withhold consent to such settlement, our liability for all "loss" resulting from such "claim" will not exceed the amount for which we could have settled such "claim" plus "defense costs" incurred as of the date we proposed such settlement in writing to you.

**3.** We shall not be obligated to pay any "loss", or to defend or continue to defend any "claim", after the Insuring Agreement **B** - Network Secu-

rity and Electronic Media Liability Limit of Insurance has been exhausted.

**4.** We shall pay all interest on that amount of any judgment within the Insuring Agreement **B** - Network Security and Electronic Media Liability Limit of Insurance which accrues:

**a.** After entry of judgment; and

**b.** Before we pay, offer to pay or deposit in court that part of the judgment within the Insuring Agreement **B** - Network Security and Electronic Media Liability Limit of Insurance or, in any case, before we pay or offer to pay the entire Insuring Agreement **B** - Network Security and Electronic Media Liability Limit of Insurance.

These interest payments shall be in addition to and not part of the Network Security and Electronic Media Liability Limit of Insurance.

## SECTION IV - CONDITIONS

**1. Bankruptcy**

Your bankruptcy, or the bankruptcy of your estate if you are a sole proprietor, will not relieve us of our obligations under this Coverage Part.

**2. Due Diligence**

You agree to use due diligence to prevent and mitigate "loss" covered under this Coverage Part. This includes, but is not limited to, complying with, and requiring your vendors to comply with, reasonable and industry-accepted protocols for:

**a.** Providing and maintaining appropriate physical security for your premises, "computer systems" and hard copy files;

**b.** Providing and maintaining appropriate computer and Internet security; and

**c.** Maintaining and updating at appropriate intervals backups of computer data.

**3. Duties in the Event of a Claim or Loss**

**a.** If, during the "coverage term", the "insured" first becomes aware of any circumstance that could reasonably be expected to give rise to a "claim", the "insured" may give written notice to us. The notice must be made as soon as practicable, but in no event more than 60 days after the date the circumstance is first discovered by the "insured", must be made during the "coverage term" and must include:

**(1)** The specific details, including the date, of the circumstance;

**(2)** The alleged injuries or damage sustained or which may be sustained;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000099

**(3)** The names of potential claimants; and

**(4)** The manner in which the "insured" first became aware of the circumstance.

Any subsequent "claim" arising out of any circumstance which is the subject of such a written notice will be deemed to have been made at the time written notice in compliance with these requirements was first received by us.

**b.** If a "claim" is brought against any "insured", you must:

**(1)** Immediately record the specifics of the "claim" and the date received; and

**(2)** Provide us with written notice, as soon as practicable, but in no event more than 60 days after the date the "claim" is first received by you.

**(3)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim";

**(4)** Authorize us to obtain records and other information;

**(5)** Cooperate with us in the investigation, settlement or defense of the "claim";

**(6)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to you because of "loss" to which this insurance may also apply; and

**(7)** Not take any action, or fail to take any required action, that prejudices your rights or our rights with respect to such "claim".

**c.** In the event of a "computer attack" covered under Insuring Agreement **A** - Computer Attack, you must see that the following are done:

**(1)** Notify the police if a law may have been broken.

**(2)** Notify us as soon as practicable, but in no event more than 60 days after the "computer attack". Include a description of any property involved.

**(3)** As soon as possible, give us a description of how, when and where the "computer attack" occurred.

**(4)** As often as may be reasonably required, permit us to:

**(a)** Inspect the property proving the "computer attack";

**(b)** Examine your books, records, electronic media and records and hardware;

**(c)** Take samples of damaged and undamaged property for inspection, testing and analysis; and

**(d)** Make copies from your books, records, electronic media and records and hardware.

**(5)** Send us signed, sworn proof of loss containing the information we request to investigate the "computer attack". You must do this within 60 days after our request. We will supply you with the necessary forms.

**(6)** Cooperate with us in the investigation or settlement of the "computer attack".

**(7)** If you intend to continue your business, you must resume all or part of your operations as quickly as possible.

**(8)** Make no statement that will assume any obligation or admit any liability, for any "loss" for which we may be liable, without our prior written consent.

**(9)** Promptly send us any legal papers or notices received concerning the "computer attack" or "loss".

**d.** We may examine any "insured" under oath, while not in the presence of any other "insured" and at such times as may be reasonably required, about any matter relating to this insurance or the "claim" or "loss", including an "insured's" books and records. In the event of an examination, an "insured's" answers must be signed.

**e.** No "insured" may, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our prior written consent.

**4. Legal Action Against Us**

**a.** No person or organization has a right:

**(1)** To join us as a party or otherwise bring us into a suit asking for damages from an "insured"; or

**(2)** To sue us under this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000100

final judgment against an "insured"; but we will not be liable for damages that are not payable under this Coverage Part, or that are in excess of the applicable Aggregate Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the first "named insured" and the claimant or the claimant's legal representative.

**b.** You may not bring any legal action against us involving "loss":

**(1)** Unless you have complied with all the terms of this insurance;

**(2)** Until 90 days after you have filed proof of "loss" with us; and

**(3)** Unless brought within 2 years from the date you reported the "claim" or "loss" to us.

If any limitation in this condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

### 5. Liberalization

If, within 60 days prior to the beginning of this Coverage Part or during the "policy period", we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part at the latter of:

**a.** The date we implemented the change in your state; or

**b.** The date this Coverage Part became effective; and

will be considered as included until the end of the current "policy period". We will make no additional premium charge for this additional coverage during the interim.

### 6. Office of Foreign Assets Control (OFAC) Compliance

Whenever insurance coverage provided by this policy would be in violation of any United States economic or trade sanctions, such insurance coverage shall be null and void.

### 7. Other Insurance

**a.** If any covered "loss" is covered by any other valid policy, then this Coverage Part shall apply only in excess of the amount of any deductible, retention and limit of insurance under such other policy whether such other policy is stated to be primary, contributory, excess, contingent or otherwise, unless such other policy is written specifically excess of this Coverage Part

by reference in such other policy to this policy's policy number.

**b.** When this insurance is excess, we will have no duty to defend the "insured" against any "claim" if any other insurer has a duty to defend the "insured" against that "claim". But we will have the right to associate in the defense and control of any "claim" that we reasonably believe is likely to involve the insurance provided under this Coverage Part. If no other insurer defends, we will undertake to do so, but we will be entitled to the "insured's" rights against all those other insurers.

### 8. Representations

You represent that all information and statements contained in any application or questionnaire submitted in connection with this Coverage Part are true, accurate and complete. All such information and statements are the basis for our issuing this Coverage Part and shall be considered as incorporated into and shall constitute a part of this Coverage Part. Misrepresentation or omission of any material fact may be grounds for the rescission of this Coverage Part.

### 9. Separation of Insureds

Except with respect to the applicable Limit of Insurance, and any rights or duties specifically assigned in this Coverage Part or the policy to which it is attached, to the first "named insured", this insurance applies separately to each "insured" against whom "claim" is made.

### 10. Services

The following conditions apply as respects any services provided to you by any service firm provided or paid for in whole or in part under this Coverage Part:

**a.** The effectiveness of such services depends on your cooperation and assistance.

**b.** We do not warrant or guarantee that the services will end or eliminate all problems associated with the covered events.

### 11. Subrogation

With respect to any payment under this Coverage Part on behalf of any "insured", we shall be subrogated to the "insured's" rights of recovery to the extent of such payment. The "insured" shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable us to bring suit in the "insured's" name. Any recoveries, less the cost of obtaining them, will be distributed as follows:

HC 103 01 18     Includes copyrighted material of Insurance Services Office, Inc., with its permission.     Page 8 of 14

000101

**a.** To you, until you are reimbursed for any "loss" you sustain that exceeds the sum of the applicable Aggregate Limit of Insurance and the Deductible Amount, if any;

**b.** Then to us, until we are reimbursed for the payment under this Coverage Part;

**c.** Then to you, until you are reimbursed for that part of the payment equal to the Deductible Amount, if any.

**12. Valuation - Settlement**

All premiums, Limits of Insurance, Deductible Amounts, "loss" and any other monetary amounts under this Coverage Part are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is agreed to or another component of "loss" under this Coverage Part is expressed in any currency other than United States of America dollars, payment under this Coverage Part shall be made in United States dollars at the rate of exchange published in *The Wall Street Journal* on the date the final judgment is entered, settlement amount is agreed upon, or the other component of "loss" is due, respectively.

**13. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first "named insured" shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - EXTENDED REPORTING PERIODS**

The provisions contained within this Section apply only to Insuring Agreement **B** - Network Security and Electronic Media Liability.

**1.** You shall have the right to the Extended Reporting Periods described in this section, in the event that:

**a.** You or we cancel this Coverage Part;

**b.** You or we refuse to renew this Coverage Part; or

**c.** We renew this Coverage Part on other than a claims-made basis or with a retroactive date later than the Retroactive Date shown in the Declarations.

**2.** If an event as specified in Paragraph **1.** has occurred, you shall have the right to the following:

**a.** An Automatic Extended Reporting Period of 90 days after the effective date of cancellation or nonrenewal at no additional premium in which to give to us written notice of a "claim" of which you first receive notice during said Automatic Extended Reporting Period for any "wrongful act" occurring on or after the Retroactive Date shown in the Declarations and before the end of the "policy period" and which is otherwise covered by this Coverage Part; and

**b.** Upon payment of the additional premium stated in the Declarations, a Supplemental Extended Reporting Period for the term stated in the Supplemental Extended Reporting Period Endorsement will be provided immediately following the effective date of cancellation or nonrenewal in which to give to us written notice of a "claim" of which you first receive notice during said Supplemental Extended Reporting Period for any "wrongful act" occurring on or after the Retroactive Date shown in the Declarations and before the end of the "policy period" and which is otherwise covered by this Coverage Part.

To obtain the Supplemental Extended Reporting Period, you must request it in writing and pay the additional premium due, within 60 days of the effective date of cancellation or nonrenewal. The additional premium for the Supplemental Extended Reporting Period shall be fully earned at the inception of the Supplemental Extended Reporting Period. If we do not receive the written request as required, you may not exercise this right at a later date.

**c.** The Network Security and Electronic Media Liability Limit for the Extended Reporting Periods shall be part of, and not in addition to, the Network Security and Electronic Media Liability Limit for the immediately preceding "coverage term".

**SECTION VI - DEFINITIONS**

**1.** "Actual cash value" means replacement cost less a deduction that reflects depreciation, age, condition and obsolescence.

**2.** "Bodily injury" means bodily harm or injury**,** sickness, disease, disability, humiliation, shock, fright, mental anguish or mental injury, including care, loss of services or death resulting from any of these at any time.

**3.** "Business income loss" means the sum of the:

**a.** Net income (net profit or loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal and necessary operating expenses incurred, including "employee" and "executive" payroll,

actually lost by you during the "period of restoration".

4. "Claim":

    **a.** Means a civil proceeding against an "insured" in which damages are alleged arising from a "wrongful act" or a series of "interrelated" "wrongful acts" allegedly committed by an "insured", including any appeal therefrom.

    **b.** "Claim" includes:

        **(1)** An arbitration or alternative dispute resolution proceeding that the "insured" is required to submit to or does submit to with our consent; or

        **(2)** A written demand for money, when such demand could reasonably result in a civil proceeding as described in this definition.

    **c.** Does not include any demand or action brought by or on behalf of someone who is:

        **(1)** Your "executive";

        **(2)** Your owner or part-owner; or

        **(3)** A holder of your securities;

        in their capacity as such, whether directly, derivatively, or by class action.

5. "Computer attack" means one of the following involving the "computer system":

    **a.** An "unauthorized access incident";

    **b.** A "malware attack";

    **c.** A "denial of service attack" against a "computer system"; or

    **d.** A "cyber extortion threat".

6. "Computer system" means a computer or other electronic hardware that:

    **a.** Is owned or leased by you and operated under your control; or

    **b.** Is operated by a third party service provider and used for the purpose of providing hosted computer application services to you or for processing, maintaining, hosting or storing your electronic data, pursuant to a written contract with you for such services, but such computer or other electronic hardware operated by such third party shall only be considered to be a "computer system" with respect to the specific services provided by such third party to you under such contract.

7. "Coverage term" means the following individual increment, or if a multi-year "policy period",

increments, of time, which comprise the "policy period" of this Coverage Part:

    **a.** The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year "policy period", each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 AM standard time at your mailing address shown in the Declarations on the earlier of:

        **(1)** The day the "policy period" shown in the Declarations ends; or

        **(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

    **b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

8. "Coverage territory" means:

    **a.** With respect to Insuring Agreement **A** - Computer Attack:

        Anywhere in the world, but "loss" must involve a "computer system" within the United States (including its territories and possessions), Puerto Rico or Canada.

    **b.** With respect to Insuring Agreement **B** - Network Security and Electronic Media Liability:

        Anywhere in the world, however, "claims" must be brought in the United States (including its territories and possessions), Puerto Rico or Canada.

9. "Cyber extortion expenses" means:

    **a.** The cost of a negotiator or investigator retained by you in connection with a "cyber extortion threat"; and

    **b.** Any amount paid by you in response to a "cyber extortion threat" to the party that made the "cyber extortion threat" for the purposes of eliminating the "cyber extortion threat";

    when such expenses are necessary and reasonable and arise directly from a "cyber extortion threat". The payment of "cyber extortion expenses" must be approved in advance by us. We will not pay for "cyber extortion expenses" that have not been approved in ad-

vance by us. We will not unreasonably withhold our approval.

10. "Cyber extortion threat" means a demand for money from you based on a credible threat, or series of related credible threats, to:

   **a.** Launch a "denial of service attack" against the "computer system";

   **b.** Gain access to a "computer system" and use that access to steal, release or publish "personally identifying information", "personally sensitive information" or "third party corporate data";

   **c.** Alter, damage or destroy electronic data or software while such electronic data or software is stored within a "computer system";

   **d.** Launch a "computer attack" against a "computer system" in order to alter, damage or destroy electronic data or software while such electronic data or software is stored within a "computer system";

   **e.** Cause the "insured" to transfer, pay or deliver any funds or property using a "computer system" without your authorization; or

   **f.** Inflict "ransomware" on a "computer system".

   "Cyber extortion threat" does not include any threat made in connection with a legitimate commercial dispute.

11. "Data re-creation costs":

   **a.** "Data re-creation costs" means the costs of an outside professional firm hired by you to research, re-create and replace data that has been lost or corrupted and for which there is no electronic source available or where the electronic source does not have the same or similar functionality to the data that has been lost or corrupted.

   **b.** "Data re-creation costs" also means your actual "business income loss" and your necessary and reasonable "extra expenses" arising from the lack of the lost or corrupted data during the time required to research, re-create and replace such data.

   **c.** "Data re-creation costs" does not mean costs to research, re-create or replace:

      **(1)** Software programs or operating systems that are not commercially available; or

      **(2)** Data that is obsolete, unnecessary or useless to you.

12. "Data restoration costs":

   **a.** Means the costs of an outside professional firm hired by you to replace electronic data that has been lost or corrupted. In order to be considered "data restoration costs", such replacement must be from one or more electronic sources with the same or similar functionality to the data that has been lost or corrupted.

   **b.** Does not include costs to research, restore or replace:

      **(1)** Software programs or operating systems that are not commercially available; or

      **(2)** Data that is obsolete, unnecessary or useless to you.

13. "Defense costs":

   **a.** Means reasonable and necessary expenses resulting solely from the investigation, defense and appeal of any "claim" against an "insured". Such expenses may be incurred by us. Such expenses may include premiums for any appeal bond, attachment bond or similar bond. However, we have no obligation to apply for or furnish such bond.

   **b.** Does not include the salaries or wages of your "employees" or "executives", or your loss of earnings.

14. "Denial of service attack" means an intentional attack against a target computer or network of computers designed to overwhelm the capacity of the target computer or network in order to deny or impede authorized users from gaining access to the target computer or network through the internet.

15. "Electronic media incident" means the display of information in electronic form by you on a website or in an "insured's" email that resulted in an allegation of:

   **a.** Infringement of another's copyright, title, slogan, trademark, trade name, trade dress, service mark or service name;

   **b.** Defamation against a person or organization that is unintended;

   **c.** A violation of a person's right of privacy, including false light and public disclosure of private facts; or

   **d.** Interference with a person's right of publicity.

**16.** "Employee" means any natural person, other than an "executive", who was, now is or will be:

   **a.** Employed on a full- or part-time basis by you;

   **b.** Furnished temporarily to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions;

   **c.** Leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph **b.**; or

   **d.** Your volunteer worker, which includes unpaid interns.

**17.** "Executive" means any natural person who was, now is or will be:

   **a.** The owner of a sole proprietorship that is a "named insured"; or

   **b.** A duly elected or appointed:

     **(1)** Director;

     **(2)** Officer;

     **(3)** Managing Partner;

     **(4)** General Partner;

     **(5)** Member (if a limited liability company);

     **(6)** Manager (if a limited liability company); or

     **(7)** Trustee,

     of a "named insured".

**18.** "Extra expense" means the additional cost you incur to operate your business during the "period of restoration" over and above the cost that you normally would have incurred to operate your business during the same period had no "computer attack" occurred.

**19.** "Insured" means:

   **a.** With respect to Insuring Agreement **A** - Computer Attack any "named insured".

   **b.** With respect to Insuring Agreement **B** - Network Security and Electronic Media Liability:

     **(1)** Any "named insured"; and

     **(2)** Any "employee" or "executive" of a "named insured", but:

       **(a)** Only for the conduct of the "named insured's" business within the scope of his or her employment or duties as an "executive"; and

       **(b)** Such "employee" or "executive" shall not be an "insured" to the extent his or her actions or omissions are criminal, fraudulent, dishonest or constitute an intentional or knowing violation of the law.

**20.** "Interrelated" means all events or incidents that have as a common nexus any:

   **a.** Fact, circumstance, situation, event, transaction, cause; or

   **b.** Series of causally connected facts, circumstances, situations, events, transactions or causes.

**21.** "Loss" means:

   **a.** With respect to Insuring Agreement **A** - Computer Attack:

     Those expenses enumerated in Section **I**, **A.**, Paragraph **1.b.**

   **b.** With respect to Insuring Agreement **B** - Network Security and Electronic Media Liability:

     **(1)** "Defense costs"; and

     **(2)** "Settlement costs".

**22.** "Malware attack" means an attack that damages a "computer system" or data contained therein arising from malicious code, including viruses, worms, Trojans, spyware and keyloggers. This does not mean damage from shortcomings or mistakes in legitimate electronic code or damage from code installed on your "computer system" during the manufacturing process or normal maintenance.

**23.** "Named insured" means the entity or entities shown in the Declarations as a Named Insured.

**24.** "Network security incident" means a negligent security failure or weakness with respect to a "computer system" which allowed one or more of the following to happen:

   **a.** The unintended propagation or forwarding of malware, including viruses, worms, Trojans, spyware and keyloggers. Malware does not include shortcomings or mistakes in legitimate electronic code.

   **b.** The unintended abetting of a "denial of service attack" against one or more other systems.

   **c.** The unintended loss, release or disclosure of "third party corporate data".

**HC 103 01 18**    Includes copyrighted material of Insurance Services Office, Inc., with its permission.    **Page 12 of 14**

000105

**25.** "Period of restoration" means the period of time that begins at the time that the "computer attack" is discovered by you and continues until the earlier of:

    **a.** The date that all data restoration, data re-creation and system restoration directly related to the "computer attack" has been completed; or

    **b.** The date on which such data restoration, data re-creation and system restoration could have been completed with the exercise of due diligence and dispatch.

**26.** "Personally identifying information" means information, including health information, that could be used to commit fraud or other illegal activity involving the credit, access to health care or identity of an individual. This includes, but is not limited to, Social Security numbers or account numbers.

"Personally identifying information" does not mean or include information that is otherwise available to the public, such as names and addresses.

**27.** "Personally sensitive information" means private information specific to an individual the release of which requires notification of affected individuals under any applicable law.

"Personally sensitive information" does not mean or include "personally identifying information".

**28.** "Policy period" means the cumulative total of each individual "coverage term" comprising the period of time from the inception date of this Coverage Part shown in the Declarations to the expiration date shown in the Declarations, or its earlier cancellation or termination date.

**29.** "Property damage" means:

    **a.** Physical injury to or destruction of tangible property including all resulting loss of use; or

    **b.** Loss of use of tangible property that is not physically injured.

**30.** "Ransomware" means any software that is used to demand a ransom payment by:

    **a.** Restricting access to a "computer system"; or

    **b.** Encrypting data held within a "computer system".

**31.** "Settlement costs":

    **a.** Means the following, when they arise from a "claim":

        **(1)** Damages (including punitive and exemplary damages and the multiple portion of any multiplied damage award), judgments or settlements;

        **(2)** Attorney's fees and other litigation costs added to that part of any judgment paid by us, when such fees and costs are awarded by law or court order; and

        **(3)** Pre-judgment interest on that part of any judgment paid by us.

    **b.** Does not include:

        **(1)** Civil or criminal fines or penalties imposed by law;

        **(2)** Taxes; or

        **(3)** Matters which may be deemed uninsurable under the applicable law.

    **c.** With respect to punitive, exemplary and multiplied damages, the law of the jurisdiction most favorable to the insurability of those fines, penalties or damages shall control for the purpose of resolving any dispute between us and any "insured" regarding whether the fines, penalties or damages specified in this definition above are insurable under this Coverage Part, provided that such jurisdiction:

        **(1)** Is where those fines, penalties or damages were awarded or imposed;

        **(2)** Is where any "personal data compromise" took place for which such fines, penalties or damages were awarded or imposed;

        **(3)** Is where you are incorporated or you have your principal place of business; or

        **(4)** Is where we are incorporated or have our principal place of business.

**32.** "System restoration costs":

    **a.** Means the costs of an outside professional firm hired by you to do any of the following in order to restore your "computer system" to its pre- "computer attack" level of functionality:

        **(1)** Replace or reinstall computer software programs;

        **(2)** Remove any malicious code; and

        **(3)** Configure or correct the configuration of your "computer system".

    **b.** Does not include:

        **(1)** Costs to increase the speed, capacity or utility of your "computer system";

**HC 103 01 18**          Includes copyrighted material of Insurance Services Office, Inc., with its permission.          **Page 13 of 14**

000106

(2) Labor of your "employees" or "executives";

(3) Any costs in excess of the "actual cash value" of your "computer system"; or

(4) Costs to repair or replace hardware.

33. "Third party corporate data" means any trade secret, data, design, interpretation, forecast, formula, method, practice, credit or debit card magnetic strip information, process, record, report or other item of information of a third party not an "insured" under this Coverage Part which is not available to the general public and is provided to the "named insured" subject to a mutually executed written confidentiality agreement or which the "named insured" is legally required to maintain in confidence; however, "third party corporate data" shall not include "personally identifiable information" or "personally sensitive information".

34. "Unauthorized access incident" means the gaining of access to a "computer system" by:

a. An unauthorized person or persons; or

b. An authorized person or persons for unauthorized purposes.

35. "Wrongful act" means:

a. An "electronic media incident"; or

b. A "network security incident".

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
000107

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ALABAMA CHANGES - LEGAL
# ACTION AGAINST US

This endorsement modifies insurance provided under the following:

**CINCINNATI CYBER DEFENSE™ COVERAGE PART**
**CINCINNATI DATA DEFENDER™ COVERAGE PART**
**CINCINNATI NETWORK DEFENDER™ COVERAGE PART**

Paragraph **b.** of the Legal Action Against Us Condition is deleted in its entirety and replaced by the following:

**b.** You may not bring any legal action against us involving "loss":

    **(1)** Unless you have complied with all the terms of this insurance; and

    **(2)** Unless the action is brought within the time limitations prescribed by Alabama law.

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.
000108



# THE CINCINNATI CASUALTY COMPANY
### A Stock Insurance Company

**Headquarters:** 6200 S. Gilmore Road, Fairfield, OH 45014-5141
**Mailing address:** P.O. Box 145496, Cincinnati, OH 45250-5496
*www.cinfin.com* ■ 513-870-2000

## LIABILITY PREMIUM ADJUSTMENT STATEMENT

POLICY NO.: ENP0460530

INSURED: LUCIDA CONSTRUCTION CO LLC

AGENT: 01113 - Cobbs Allen

| POLICY PERIOD | PREMIUM BASIS | ADDITIONAL PREMIUMS ARE DUE |
|---|---|---|
| From 10/17/2018 to 11/01/2019 | A. Area | UPON PRESENTATION OF STATEMENT |
| TERM OF AUDIT | P. Payroll / S. Sales | *** DIRECT BILL *** |
| From 11/01/2018 to 11/01/2019 | C. Cost / O. Each/Other | |

| CLASS CODE NUMBER | CLASSIFICATION | | | RATES Prod/Comp. | RATES All Other | DEPOSIT PREMIUM Prod/Comp. | DEPOSIT PREMIUM All Other | EARNED PREMIUM Prod/Comp. | EARNED PREMIUM All Other | DIFFERENCE Prod/Comp. | DIFFERENCE All Other |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 29923 AL | Automatic Additional Insured | O | 4,504 | 0 | 0.035 | 0 | 454 | 0 | 158 | 0 | (296) |
| 91342 AL | CARPENTRY-NOC | P | 20,466 | 8.553 | 10.674 | 0 | 0 | 175 | 218 | 175 | 218 |
| 91560 AL | CONCRETE CONSTRUCTION | P | 4,500 | 7.015 | 14.231 | 0 | 0 | 32 | 64 | 32 | 64 |
| 91580 AL | EXECUTIVE SUPERVISOR | P | 132,900 | 0 | 17.037 | 0 | 6,389 | 0 | 2,264 | 0 | (4,125) |
| 91585 AL | SUBCONTRACTORS-NOC | C | 736,870 | 0.874 | 1.502 | 2,423 | 4,164 | 644 | 1,107 | (1,779) | (3,057) |
| 20410 AL | B.I. EXCEPTIONS TO POLLUTANT EXCLUSIONS | O | 3,653 | 0 | 0.02 | 0 | 211 | 0 | 73 | 0 | (138) |
| 29975 AL | CONTRACTORS BROADENED COVERAGE | O | 4,504 | 0 | 0.035 | 0 | 454 | 0 | 158 | 0 | (296) |

|  |  |  |
|---|---|---|
| Total Earned Premium: | $851 | $4,042 |
| Deposit Premium: | $2,423 | $11,672 |
| Additional/Return Premium: | ($1,572) | ($7,630) |
| Net Refund Due: | ($9,202) | |

Prepared by:   RNEWTON   2/11/2020

**IA 405 03 94**

# THE
# CINCINNATI INSURANCE COMPANIES

☐ **THE CINCINNATI INSURANCE COMPANY** ☐ **THE CINCINNATI INDEMNITY COMPANY**
☒ **THE CINCINNATI CASUALTY COMPANY**

**Named Insured:** LUCIDA CONSTRUCTION CO LLC

**Policy Number:** ENP 046 05 30 / EBA 046 05 30

**Policy Period:** 10-17-2018 to 11-01-2019

**Effective Date of Change:** 09-09-2019

**Endorsement Number:** 9

**Agency Name:** COBBS ALLEN 01-113
MOUNTAIN BROOK, AL

### Explanation of Billing

A change was recently made to your policy with The Cincinnati Insurance Companies. Attached to this summary is the endorsement that amends your policy.

**The additional premium for this endorsement is $** NONE
This premium is for the time period of 09-09-2019 to 11-01-2019. You will receive a statement based on the payment option you have selected.

Please contact your agency if you have any questions concerning your policy or statement:
COBBS ALLEN
115 OFFICE PARK DR STE 200
MOUNTAIN BROOK, AL 35223-2423

205-414-8100

### This is not a bill. No payment is necessary at this time.

**IA 4319 08 07**

000110

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GENERAL CHANGE ENDORSEMENT

Attached to and forming part of:

| | | |
|---|---|---|
| Auto / Garage<br>Policy Number **EBA 046 05 30** | All Other<br>Policy Number **ENP 046 05 30** | Effective Date<br>of Endorsement **09-09-2019** |

Issued to  **LUCIDA CONSTRUCTION CO LLC**

Agent **COBBS ALLEN 01-113**

      **MOUNTAIN BROOK, AL**                       Endorsement # **9**

---

## PREMIUM INFORMATION

Premium Due at Endorsement Effective Date **REFER TO IA4319** _____

Subsequent Monthly Installments Increased by       $ _____

Revised Monthly Installment Payment(s)          $ _____

---

**It is agreed that the policy is amended as indicated by**    ☒

- ☐ **Policy Installment Premium Amended to:**
  - ☐ Annual     ☐ Semi-Annual     ☐ Quarterly
- ☒ **Named Insured**

  **LUCIDA CONSTRUCTION CO LLC**
  **REFER TO IA905**

- ☐ **Mailing Address**




- ☒ **Form(s) Added**

  **IA905 02/98**       **NAMED INSURED SCHEDULE**
- ☐ **Form(s) Deleted**

---

**All Other Reason for Change**

---

**Auto / Garage Reason for Change**

---

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NAMED INSURED SCHEDULE

This Schedule supplements the Declarations.

**SCHEDULE**

Named Insured:

```
LUCIDA CONSTRUCTION CO LLC
LUCIDA RENTALS, LLC
```

**IA 905 02 98**

# THE
# CINCINNATI INSURANCE COMPANIES

☐ THE CINCINNATI INSURANCE COMPANY  ☐ THE CINCINNATI INDEMNITY COMPANY
☒ THE CINCINNATI CASUALTY COMPANY

**Named Insured:**   LUCIDA CONSTRUCTION CO LLC

**Policy Number:**   ENP 046 05 30 / EBA 046 05 30

**Policy Period:**   10-17-2018 to 11-01-2019

**Effective Date of Change:**   01-09-2019

**Endorsement Number:**   5

**Agency Name:**   COBBS ALLEN 01-113
MOUNTAIN BROOK, AL

### Explanation of Billing

A change was recently made to your policy with The Cincinnati Insurance Companies.  Attached to this summary is the endorsement that amends your policy.

**The additional premium for this endorsement is $**   NONE
This premium   is for the time period of   01-09-2019   to   11-01-2019. You will receive a statement based on the payment option you have selected.

Please contact your agency if you have any questions concerning your policy or statement:
COBBS ALLEN
115 OFFICE PARK DR STE 200
MOUNTAIN BROOK, AL 35223-2423

205-414-8100

### This is not a bill. No payment is necessary at this time.

**IA 4319 08 07**

000113

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GENERAL CHANGE ENDORSEMENT

Attached to and forming part of:

| | | |
|---|---|---|
| Auto / Garage | All Other | Effective Date |
| Policy Number  EBA 046 05 30 | Policy Number  ENP 046 05 30 | of Endorsement  01-09-2019 |

Issued to  LUCIDA CONSTRUCTION CO LLC

Agent COBBS ALLEN 01-113

     MOUNTAIN BROOK, AL                                  Endorsement #  5

---

**PREMIUM INFORMATION**

Premium Due at Endorsement Effective Date **REFER TO IA4319** _____

Subsequent Monthly Installments Increased by     $ _____

Revised Monthly Installment Payment(s)     $ _____

**It is agreed that the policy is amended as indicated by**   [X]

☐ **Policy Installment Premium Amended to:**
    ☐ Annual     ☐ Semi-Annual     ☐ Quarterly

☐ **Named Insured**


☐ **Mailing Address**



☐ **Form(s) Added**


☐ **Form(s) Deleted**

---

**All Other Reason for Change**

REINSTATING POLICY

---

**Auto / Garage Reason for Change**

---

01-10-2019 07:42

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY REINSTATEMENT

Attached to and forming part of Policy Number  ENP 046 05 30 / EBA 046 05 30

Issued to  LUCIDA CONSTRUCTION CO LLC

Effective Date 01-09-2019

This endorsement modifies insurance provided under the following:

**BUSINESSOWNERS PACKAGE POLICY**
**CLAIMS-MADE EXCESS LIABILITY COVERAGE PART**
**COMMERCIAL AUTO COVERAGE PART**
**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**COMMERCIAL INLAND MARINE COVERAGE PART**
**COMMERCIAL OUTPUT POLICY**
**COMMERCIAL PROPERTY COVERAGE PART**
**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
**CRIME AND FIDELITY COVERAGE PART**
**DENTIST'S PACKAGE POLICY**
**EXCESS LIABILITY COVERAGE PART**
**FARM COVERAGE PART**
**LIQUOR LIABILITY COVERAGE PART**
**MACHINERY AND EQUIPMENT COVERAGE PART**
**POLLUTION LIABILITY COVERAGE PART**
**PRODUCTS / COMPLETED OPERATIONS LIABILITY COVERAGE PART**
**PROFESSIONAL LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**

The Direct Notice of Cancellation which was to be effective  01-09-2019   is declared null and void and coverage is reinstated with no lapse in coverage.

Additional Premium $ SEE BILLING STATEMENT
                             MAILED SEPARATELY

_____  Agent

COBBS ALLEN 01-113
MOUNTAIN BROOK, AL

**IA 475 08 07**

# THE CINCINNATI INSURANCE COMPANIES

TO      COBBS ALLEN 01-113
         MOUNTAIN BROOK, AL

INSURED LUCIDA CONSTRUCTION CO LLC

AGENCY CODE: 01-113 POLICY NO. ENP 046 05 30 / EBA 046 05 30 _____ (MOD) ___ DATE: 01-09-2019

TRANSACTION # 4

| Company Use Only |
| --- |
| IR   IN   UN |
| NP   OT |

## CANCELLATION CREDIT MEMO

☐    CORRECTED

☐   FLAT
☐   PRO RATA

EFFECTIVE DATE
OF CANCELLATION 01-09-2019 _____

### RETURN PREMIUMS:

CAP _____     BOILER _____

CPP _____     UMBRELLA _____

AUTO _____     OTHER _____

AUDIT-AP/RP _____     DIRECT BILL POLICY - REFER TO CINCIBILL

(circle one)

## TOTAL RETURN / ADDITIONAL PREMIUM DUE NOW $ _____

## (SUBSEQUENT INSTALLMENTS, IF ANY, ARE VOID)

**CANCELLATION CALCULATION:**

☐    REPORTER AUDITABLE FIGURES ARE SUBTRACTED FROM THE CAP / CPP LINE.

☐    GENERAL LIABILITY AUDIT HAS BEEN WAIVED.

☐    GL AUDITABLE FIGURES ARE SUBTRACTED FROM THE CAP / CPP LINE.

☐    PREMIUMS AS STATED ABOVE ARE IN AGREEMENT WITH YOUR CALCULATIONS.

☐    AS YOU HAVE NOT CALCULATED A RETURN PREMIUM, OUR FIGURES WILL APPEAR IN OUR ACCOUNT CURRENT.

☐    WE NOTE THAT OUR FIGURES DO NOT AGREE WITH YOURS. PLEASE CHECK OUR CALCULATIONS AGAINST YOURS AND ADVISE IF YOU STILL DO NOT AGREE.

COMMERCIAL LINES DEPARTMENT

01-09-2019 00:59

**MI-1356DB (6/09)**

000116

# THE
# CINCINNATI INSURANCE COMPANIES

☐ THE CINCINNATI INSURANCE COMPANY ☐ THE CINCINNATI INDEMNITY COMPANY
☒ THE CINCINNATI CASUALTY COMPANY

**Named Insured:** LUCIDA CONSTRUCTION CO LLC

**Policy Number:** ENP 046 05 30 / EBA 046 05 30

**Policy Period:** 10-17-2018 to 11-01-2019

**Effective Date of Change:** 11-26-2018

**Endorsement Number:** 3

**Agency Name:** COBBS ALLEN 01-113
MOUNTAIN BROOK, AL

### Explanation of Billing

A change was recently made to your policy with The Cincinnati Insurance Companies. Attached to this summary is the endorsement that amends your policy.

**The return premium (credit) for this endorsement is $**19,136
This credit is for the time period of 11-26-2018 to 11-01-2019. You will receive a statement based on the payment option you have selected.

Please contact your agency if you have any questions concerning your policy or statement:
COBBS ALLEN
115 OFFICE PARK DR STE 200
MOUNTAIN BROOK, AL 35223-2423

205-414-8100

### This is not a bill. No payment is necessary at this time.

IA 4319 08 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GENERAL CHANGE ENDORSEMENT

Attached to and forming part of:

| Auto / Garage Policy Number | EBA 046 05 30 | All Other Policy Number | ENP 046 05 30 | Effective Date of Endorsement | 11-26-2018 |
|---|---|---|---|---|---|

Issued to   LUCIDA CONSTRUCTION CO LLC

Agent COBBS ALLEN 01-113
      MOUNTAIN BROOK, AL

Endorsement #   3

---

## PREMIUM INFORMATION

**Return** Premium Due at Endorsement Effective Date     <u>REFER TO IA4319</u>

Subsequent Monthly Installments Decreased by     $ _____

Revised Monthly Installment Payment(s)     $ _____

---

**It is agreed that the policy is amended as indicated by**   ☒

☐ **Policy Installment Premium Amended to:**
    ☐ Annual    ☐ Semi-Annual    ☐ Quarterly

☐ **Named Insured**

☐ **Mailing Address**

☐ **Form(s) Added**

☒ **Form(s) Deleted**

| | |
|---|---|
| USQ513 05/10 | COMMERCIAL UMBRELLA LIABILITY COVERAGE PART DECLARATIONS |
| US101UM 12/04 | COMMERCIAL UMBRELLA - TABLE OF CONTENTS |
| US3010 09/17 | CONTRACTORS LIMITATIONS - INCLUDING EXCESS WRAP-UP COVERAGE |
| US302 12/04 | POLLUTANT EXCLUSION - OTHER THAN AUTO |
| US3043 09/17 | EXCLUSION - EXTERIOR INSULATION AND FINISH SYSTEMS ("EIFS") AND DIRECT-APPLIED EXTERIOR FINISH SYSTEMS ("DEFS") - BROAD FORM WITH SPECIFIED EXCEPTIONS |
| US3048 12/04 | FUNGI OR BACTERIA EXCLUSION |
| US3093 05/14 | EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION |
| US4062 11/05 | MOBILE EQUIPMENT SUBJECT TO MOTOR VEHICLE INSURANCE LAWS - LIMITATION |
| US407 12/04 | EMPLOYEE BENEFIT LIABILITY |

---

**All Other Reason for Change**

AMENDING GA532 LIMITS PER REVISED ATTACHED

DELETING UMBRELLA COVERAGE

**Auto / Garage Reason for Change**

# THE CINCINNATI CASUALTY COMPANY

### A Stock Insurance Company

## COMMERCIAL GENERAL LIABILITY COVERAGE
## PART DECLARATIONS

Attached to and forming part of POLICY NUMBER: ENP 046 05 30

Named Insured is the same as it appears in the Common Policy Declarations

### LIMITS OF INSURANCE

| | | |
|---|---|---|
| EACH OCCURRENCE LIMIT | $1,000,000 | |
| GENERAL AGGREGATE LIMIT | $2,000,000 | |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $2,000,000 | |
| PERSONAL & ADVERTISING INJURY LIMIT | $1,000,000 | ANY ONE PERSON OR ORGANIZATION |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | | ANY ONE |
| $100,000 limit unless otherwise indicated herein: | $ SEE GA233 | PREMISES |
| MEDICAL EXPENSE LIMIT | | |
| $5,000 limit unless otherwise indicated herein: | $ SEE GA233 | ANY ONE PERSON |

| CLASSIFICATION | CODE NO. | PREMIUM BASE | RATE | | ADVANCE PREMIUM | |
|---|---|---|---|---|---|---|
| | | A - Area<br>B - Payroll<br>C - Gross Sales<br>D - Units<br>E - Other | Products / Completed Operations | All Other | Products / Completed Operations | All Other |
| CONTRACTORS - EXECUTIVE SUPERVISOR (AL) INCL PROD AND/OR COMP OP | 91580 | B 375,000 | | 17.037 | | 6,389 |
| CONTRACTORS - SUBCONTRACTED WORK (AL) | 91585 | E 2,500,000 TOTAL COST | .874 | 1.502 | 2,185 | 3,755 |
| BI EXCEPTIONS TO POLLUTANT EXCLUSION | 20410 | | | 2% | | 203 |
| AUTOMATIC ADD. INSURED - CONTRACTORS OPERATIONS | 29923 | | | 3.5% | | 432 |
| CONTRACTORS BROADENED COVERAGE | 29975 | | | 3.5% | | 432 |

The General Liability Coverage Part is subject to an annual minimum premium.

TOTAL ANNUAL PREMIUM   $13,396

### FORMS AND / OR ENDORSEMENTS APPLICABLE TO COMMERCIAL GENERAL LIABILITY COVERAGE PART:

| | | |
|---|---|---|
| GA101 | 12/04 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| CG0300 | 01/96 | DEDUCTIBLE LIABILITY INSURANCE |
| CG2279 | 04/13 | EXCLUSION - CONTRACTORS - PROFESSIONAL LIABILITY |
| GA233 | 09/17 | CONTRACTORS' COMMERCIAL GENERAL LIABILITY BROADENED ENDORSEMENT |
| GA3024 | 05/14 | EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION |
| GA346 | 09/17 | EXCLUSION - EXTERIOR INSULATION AND FINISH SYSTEMS ("EIFS") AND DIRECT-APPLIED EXTERIOR FINISH SYSTEMS ("DEFS") - BROAD FORM WITH SPECIFIED EXCEPTIONS |
| GA382 | 03/02 | FUNGI OR BACTERIA EXCLUSION |
| GA4250 | 11/05 | MOBILE EQUIPMENT SUBJECT TO MOTOR VEHICLE INSURANCE LAWS |

**FORMS AND / OR ENDORSEMENTS APPLICABLE TO COMMERCIAL GENERAL LIABILITY COVERAGE PART:**

| | | |
|---|---|---|
| GA472 | 09/17 | CONTRACTORS ADDITIONAL INSURED - AUTOMATIC STATUS WHEN REQUIRED IN WRITTEN CONTRACT, AGREEMENT, PERMIT OR AUTHORIZATION |
| GA478 | 12/04 | BODILY INJURY EXCEPTIONS TO POLLUTANT EXCLUSION |

# THE
# CINCINNATI INSURANCE COMPANIES

☐ THE CINCINNATI INSURANCE COMPANY   ☐ THE CINCINNATI INDEMNITY COMPANY
☒ THE CINCINNATI CASUALTY COMPANY

**Named Insured:**    LUCIDA CONSTRUCTION CO LLC

**Policy Number:**    ENP 046 05 30 / EBA 046 05 30

**Policy Period:**    10-17-2018 to 11-01-2019

**Effective Date of Change:**    11-21-2018

**Endorsement Number:**    2

**Agency Name:**    COBBS ALLEN 01-113
                       MOUNTAIN BROOK, AL

## Explanation of Billing

A change was recently made to your policy with The Cincinnati Insurance Companies. Attached to this summary is the endorsement that amends your policy.

**The additional premium for this endorsement is $**    NONE
This premium is for the time period of   11-21-2018   to   11-01-2019. You will receive a statement based on the payment option you have selected.

Please contact your agency if you have any questions concerning your policy or statement:
COBBS ALLEN
115 OFFICE PARK DR STE 200
MOUNTAIN BROOK, AL 35223-2423

205-414-8100

## This is not a bill. No payment is necessary at this time.

IA 4319 08 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GENERAL CHANGE ENDORSEMENT

Attached to and forming part of:

| | | |
|---|---|---|
| Auto / Garage<br>Policy Number  EBA 046 05 30 | All Other<br>Policy Number  ENP 046 05 30 | Effective Date<br>of Endorsement  11-21-2018 |

Issued to  LUCIDA CONSTRUCTION CO LLC

Agent COBBS ALLEN 01-113
     MOUNTAIN BROOK, AL

Endorsement #  2

---

**PREMIUM INFORMATION**

---

Premium Due at Endorsement Effective Date **REFER TO IA4319**  _____

Subsequent Monthly Installments Increased by      $ _____

Revised Monthly Installment Payment(s)      $ _____

---

**It is agreed that the policy is amended as indicated by**    ☒

☐ **Policy Installment Premium Amended to:**
    ☐ Annual     ☐ Semi-Annual     ☐ Quarterly

☐ **Named Insured**


☒ **Mailing Address**
    PO BOX 230607
    MONTGOMERY, AL 36123-0607


☐ **Form(s) Added**


☐ **Form(s) Deleted**

---

**All Other Reason for Change**

---

**Auto / Garage Reason for Change**

---



**The Cincinnati Insurance Company**
**The Cincinnati Casualty Company**
**The Cincinnati Indemnity Company**

**Policy Number:** ENP 046 05 30

**Effective Date:** 10-17-2018

**Named Insured:** LUCIDA CONSTRUCTION CO LLC

For professional advice and policy questions or changes, please contact your local independent agency:

COBBS ALLEN
115 OFFICE PARK DR STE 200
MOUNTAIN BROOK, AL 35223-2423

205-414-8100

Dear Policyholder:

**Thank you**
Thank you for trusting The Cincinnati Insurance Companies with your commercial insurance coverage. We recognize that locally based independent agents have the working knowledge to help you choose the right insurance company for your needs. Together with your local independent insurance agency, we are committed to providing you with the highest level of service.

Please review your enclosed policy information to verify your coverage details, as well as deductibles and coverage amounts. Should your needs change, your agent is available to review and update your policy.

**Please promptly report claims**
If you experience a policy-related loss, you may report it by contacting your local professional independent agency representing The Cincinnati Insurance Companies or by directly calling us toll-free at **877-242-2544** and providing your policy number and claim-related information.

Sincerely,

Steve Spray
Senior Vice President - Commercial Lines

**IA 4443 04 14**



## Notice to Policyholders – Cincinnati Data Defender™
Data privacy management services and resources added to your insurance policy

To: LUCIDA CONSTRUCTION CO LLC

Policy Number: ENP 046 05 30
Expiration Date: 11-01-2019
Agency: COBBS ALLEN 01-113

Your policy includes Cincinnati Data Defender coverage for an additional premium. This data privacy exposure coverage helps safeguard your business against the potentially costly risk of a data breach and assists you in the event of identity theft. Please save this information so you can access all the tools and resources that come with your cyber protection coverage. Refer to Cincinnati Data Defender Coverage Form, HC102, for a complete statement of coverages, exclusions and limits of insurance.

### Policyholder tools and resources
*Cyber risk management portal* – For your convenience, Cincinnati policyholders who purchase Data Defender coverage gain access to *www.eriskhub.com/cic*, a portal that provides you with the comprehensive, on-demand resources you need to:
- Create your breach response plan from the template
- Learn about breach laws that apply to your business
- Use the compliance reference guide and notification letter examples
- Locate credit bureau and government agency notification information
- Learn how to contact data risk management experts for more help

The first time you visit eRiskHub, please complete new user registration using this information:

### Access code = 12116-868

*Identity theft services* – This coverage also includes case management services and reimbursement for covered expenses if you, as a business owner, become the victim of identity theft or account takeover. If you suspect that you may be an identity theft victim or you have questions, please call our Identity Recovery Help Line, 866-219-9831.

### Claims services
If you suspect or know that a data breach may have exposed or compromised your organization's private, customer or personal data, a swift response is critical for your protection. Please note that the cyber risk management portal and help line provide advice and information, and using them does not satisfy any notice of claim requirement. The only way to report a claim is to contact your independent agent or call us directly, 877-242-2544. Your agent and Cincinnati will work with you to help preserve your company's goodwill, prevent regulatory sanctions or fines, avoid civil litigation and safeguard your business reputation.

**IA4465 (1/18)**



While we believe this is valuable coverage to have in today's world, you may have it removed from your policy by notifying your agent.

**Additional cyberattack coverage**

To round out your cyber risk liability insurance, consider adding Cincinnati Network Defender™ coverage for the computer systems and data that are integral to your business. This valuable protection pays the covered costs associated with restoring computer software and recovering data following a cyberattack. It also protects you against third-party liabilities you may incur as a result of your computer system's security failure. Please see the enclosed brochure for details.

You can purchase Cincinnati Network Defender with a coverage limit of $50,000 for an annual premium of $<u>187</u>. Please contact your independent agent representing Cincinnati to add this coverage to your policy or to request quotes for higher coverage limits. This quote is valid for sixty (60) days from the date of this notice.

Thank you for trusting your agent and Cincinnati to protect your business.

Enclosure: Cincinnati Network Defender brochure, Adv. 715

**IA4465 (1/18)**

Date: 10-18-2018

Insured: LUCIDA CONSTRUCTION CO LLC

Policy Number: ENP 046 05 30 / EBA 046 05 30

Dear Agent:

The captioned policy has been issued with the following additional liability exclusion(s)/conditions(s):

- [x] **Exterior Insulation and Finish Systems (EIFS) and Direct Applied Exterior Finish Systems (DEFS) Liability Exclusion**
- [x] **Fungi or Bacteria Liability Exclusion**
- [x] **Bodily Injury and /or Property Damage Deductible**
- [ ] **Lead Liability Exclusion**
- [ ] **Bodily Injury and/or Property Damage Fungi or Bacteria Deductible**

Please be sure that the insured understands the above.

Cordially,

Commercial Lines Department

**MI 1603 10 03**

# NOTICE TO POLICYHOLDERS
# DIRECT BILL ACCOUNT CREDIT PROCEDURE

This is a notice of how an account credit will be applied to your policy or to all of the policies being billed as single account.

**Account Credits**

**A.** If your account is comprised of **a single policy** and an endorsement or premium audit results in a credit (return premium), the credit is applied to that policy. If your account does not have a future installment due at the time the endorsement or audit is processed, the credit is refunded to the payor listed for your account. If you do not wish for credits to be automatically applied to future unpaid installments, please contact us to request a refund. Please note that the amount of the refund may vary based upon the date you contact us and your billing schedule.

**B.** If your account is comprised of **more than one policy** and an endorsement or premium audit results in a credit (return premium), the credit is applied in the following manner:

- Payments previously applied to your account are deferred.

- The credit that results from the endorsement or audit is applied to the policy generating the credit.

- The payments that were deferred are then reapplied to the account in order to satisfy the amount due.

- Any excess payment that results from the credit is applied proportionately to your policies with a future payment or installment due.

- If you do not wish for credits to be automatically applied to future unpaid installments, please contact us to request a refund. Please note that the amount of the refund may vary based upon the date you contact us and your billing schedule.

- If your account does not have a future installment or payment due at the time the endorsement or audit is processed, the credit is refunded to the payor listed for your account.

(Does not apply to audit return premium for payors located in New York; Does not apply to premiums due more than 30 days from the date of processing for payors located in New Hampshire. These credits are automatically refunded to the payor)

To request a refund, contact us at:

| Mailing Address | Toll free phone number | Electronic mail |
|---|---|---|
| The Cincinnati Insurance Company<br>PO Box 14529<br>Cincinnati, OH 45250-0529 | 877-942-2455 | CinciBill@cinfin.com |

**IA 4407 03 13**

# DISCLOSURE OF DIRECT BILL FEES AND CHARGES

NO COVERAGE IS PROVIDED BY THIS DISCLOSURE, nor can it be construed to replace any provision of your policy. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE CAREFULLY for complete information on the coverages provided.

Your insurance premium is being paid directly to us rather than to your insurance agency. We appreciate your prompt payment of the premium. Please note that these fees apply only in the event your payment is late, is returned to us for insufficient funds, or if your policy was previously canceled for nonpayment of premium and has been reinstated at either your or your agents request. We are not required to reinstate a policy once cancellation for nonpayment of premium has become effective. The decision to reinstate coverage is solely at the discretion of the company.

Not all fees are applicable in all states. The types of fees are listed below. Following the description of each fee, we list the states where the fee applies and the amount of the fee. Fees are not levied in KY, MD, MT and NC.

**Non-Sufficient Funds (NSF) Charge:** The first time a premium payment is returned due to Non-Sufficient Funds (NSF), the premium due is the installment amount. For each succeeding return of payment while continuously insured with The Cincinnati Insurance Companies, a charge is added to your next account statement. The amount of the charge is determined by the fees filed with and approved by the state where the payor of your account is located.

$10 AK, FL, NJ, RI, and SC;

$15 MA;

$20 NY; and

$25 AL, AZ, AR, CA, CO, CT, DE, DC, GA, HI, ID, IL, IN, IA, KS, LA, ME, MI, MN, MS, MO, NE, NV, NH, NM, ND, OH, OK, OR, PA, SD, TN, TX, UT, VT, VA, WA, WI, WV and WY.

**Reinstatement Charge:** The first time your account is reinstated for nonpayment of premium, the premium due is the installment amount. For each succeeding reinstatement due to nonpayment of premium while continuously insured with The Cincinnati Insurance Companies, a charge is added to your next account statement. The amount of the charge is determined by the fees filed with and approved by the state where the payor of your account is located.

$10 AK, RI, and SC;

$15 MA;

$20 NY; and

$25 AL, AZ, AR, CA, CO, CT, DE, DC, GA, HI, ID, IL, IN, IA, KS, LA, ME, MI, MN, MS, MO, NE, NV, NH, NM, ND, OH, OK, OR, PA, SD, TN, TX, UT, VT, VA, WA and WY.

**Late Charge:** A charge is added to your next account statement each time your payment is received and processed after the due date as shown on the account statement. This fee will not apply to Electronic Funds Transfer (EFT). The amount of the charge is determined by the fees filed with and approved by the state where the payor of your account is located.

$10 AK, FL, RI, and SC;

$15 MA; and

$25 AL, AZ, AR, CA, CO, CT, DE, DC, GA, HI, ID, IL, IN, IA, KS, LA, ME, MI, MN, MS, MO, NE, NV, NH, NM, ND, OH, OK, OR, PA, SD, TN, TX, UT, VT, VA, WA, WI and WY.

IA 4421 03 13